UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| JANE DOES 1-14, on their own behalf and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHSHORE UNIVERSITY HEALTHSYSTEM, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. 1:21-cv-05683 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION, FOR LEAVE TO PROCEED UNDER PSEUDONYM, FOR A PROTECTIVE ORDER, AND FOR EXPEDITED CONSIDERATION AND/OR EXTENSION OF TIME TO COMPLY WITH THE COURT'S ORDER REQUIRING <u>PUBLIC DISCLOSURE OF PLAINTIFFS' IDENTITIES</u>**

<u>INTRODUCTION AND BACKGROUND FACTS</u>

"let them forgo the shots I say AND fire them...**they'll infect their entire family and they'll all leave the gene pool**...win win"[1]

It is unbelievable how many stupid unvaccinate people live in this country. They just continue to make stupid excuses not to get vaccinate. **Maybe y'all should just get together in a group get a pistol & play roulette**.[2]

Across the nation, and in Illinois, a contentious debate is taking place on how to balance public health concerns during a pandemic with employers' legal obligation to respect and accommodate their employees' sincerely held religious beliefs. Unfortunately, the issue has become very charged and emotional, and respectful debate sometimes seems elusive, giving way

---

[1] User comment in news article about Plaintiffs in this lawsuit, Jane Does 1-14. (Declaration of Horatio Mihet, ¶ 10, attached hereto as **Exhibit A**).

[2] User comment in news organization social media post about Chicagoland religious objectors to COVID-19 vaccines. (Mihet Decl., ¶ 11).

1

to insults, humiliation and threats. Plaintiffs in this action are private individuals and part of a religious minority who have sincerely held religious beliefs that they cannot benefit from medical products, including vaccines, that are tested, developed, researched or produced using fetal cells that originated in abortion. (Mihet Decl., ¶ 4). Their beliefs are decidedly unpopular.

In fact, Plaintiffs have witnessed their superiors (doctors, supervisors and managers), as well as their colleagues, at work refer to others who are religiously opposed to COVID-19 vaccination in demeaning and scornful ways, including calling them "stupid," "morons," "idiots" and "ignorant," both openly and behind their backs. (Mihet Decl., ¶ 5). Plaintiffs see a general resentment and disdain at their workplace towards those who are known to be unvaccinated because of their religious beliefs, and Plaintiffs fear that if it becomes generally known that they are parties to this lawsuit, and that they are not vaccinated because of their religious beliefs, they will be subject to the same scorn, insults, religious bigotry, and resentment as they have witnessed displayed towards others. (*Id*.)

Plaintiffs legitimately fear reprisal, humiliation, scorn and even violence outside of work too. (*Id*. at ¶¶ 7, 10). When news of this lawsuit broke out earlier this week, public backlash was swift and severe, with fellow Chicagoans publicly calling these Plaintiffs "serial killers," "Fools and Kowards [who] hide behind a book of fairy tales," and "religious hysteric anti vaxx kooks." (*Id*. at ¶ 10). There were public calls for Plaintiffs to "infect their entire family [so] they'll all leave the gene pool," and for Plaintiffs to be "fired" and "replaced," because "they must go." (*Id*.) And, when some of the Plaintiffs participated anonymously in a rally to support those who have religious objections to vaccination, Plaintiffs were publicly called "murderers" and "traitors," and were aggressively harassed by opponents to the point of fearing for their safety and needing rescue from law enforcement. (*Id*. at ¶ 7).

Across the nation too, people who hold religious beliefs similar to Plaintiffs are called "bioterrorists" deserving of "drone strikes" in the media, and in public comments they are called "traitors who are killing other Americans" and "a public threat [that] should be incarcerated" or forced to "live permanently in isolation." (*Id*. at ¶¶ 11-12). And, often times, some express the view that Plaintiffs are better off dead. (*Id*. at ¶ 11 ("Maybe y'all should just get together in a group get a pistol & play roulette.")).

Against this contentious and charged backdrop, Plaintiffs legitimately fear that public disclosure of their quintessentially private religious beliefs and medical decisions will make them the targets of intensified and focused scorn and humiliation directed at them and their families. (*Id*. at ¶ 14). Plaintiffs are already at risk of losing their livelihoods on account of their religious beliefs, which is why they were compelled to file this lawsuit. They should not be forced to also lose their dignity, and potentially their safety too, as the price of seeking redress in this Court.

For the reasons that follow, Plaintiffs' Motion should be granted, Plaintiffs should be permitted to proceed under a pseudonym, and the Court should enter a protective order limiting the disclosure of Plaintiffs' identities to Defendant's counsel and Defendant's personnel who have a reasonable need to know Plaintiffs' identities for purposes of defending this action.

I. **THE FACTORS BALANCED BY COURTS IN DETERMINING WHETHER TO PERMIT PLAINTIFFS TO PROCEED PSEUDONYMOUSLY.**

Although there is a presumption in favor of publicly identifying the parties to a lawsuit, "the federal courts of appeal and a number of district courts have recognized that a district court may have the discretion to permit a party to proceed under a fictitious name." *Doe v. Ind. Black Expo*, 923 F. Supp. 137, 139 (S.D. Ind. 1996). *See also*, *Doe v. Providential Life & Accident Ins. Co.*, 176 F.R.D. 464, 466 (E.D. Pa. 1997) ("[A] party to a civil action—whether defendant or plaintiff—may proceed using pseudonyms when the particular circumstances of the case justify

3

pseudonymity.") Indeed, "the Supreme Court has given the practice implicit recognition" in cases involving sensitive issues of a private or highly personal nature. *Doe v. C.A.R.S. Protections Plus, Inc.*, 527 F.3d 358, 371 n.2 (3d Cir. 2008) (citing *Roe v. Wade*, 410 U.S. 113 (1973)); *Doe v. Bolton*, 410 U.S. 179 (1973)). "[T]he judge ruling on a motion to use a pseudonym has an independent duty to determine whether exceptional circumstances justify a departure from the normal method of proceeding in federal courts." *Doe v. Blue Cross & Blue Shield of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Thus, while there is a presumption that "parties' identities are public information," that presumption "can be rebutted by showing that the harm to the plaintiff . . . exceeds the harm from concealment." *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004). Additionally, while members of the public have a right to know who is using their court systems, there are certain well-defined exceptions. *Doe v. Blue Cross & Blue Shield*, 112 F.3d at 872.

"The Seventh Circuit Court of Appeals has not articulated a test or elements for determining when exceptional circumstances exist to justify allowing a party to proceed under a pseudonym." *Doe v. Purdue Univ.*, 321 F.R.D. 339, 341 (N.D. Ind. 2017). Nevertheless, the Seventh Circuit has "cited with approval the 'balancing inquiry' used by the Court of Appeals for the Second Circuit." *Doe v. Univ. of Notre Dame*, No. 3:17CV298-PPS/MGG, 2017 U.S. Dist. LEXIS 223299, at *5 (N.D. Ind. May 8, 2017). *See e.g.*, *Doe 3 v. Elmbrook Sch. Dist.*, 658 F.3d 710, 724 (7th Cir. 2011), citing *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185 (2d Cir. 2008).

The *Sealed Plaintiff* court held that "when determining whether a plaintiff may be allowed to maintain an action under pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant." 537 F.3d at 189. In making such a determination, the courts should consider the following factors:

4

>(1) whether the litigation involves matters that are "highly sensitive and [of a] personal nature" . . . (2) "whether identification poses a risk of retaliatory physical or mental harm to the ... party [seeking to proceed anonymously] or even more critically, to innocent non-parties," . . . (3) whether identification presents other harms and the likely severity of those harms, . . . including whether "the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity," . . . (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure. . . . particularly in light of his age. . . (5) whether the suit is challenging the actions of the government or that of private parties, . . . (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court, . . . (7) whether the plaintiff's identity has thus far been kept confidential, . . . (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity, . . . (9) "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities," . . . and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 189-90 (citations omitted). *See also*, *Doe v. Cook Cty.*, No. 1:20-cv-5832, 2021 U.S. Dist. LEXIS 104805, at *7-8 (N.D. Ill. June 3, 2021) (compiling a similar list of thirteen factors).

Importantly, this factor-based balancing test does not require that each factor, or even a majority of the factors, be satisfied. Rather, all that is required is a showing that "some combination of these factors outweighs the ordinary presumption of judicial openness, justifying the exercise of the Court's discretion." *Id* at 8-9. This balancing test weighs heavily in favor of Plaintiffs' right to proceed under pseudonyms, and the instant Motion should be granted.

## II. THERE ARE COMPELLING REASONS FOR PERMITTING PLAINTIFFS TO PROCEED USING A PSEUDONYM.

### A. Plaintiffs are Private Individuals and Have Kept Their Identities Confidential.

None of the Plaintiffs is a public figure, or generally known to the public. (Mihet Decl. ¶ 4). Instead, Plaintiffs are private individuals, and they wish to keep their religious beliefs and medical decisions private. (*Id.*) Where, as here, "the Plaintiff himself is not a public figure," "the public's interest in the subject matter will not be impeded merely because plaintiff's identity is kept private." *Doe v. Regional Sch. Unit No. 21*, No. 2:19-00341-NT, 2020 WL 2833248, *4 (D.

5

-

-

-

Me. May 29, 2020) (quoting *Doe v. Trustees of Dartmouth Coll.*, No. 18-cv-040-LM, 2018 WL 2048385, *7 (D.N.H. May 2, 2018)). *See also Doe v. Princeton Univ.*, No. 19-7853(BRM), 2019 WL 5587327, *6 (D.N.J. Oct. 30, 2019) (where plaintiff is not a public figure, analysis weighs in favor of granting leave to proceed using a pseudonym).

Moreover, Plaintiffs have taken steps to keep their identities confidential and out of the public eye, including by filing their Verified Complaint provisionally under pseudonyms, and by filling the instant motion for leave to proceed anonymously. And, the fact that Plaintiffs necessarily had to make their identities known to NorthShore in order to seek a religious accommodation and exemption does not undermine this analysis in any way. Indeed, "the question is not whether anyone knows the Plaintiff's identity, but rather whether his identity is widely known beyond his social circle or among the general public." *Doe v. Regional Sch. Unit No. 21*, 2020 WL 2833248 at *3; *see also Doe v. Trustees of Dartmouth Coll.*, 2018 WL 2048385 at *5 n.2 (noting that the appropriate consideration is "wide dissemination in the [relevant] community or amongst the general public"). In fact, because the process involving requesting an exemption from NorthShore was confidential, and "[n]othing in the record suggests that plaintiff's identity is publicly known," *id.* at *5, this factor supports Plaintiffs' request of proceeding under a pseudonym. *Id.*

### B. There Is a Substantial Basis to Permit Plaintiffs to Proceed Under a Pseudonym and Protect Their Identities From Disclosure.

#### 1. Plaintiffs' medical decisions relating to their health care and treatment are sensitive and personal matters warranting use of pseudonyms.

Plaintiffs should be permitted to proceed using pseudonyms because the issues involved in this case necessarily relate to sensitive and private medical decisions. Plaintiffs are all private citizens of Illinois who sought a religious exemption and accommodation from a mandate directly related to their private health care. They bring this suit solely to challenge the denial of a religious

-

6

accommodation for a specific, personal, and private medical decision concerning their healthcare (*i.e.*, declining a COVID-19 vaccine on religious grounds).

There is a "long tradition in both federal and state courts of permitting parties to proceed anonymously when they have a strong privacy interest in doing so." *Anonymous v. Legal Servs. Corp. of Puerto Rico*, 932 F. Supp. 49, 50 (D.P.R. 1996). Indeed, "[h]istorically, courts have permitted plaintiffs to proceed pseudonymously in cases involving . . . medical conditions." *Doe v. Cook Cnty.*, No. 1:20-cv-5832, 2021 WL 2258313, *3 (N.D. Ill. June 3, 2021). The caselaw demonstrates a nearly universal recognition that issues relating to medical history, medical conditions, or medical decisions are fundamentally private issues, and that plaintiffs can proceed anonymously in lawsuits involving those issues.[3]

The court's decision in *Roe v. Catholic Health Initiatives Colorado,* though nonbinding, is particularly instructive. There, the court noted that both the Americans with Disabilities Act and Title VII itself both prohibit employers from disclosing an employee's private medical records or

---

[3] *See, e.g.*, *Roe v. Wade*, 410 U.S. 113 (1973) (pregnancy and healthcare decisions); *Doe v. Bolton*, 410 U.S. 179 (1973) (same); *Doe v. Gaughan*, 808 F.3d 871 (1st Cir. 1986) (mental health condition); *Roe v. City of Milwaukee*, 37 F. Supp. 2d 1127 (E.D. Wis. 1999) (medical history); *Anonymous v. Legal Servs. Corp. of Puerto Rico*, 932 F. Supp. 49, 50 (D.P.R. 1996) (allowing plaintiff to proceed anonymously because medical issues involved sufficient private interests); *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mon. 1974) (pregnancy and medical decisions); *W.G.A. v. Priority Pharm., Inc.*, 184 F.R.D. 616, 617 (E.D. Mo. 1999) (prescription medications and underlying medical conditions); *Doe v. Sessions*, No. 18-0004(RC), 2018 WL 4637014, *4 (D.D.C. Sept. 27, 2018) (noting that plaintiffs should be permitted to proceed under pseudonyms when case involves confidential medical issues); *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464 (E.D. Pa. 1997) (permitting plaintiff to proceed under pseudonym where medical conditions and treatment are involved); *Roe v. Catholic Health Initiatives Colo.*, No. 11-cv-021799-WYD-KMT, 2012 WL 12840 (D. Colo. Jan. 4, 2012) (granting plaintiff's motion to proceed under pseudonym where pursuing case in her own name would necessarily involve the disclosure of her medical records and history); *Doe v. Standard Ins. Co.*, No. 1:15-cv-00105-GZS, 2015 WL 5778566 (D. Me. Oct. 2, 2015) (granting plaintiff's motion to proceed under a pseudonym where underlying claims arose from medical conditions and medical treatment); *Doe v. Regional Sch. Unit No. 21*, No. 2:19-00341-NT, 2020 WL 2833248 (D. Me. May 29, 2020) (same).

making improper inquiries into an employee's medical conditions. 2012 U.S. Dist. LEXIS 713, at *3-4. Given those general prohibitions, (*see* 42 U.S.C. §12112((d)(4)(c) (mandating that employers treat employee's "medical information" as "a confidential medical record")), the court noted that forcing a plaintiff whose claims arise out of medical issues and medical records to litigate in their own name would necessarily force a violation of the federal statutes at issue. In fact, the court found that requiring a plaintiff in such circumstances to litigate in their own name would force the court – itself – to violate some provisions of federal law. *Id.* at *5 ("The court also recognizes that, if it requires Plaintiff to proceed under her own name, **the court itself may be violating at least the spirit of the provisions of the ADA that protect any information gathered from a medical examination as confidential. The court is not inclined to do so**." (emphasis added) (citation omitted)).

The same should hold true here. In fact, where, as here, the case involves issues of "the recipients of certain medical treatment," "the desire to maintain the anonymity of the [plaintiffs] is motivated by legitimate reasons." *Bryan C. v. Lambrew*, No. 1:21-cv-00005-NT, 2021 WL 242422, *1 (D. Me. Jan. 25, 2021). Here, the gravamen of Plaintiffs' Verified Complaint is inextricably intertwined with their receipt of (or request not to receive) certain medical treatment.

This case is distinguishable from a case like *Doe v. Blue Cross & Blue Shield United*, where the Seventh Circuit denied a plaintiff who sought to conceal his obsessive-compulsive disorder the ability to proceed fictitiously. As that court noted, obsessive-compulsive disorder "is a common enough disorder" and not "such a badge of infamy or humiliation in the modern world . . . ." 112 F.3d at 872. In contrast, the court explicitly recognized that a fictious name would be appropriate for a "particularly vulnerable" party. *Id*. As explained in more detail in Section C below, and in the accompanying Declaration, Plaintiffs here are "particularly vulnerable." The Plaintiffs need

8

not speculate about the possibility of being "humiliated" or being branded with a "badge of infamy" as they have already experienced and attested to those realities. Plaintiffs' decisions to forgo vaccines because of their religious convictions are consistently mocked by media and co-workers alike, who label Plaintiffs and others like them as dangerous, ignorant, "terrorists," "murderers" or "anti-science nutjobs masquerading as healthcare 'professionals.'" (*E.g.*, Mihet Declaration ¶¶ 5, 7, 10-13). Were Plaintiffs required to disclose their identifies, the result would no doubt be ostracization in the workplace, public shaming and humiliation, and an inability to ever secure employment as medical professionals. (*Id.*)

### 2. Plaintiffs' religious beliefs are sensitive and personal matters warranting the use of pseudonyms.

This case involves twin issues that are quintessentially private – not only Plaintiffs' private medical decisions (*supra*), but also their private religious beliefs. "Historically, courts have permitted plaintiffs to proceed pseudonymously in cases involving . . . certain religious observances, among others." *Doe v. Cook Cty.*, No. 1:20-cv-5832, 2021 U.S. Dist. LEXIS 104805, at *6-7 (N.D. Ill. June 3, 2021). As the Fifth Circuit has recognized, "**religion is perhaps the quintessentially private matter**." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (emphasis added). Other courts, too, have recognized that proceeding under a pseudonym is appropriate when a plaintiff's religious convictions are at issue. *See, e.g.*, *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (allowing pseudonymous plaintiffs where the suit "forces Plaintiffs to reveal their beliefs about a particularly sensitive topic that could subject them to considerable harassment"); *Doe v. Franklin Bank, SSB*, No. A-08-CA-293 LY, 2008 WL 11334179 (W.D. Tex. Sept. 3, 2008) (same); *Doe v. Barrow Cnty.*, 219 F.R.D. 189, 193 (N.D. Ga. 2003) (same); *id.* (noting that religious beliefs are sufficiently private to warrant a plaintiff's proceeding anonymously).

9

In *Barrow County*, for example, the court considered a plaintiff's motion to proceed under a pseudonym when challenging a religious display. *Barrow Cnty.*, 219 F.R.D. at 190. The court noted that while public access to information is important, the plaintiff was merely trying to shield his name from the records and not attempting to shield the legal questions he was raising. *Id.* at 193. There, the plaintiff did not have to explicitly state his religious beliefs in order to prosecute his lawsuit, but he had to prove injury as a result of the display to show he had standing. *Id.* As such, his "explanation will necessarily require him to reveal his beliefs concerning the proper interaction between government and religion." *Id.* Because the majority of the community in which the plaintiff lived supported the display, "the court recognize[d] that such concerns can implicate privacy matters similar to those associated with actual religious teachings and beliefs. Accordingly, the court acknowledges plaintiff's privacy concerns." *Id.*

Here, as in *Barrow County*, Plaintiffs find themselves as religious minorities in a hostile environment where most everyone does not believe like them, and where they are already witnessing humiliation, insults, scorn, and demeaning treatment of people like them. (Mihet Decl. ¶¶ 5, 7, 10-13). This is true both in the healthcare space as well as in the nation at large. (*Id.*) Plaintiffs' religious views are unpopular and trigger vehement, even militant, reactions. (*Id.*) Plaintiffs are required in this lawsuit to disclose their religious beliefs in detail, and they have already done so in their Verified Complaint. Forcing Plaintiffs to publicly identify their names would now disclose the "quintessentially private matter" of Plaintiffs' personal religious beliefs, *Doe v. Stegall*, 653 F.2d at 186, and would subject Plaintiffs to the same type of demeaning treatment detailed in the accompanying Declaration. (Mihet Decl. ¶¶ 5, 7, 10-13).

Accordingly, Plaintiffs' request to proceed under a pseudonym should be granted.

### C. Plaintiffs' Religious Beliefs and Decisions Relating to the COVID-19 Vaccine Raise the Potential for Stigma and Ostracization.

Plaintiffs should also be permitted to proceed under pseudonyms because of their legitimate fear of ostracism, humiliation and retaliation from co-workers, supervisors and the public at large. "The fear of retaliation is often a compelling ground for allowing a party to litigate anonymously." *Doe v. City of Chicago*, 360 F.3d 667 (7th Cir. 2004); *see also*, *United States v. Doe*, 655 F.2d 920, 922 n.1 (9th Cir. 1981) (same); *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (same); *Doe v. St. Clair Cnty.*, No. 18-CV-380-SMY-SCW, 2018 WL 1071744 (S.D. Ill. Feb. 26, 2018) (granting use of pseudonym to plaintiff who "lives in fear of retaliation and has legitimate fears of humiliation for bringing this lawsuit"); *id.* ("The Court finds that revealing the Plaintiff's name will potentially expose her to the risk of retaliation by members of the public.").

Here, there is no question that Plaintiffs face the threat of ostracism, humiliation and retaliation from co-workers, supervisors and the public at large. Plaintiffs have already witnessed this in the workplace with respect to others who are not vaccinated. (Mihet Decl. ¶ 5). Indeed, a spirit of resentment and disdain exists in their workplace towards those who are known to be unvaccinated because of their religious beliefs. (*Id.*) Plaintiffs have already suffered insults, epithets ("murderers" and "traitors"), and aggressive harassment to the point of needing law enforcement intervention when they anonymously showed their support for religious conscience at a public gathering. (*Id.* at ¶ 7). And, a mere sampling of community comments **against these very Plaintiffs** from news articles reporting on their lawsuit leaves little doubt that Plaintiffs would be subjected to focused and targeted humiliation, threats and ostracism if their identities were publicly disclosed:

- "let them forgo the shots I say AND fire them...they'll infect their entire family and they'll all leave the gene pool...win win"
- "Fools and Kowards hide behind a book of fairy tales"

11

- "The number of nurses refusing the vaccine is roughly on par with the number of nurses that turn out to be serial killers Coincidence?"
- "90% are heroes. It's the science denying, ignorant, stubborn and stupid ones that are getting let go."
- "A religious nut in health care is scary."
- "Fire their asses. Let them go work at a church."
- "Fire those religious hysteric anti vaxx kooks!"
- "I just spoke to the Holy Spirit and God, and they told me that they are both in favor of everyone getting vaccinated. They also told me to tell all these phony Christians to stop taking God's name in vain."
- "If my nurse believes all the anti science bullschitt on Fakebook, I want her replaced."
- "I would not want an anti vaxx anti science nurse to treat me. They must go."
- "no exemptions your mental illness has no place in science except to study get the vaccine or get in the unemployment line"
- "The exemption isn't religion related. republiCONs just want you dead."

(Mihet Decl., ¶ 10.) This humiliation and scorn is not unique to Plaintiffs in this action, but occurs in a general environment of hostility towards those with religious objections to COVID-19 vaccination. (*Id.* at ¶¶ 11-13). Individuals like Plaintiffs are often likened with "bioterrorists" deserving of "drone strikes," "stupid" and "ignorant" dangerous people who are better off killing each other, and who should "live permanently in isolation." (*Id.*)

As in *Doe v. Stegall*, there is ample evidence here that "the Does may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed to [the] community hostile to the viewpoint reflected in plaintiffs' complaint." 653 F.2d at 186.

**D. Granting Plaintiffs Leave to Proceed Pseudonymously Will Not Impede the Public's Right to Follow the Proceedings.**

In determining whether a plaintiff should be permitted to proceed under a pseudonym, courts have considered the fact that the proceedings themselves will be open to support a finding that proceeding anonymously will not harm the public. As one district court explained, "although the issues in the Amended Complaint may be of some interest to the public, Doe's use of a pseudonym will not interfere with the public's right or ability to follow the proceedings. Indeed,

this Court intends to keep the proceeding open to the public while still maintaining the confidentiality of plaintiff's identity." *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997).

Here, Plaintiffs do not seek sealing or any other mechanism to prevent access to the otherwise available information about the instant litigation. In fact, Plaintiffs encourage open records and proceedings. Every record filed to date has been publicly available, and Plaintiffs encourage the same going forward. The use of pseudonyms does not restrict the public's right to see the arguments and contentions advanced in this litigation, and Plaintiffs welcome such public access. Plaintiffs only seek to have their names protected from disclosure so that they can bring and maintain this action without suffering further for their religious beliefs and medical decisions.

"Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name." *Does v. Stegall*, 653 F.3d 180, 185 (5th Cir. 1981); *see also Doe v. Porter*, 370 F.3d 558 (6th Cir. 2004).

E. **Defendant Will Suffer No Prejudice from Plaintiffs' Use of Pseudonyms.**

NorthShore will suffer no harm or prejudice if Plaintiffs are permitted to proceed under pseudonym. **Plaintiffs do not seek to have their identities shielded from Northshore's counsel, and from NorthShore's personnel who have a reasonable need to know Plaintiffs' identities in order to assist in the defense of this action**. Plaintiffs only seek a modest protective order that would limit the disclosure of their identities to the foregoing persons, for purposes of conducting this litigation, and not to the general public. Plaintiffs stand ready to propose such a limited protective order to Defendant, and to negotiate its provisions with Defendant, upon receiving this Court's guidance and leave to proceed pseudonymously.

13

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion should be granted, Plaintiffs should be permitted to proceed under a pseudonym, and the Court should enter a protective order limiting the disclosure of Plaintiffs' identities to Defendant's counsel and Defendant's personnel who have a reasonable need to know Plaintiffs' identities for purposes of defending this action.

Respectfully submitted,

/s/ Roger K. Gannam
Mathew D. Staver*
Horatio G. Mihet**
Roger K. Gannam*
Daniel J. Schmid**
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org
** Admitted pro hac vice
*Applications for Admission pro hac vice pending

***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 27th day of October 2021, I caused a true and correct copy of the foregoing to be electronically file with this Court. Service will be effectuated on all counsel of record via this Court's ECF/electronic notification system.

                                      /s/ Horatio Mihet
                                      Horatio Mihet