**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JANES DOES 1-14, on their own behalf and on behalf of all others similarly situated, | Civil Action No. 1:21-cv-05683 |
| Plaintiffs, | |
| v. | Judge John F. Kness |
| NORTHSHORE UNIVERSITY HEALTHSYSTEM, | Magistrate Judge Jeffrey Cummings |
| Defendant. | |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS'
VERIFIED CLASS ACTION COMPLAINT FOR TEMPORARY RESTRAINING
ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES**

NOW COMES Defendant, NORTHSHORE UNIVERSITY HEALTHSYSTEM, through its counsel, and in response to Plaintiffs' Verified Complaint, states as follows:

**COMPLAINT ¶1:**

This is a class action brought to remedy NorthShore's pattern of unlawful discrimination against employees who requested religious exemptions and accommodations from NorthShore's COVID-19 vaccine mandate.

**ANSWER:**

Defendant admits that this case purports to be a class action brought to remedy alleged discrimination against NorthShore employees who requested religious exemptions and accommodations from NorthShore's COVID-19 vaccine mandate, but denies the claims and allegations as set forth below, and further denies that it has violated any law in any way with respect to—or incurred any liability whatsoever to—Plaintiffs or the alleged class.

1

**COMPLAINT ¶2:**

In their Prayer for Relief, *infra*, and in the contemporaneously filed Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiffs seek a Temporary Restraining Order ("TRO") against Defendant's discriminatory, unlawful, and unconscionable refusal to grant Plaintiffs a religious exemption or accommodation for their sincerely held religious beliefs which prohibit Plaintiffs from complying with NorthShore's policy mandating that all of its employees receive one form of the COVID-19 vaccine (hereinafter "Mandatory COVID-19 Vaccination Policy").

**ANSWER:**

Defendant admits that Plaintiffs sought a TRO and are seeking a preliminary injunction

relative to Defendant's vaccine policy. Defendant denies each and every remaining allegation.

**COMPLAINT ¶3:**

**Unless this Court intervenes and grants a TRO prior to October 31, 2021, Defendants will remove all Plaintiffs and scores of other similarly situated employees from their positions on November 1, 2021, causing incalculable and irreparable harm to them and their families as described herein, including homelessness, lack of medical care, lack of food and shelter, disrupted education for their children, financial ruin, and harms to their physical, mental and emotional health.**

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶4:**

Plaintiffs are healthcare professionals, all of whom have sincerely held religious beliefs against the COVID-19 vaccines because they were either developed from, or tested with, aborted fetal cells lines, or for other religious reasons that were explained to NorthShore. Because of NorthShore's unlawful actions in denying all or virtually all meritorious exemption requests, Plaintiffs are faced with an immediate "choice" to either (a) receive a COVID-19 vaccination in direct violation of their conscience and sincerely held religious beliefs, or (b) be terminated from their employment with NorthShore as a consequence of exercising their fundamental and statutory rights to refuse administration of the COVID-19 vaccines. "Such a Hobson's choice is actually no choice at all." *Smith v. Grams*, 565 F.3d 1037, 1046 (7th Cir. 2009) (emphasis added).

**ANSWER:**

Defendant admits that Plaintiffs are healthcare employees of NorthShore and that they

sought religious exemptions to the vaccine mandate. Defendant is without knowledge sufficient

to form a belief as to the truth or falsity of the remaining allegations in the first sentence of this paragraph. Defendant denies each and every remaining allegation.

## COMPLAINT ¶5:

Initially, NorthShore denied all or virtually all exemption requests it received, regardless of merit. More recently, after being confronted with the illegality of its conduct, NorthShore switched tactics from denying all of the Plaintiffs' religious exemption requests to informing them that those same requests will now be "approved" in theory and name only, but NorthShore then claimed that it would suffer an "undue hardship" if it allowed Plaintiffs to continue in their current positions. Instead, NorthShore has informed some of the Plaintiffs that "it is considering an offer of fully remote work" and the remaining Plaintiffs that they "will be offered the opportunity to apply for a fully remote position." NorthShore has not actually made any such offers to any Plaintiff.

## ANSWER:

Defendant admits that it initially denied many exemption requests and that on appeal it reconsidered some decisions and chose not to challenge that the requests were made based on sincerely held religious beliefs. Defendant admits that allowing unvaccinated staff into the workplace at NorthShore is an undue hardship. Defendant admits that it informed some of the Plaintiffs that they were considering an offer of fully remote work and that other Plaintiffs would have an opportunity to apply for a fully remote position. Defendant denies each and every remaining allegation.

## COMPLAINT ¶6:

Plaintiffs and all NorthShore employees whose exemption requests were denied have been given until October 31, 2021 to make the decision whether to comply with NorthShore's unconscionable Mandatory COVID-19 Vaccination Policy. In addition, even though NorthShore has imposed an October 31, 2021 deadline for its employees to be fully vaccinated, it has already sent letters to employees advising them that their positions are currently being actively recruited for and potentially being filled. **Unless this Court intervenes promptly, NorthShore will unlawfully throw Plaintiffs out into the cold as of November 1, 2021.**

77268685v.2

**ANSWER:**

Defendant admits that the deadline for the vaccine was October 31, 2021 and that a letter was sent to employees advising them of the deadline and Defendant would recruit to fill their positions. Defendant denies each and every remaining allegation.

**COMPLAINT ¶7:**

**Indeed, as of Friday, October 22, 2021, NorthShore had already started to purge itself of employees with sincere religious objections to its Mandatory COVID-19 Vaccination Policy, by removing many of those employees from the November work schedule, thereby confirming NorthShore's intention to terminate these employees.**

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶8:**

Plaintiffs stand to suffer severe and irreparable harm absent a TRO. Plaintiffs depend heavily on their employment with NorthShore to support themselves and their families. For some Plaintiffs, they are the sole providers for their family and loss of employment would be devastating. As attested to further below, the harms which would result absent a TRO include, but are not limited to, homelessness, loss of medical insurance and the ability to provide urgent medical care for Plaintiffs and disabled family members, and inability to pay for their children's educations. Plaintiffs are also being subjected to harassment, intimidation and threats as a result of their religious declination of vaccination, which is causing anxiety and stress for Plaintiffs and their families.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶9:**

A TRO is needed now to prevent the irreparable harm to Plaintiffs' sincerely held religious beliefs and their cherished occupations, mission and life calling to care for others. Absent a TRO, Plaintiffs will be forced to violate their sincerely held religious beliefs or face adverse employment action from NorthShore.

**ANSWER:**

Defendant denies each and every allegation.

77268685v.2

**COMPLAINT ¶10:**

Plaintiffs have earnestly, honestly, and in good faith sought religious exemptions and reasonable accommodations from NorthShore's Mandatory COVID-19 Vaccination Policy, but have been rejected at every turn. And though NorthShore now purports to have "approved" their exemption requests, NorthShore has taken the unreasonable and unlawful position that it cannot accommodate **any of them** to allow them to remain in their current positions.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶11:**

Plaintiffs have complied with all requirements for seeking an accommodation and exemption based upon their sincerely held religious beliefs, and otherwise complied with all of the requirements NorthShore established for seeking a religious exemption from the Mandatory COVID-19 Vaccination Policy. Indeed, Plaintiffs have scratched and clawed to obtain the relief they seek without judicial intervention. Those efforts failed and a TRO and preliminary injunction is the only mechanism by which Plaintiffs' sincerely held religious beliefs may be protected and accommodated prior to their suffering of immediate and irreparable injury.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶12:**

While NorthShore now claims it would be an "undue hardship" to allow Plaintiffs to keep their positions, NorthShore has granted at least one religious exemption from the Mandatory COVID-19 Vaccination Policy with proper accommodations. That religious exemption which NorthShore granted was based on identical or substantially similar religious beliefs as those espoused by Plaintiffs, and was given to a person who was in the same type of position as Plaintiffs. NorthShore's exemption and accommodation process is therefore arbitrary, capricious and without any logic or reason.

**ANSWER:**

Defendant denies each and every allegations contained in the last sentence of this

paragraph. Defendant is without knowledge or information sufficient to form a belief as to the

remaining allegations.

**COMPLAINT ¶13:**

Plaintiffs do not seek to harm anyone, nor do they request license to roam about uninhibited as though no health threat existed. Plaintiffs merely seek to protect their sincerely held religious

beliefs not to receive a medical product created with or tested upon aborted fetal cell lines while being afforded the opportunity to continue their employment, service to others and life calling. **Plaintiffs are willing to abide by protections that have been espoused as sufficient to protect against COVID-19, namely wearing a mask, self-monitoring for symptoms, voluntary reporting of potential symptoms, and reasonable testing requirements.** These mechanisms plainly provide a sufficient alternative to forced vaccination in violation of sincerely held religious beliefs.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶14:**

Several courts in Illinois and throughout the nation have already issued injunctive relief, including temporary restraining orders, to plaintiffs who are threatened with adverse employment consequences because of their religious or conscience-based objections to COVID-19 vaccines: *Velvet Darnell et. al. v. Quincy Physicians and Surgeons Clinic, S.C. and Blessing Corporate Services, Inc.*, Case No. 2021 MR 193 (18th Judicial Cir. Adams County, IL October 1, 2021) (granting TRO under Illinois Health Care Right of Conscience Act, and enjoining healthcare provider from taking adverse action against healthcare employees declining COVID-19 vaccination on religious and conscience grounds); *David Sambrano et. al. v. United Airlines, Inc.*, Case No. 4:21-01074-P (N.D. Texas. Oct. 18, 2021); *Dr. A. v. Hochul*, No. 1:21-CV-1009-DNH-ML, 2021 WL 4734404, *9 (N.D.N.Y. Sept. 14, 2021) (granting preliminary injunction against enforcement of New York's COVID-19 vaccine mandate on healthcare workers for failure to grant religious exemptions and noting that **"Title VII does not demand mere neutrality with regard to religious practices ... rather, it gives them favored treatment.' Thus, under certain circumstances, Title VII `requires otherwise-neutral policies to give way to the need for an accommodation."** (emphasis added)); *We The Patriots USA, Inc. v. v. Hochul*, No. 21-2179, dkt. 65 (2d Cir. Sept. 30, 2021) (issuing an injunction pending appeal against enforcement of New York's COVID-19 Vaccine Mandate for its failure to allow for religious accommodations); *Dahl v. Bd. of Trustees of W. Michigan Univ.*, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021) (allowing the preliminary injunction to stand against a University's failure to accommodate student athletes with sincerely held religious objections to the COVID-19 vaccine mandate and noting that "The University **put plaintiffs to the choice: get vaccinated or stop fully participating in intercollegiate sports. . . . By conditioning the privilege of playing sports on plaintiffs' willingness to abandon their sincere religious beliefs, the University burdened their free exercise rights."** (emphasis added)); *Magliulo v. Edward Via College of Osteopathic Medicine*, No. 3:21-CV-2304, 2021 WL 36799204 (W.D. La. Aug. 17, 2021) (granting temporary restraining order against a medical school for the school's failure to grant religious exemptions when reasonable accommodations were available (such as masking, testing, etc.) and mandatory vaccination was not the least restrictive means of achieving the school's interest in protecting the school's student body); *Bilyeu v. UT-Battelle, LLC*, No. 3:21-cv-352, 2021 WL 4859932, * (E.D. Tenn. Oct. 15, 2021) (granting TRO enjoining healthcare employer "from terminating or placing on indefinite unpaid leave any employee who has received a religious or medical accommodation").

**ANSWER:**

This paragraph asserts legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶15:**

The Illinois Health Care Right of Conscience Act, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Emergency Use Authorization statute in the United States Code, protect the right of individuals to refuse administration of an unwanted medical product when acceptance of such product would violate their sincerely held religious beliefs and the exercise of the same. NorthShore's Mandatory COVID-19 Vaccination Policy, including its refusal to grant meritorious religious exemption requests, ignores these fundamental protections for Plaintiffs' sincerely held religious beliefs, and this Court should enjoin the policy immediately, to protect Plaintiffs from imminent irreparable harm.

**ANSWER:**

This paragraph asserts legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies each and every allegation.

**PARTIES**

**COMPLAINT ¶16:**

Plaintiff Jane Doe 1 is a Nurse Quality Manager at NorthShore University HealthSystem who submitted a signed, written request for a religious exemption and accommodation from NorthShore's Mandatory COVID-19 Vaccination Policy, but Northshore has refused to provide a reasonable accommodation. Jane Doe 1 has already contracted COVID-19 and has since fully recovered. Jane Doe 1 is a major contributor to her family's income making up more half of the total income. Jane Doe 1 's husband is self-employed, and she provides the family's benefits including vision, dental and health. Jane Doe 1 has four children who depend on her employment with NorthShore. In addition, Jane Doe 1 is still paying off medical bills from a tragic accident which occurred to her son in May 2020. The loss of Jane Doe 1 's employment would be devastating to her family — not only financially, but medically, emotionally and physically.

**ANSWER:**

Defendant admits that Jane Doe 1 submitted a request for a religious exemption, which was approved and for which a remote-work accommodation was granted, and is employed as a nurse quality manager. Defendant is without knowledge sufficient to form a belief as to the allegations

regarding Jane Doe 1's family situation or personal health. Defendant denies each and every

remaining allegation.

## COMPLAINT ¶17:

Plaintiff Jane Doe 2 is a Pharmacy Technician in the Kellogg Pharmacy at NorthShore University HealthSystem who submitted a signed, written request for an exemption and accommodation from NorthShore's Mandatory COVID-19 Vaccination Policy, but Northshore has refused to provide a reasonable accommodation. Jane Doe 2's family relies on her employment for health insurance as well as for paying education expenses for her son. The loss of Jane Doe 2's employment would severely impact her and her family's, financial and physical well-being.

## ANSWER:

Defendant admits that Jane Doe 2 submitted a request for a religious exemption and is

employed as a pharmacy technician. Defendant is without knowledge sufficient to form a belief as

to the allegations regarding Jane Doe 2's family situation. Defendant denies each and every

remaining allegation.

## COMPLAINT ¶18:

Plaintiff Jane Doe 3 is an acute care staff nurse at NorthShore University HealthSystem who submitted a signed, written request for an exemption and accommodation from Northshore's Mandatory COVID-19 Vaccination Policy, but Northshore has refused to provide a reasonable accommodation. Jane Doe 3 contracted COVID-19 in 2020 and later fully recovered. Jane Doe 3's loss of health and vision insurance would interrupt her ability to obtain necessary care for her ailing eyesight, thus interfering with her ability to carry on everyday tasks. In addition, Jane Doe 3 is the sole provider for her father who suffered a stroke seven years ago and is in constant need of help. Even more, Jane Doe 3's husband has severe generalized idiopathic urticaria with occasional angioedema and throat swelling that happens unpredictably, as well as a son who is struggling with depression and suicidal thoughts and ideation and is in constant need of psychiatric care and counseling. Without a source of income and health insurance, Jane Doe 3's ability to care for her family would be eliminated to the extreme detriment of her family's health and well-being. Indeed, Jane Doe 3 believes that without her employment, and in light of her difficult circumstances, she and her family would become homeless. On one occasion, Jane Doe 3 informed her manager that her religious exemption appeal was pending and the manager replied **"it doesn't matter, we are not approving anyone."**

## ANSWER:

Defendant admits that Jane Doe 3 submitted a request for a religious exemption and is

employed as an acute care staff nurse. Defendant is without knowledge sufficient to form a belief

8

as to the allegations regarding Jane Doe 3's family situation or personal health. Defendant denies each and every remaining allegation.

## COMPLAINT ¶19:

Plaintiff Jane Doe 4 is a rehab nurse at NorthShore University HealthSystem who submitted a signed, written request for an exemption and accommodation from NorthShore's Mandatory COVID-19 Vaccination Policy, but Northshore has refused to provide a reasonable accommodation. Jane Doe 4 relies on her employment with NorthShore for income to pay everyday expenses and for health insurance. Loss of Jane Doe 4's employment would cause significant harm to her and her family.

## ANSWER:

Defendant admits that Jane Doe 4 submitted a request for a religious exemption and is a rehab nurse. Defendant is without knowledge sufficient to form a belief as to the allegations regarding Jane Doe 4's personal financial situation. Defendant denies each and every remaining allegation.

## COMPLAINT ¶20:

Plaintiff Jane Doe 5 is an emergency department Clinical Nurse Resident at NorthShore University HealthSystem who submitted a signed, written request for an exemption and accommodation from NorthShore's Mandatory COVID-19 Vaccination Policy, but Northshore has refused to provide a reasonable accommodation. Jane Doe 5 has been harassed by her manager on multiple occasions for not obtaining a vaccine, even while waiting for a response to her appeal. Jane Doe 5 informed her manager that she wants to see what happens with her appeal but her manager informed her that her appeal would likely be denied because everyone else is being denied. Jane Doe 5 tested positive for COVID-19 on December 26, 2020, and later fully recovered. Jane Doe 5 relies on her employment to pay mortgage, utility bills, health insurance, and school loans. Loss of employment would cause her to lose health insurance and default on her mortgage and school loan payments, resulting in significant consequences and loss. Jane Doe 5 has also been dealing with a recent diagnosis of anxiety, which stemmed from losing her sister last year, with bouts of panic attacks. Her mental health has been negatively impacted by the persistent harassment at work, and by the intimidation and threats of losing her job because of her religious beliefs. Jane Doe 5's anxiety has increased, triggering psychological distress which has required her to increase her medications. Jane Doe 5 believes that her work as a nurse is a calling from God and that NorthShore is the place God wants her to be. Losing her employment or being reassigned because of her religious beliefs would be devasting [sic] to Jane Doe 5's physical wellbeing and mental health.

77268685v.2

**ANSWER:**

Defendant admits that Jane Doe 5 submitted a request for a religious exemption and is a clinical nurse resident. Defendant is without knowledge sufficient to form a belief as to the allegations regarding Jane Doe 5's family situation or personal health. Defendant denies each and every remaining allegation.

**COMPLAINT ¶21:**

Plaintiff Jane Doe 6 is a registered nurse at NorthShore University HealthSystem who submitted a signed, written request for an exemption and accommodation from NorthShore's Mandatory COVID-19 Vaccination Policy, but Northshore has refused to provide a reasonable accommodation. Jane Doe 6 contracted COVID-19 in October 2020 and has since fully recovered. Jane Doe 6 relies on her employment with NorthShore for insurance and ability to meet everyday expenses. Loss of Jane Doe 6's employment would result in significant consequences to her physical and financial well-being.

**ANSWER:**

Defendant admits that Jane Doe 6 submitted a request for a religious exemption and is a registered nurse. Defendant is without knowledge sufficient to form a belief as to the allegations regarding Jane Doe 6's medical history. Defendant denies each and every remaining allegation.

**COMPLAINT ¶22:**

Plaintiff Jane Doe 7 is a surgical prep nurse at NorthShore University HealthSystem who submitted a signed, written request for an exemption and accommodation from NorthShore's Mandatory COVID-19 Vaccination Policy, but Northshore has refused to provide a reasonable accommodation. Jane Doe 7 relies on her employment with NorthShore for the ability to meet everyday expenses. Jane Doe 7 also works as a nurse because she has a calling to help patients and co-workers through hard times. Jane Doe 7's termination or reassignment would be detrimental to Jane Doe's physical, emotional and financial wellbeing.

**ANSWER:**

Defendant admits that Jane Doe 7 submitted a request for a religious exemption and is a surgical prep nurse. Defendant is without knowledge or information sufficient to form a belief as to Jane Doe 7's calling to become a nurse. Defendant denies each and every remaining allegation.

77268685v.2

**COMPLAINT ¶23:**

Plaintiff Jane Doe 8 is a registered nurse working in a recovery room at NorthShore University HealthSystem who submitted a signed, written request for an exemption and accommodation from NorthShore's Mandatory COVID-19 Vaccination Policy, but Northshore has refused to provide a reasonable accommodation. Jane Doe 8 maintains insurance for her entire family and losing that insurance would be devastating for her family's well being. Jane Doe 8's income also pays for the education for her two children. Because Jane Doe 8's husband's is self-employed, her income is "the constant" in her family. Therefore, Jane Doe `s employment is crucial for her and her family and any loss employment would have significant and debilitating consequences for her family.

**ANSWER:**

Defendant admits that Jane Doe 8 submitted a request for a religious exemption and is a registered nurse in the recovery room. Defendant is without knowledge or information sufficient to form a belief as to Jane Doe 8's family situation. Defendant denies each and every remaining allegation.

**COMPLAINT ¶24:**

Plaintiff Jane Doe 9 is a nurse in the Infant Special Care Unit at NorthShore University HealthSystem who submitted a signed, written request for an exemption and accommodation from NorthShore's Mandatory COVID-19 Vaccination Policy, but Northshore has refused to provide a reasonable accommodation. Jane Doe 9 is the sole provider for her family, including a son who suffers from extreme asthma. Loss of her job, along with her health insurance, would cripple Jane Doe 9's ability to care for her family and ensure that her son is properly cared for. Jane Doe 9 is the victim of daily harassment from her supervisors who demean and belittle her for her beliefs. Jane Doe 9 endures this harassment because she has no other option but to provide for her family.

**ANSWER:**

Defendant admits that Jane Doe 9 submitted a request for a religious exemption and is a nurse in the Infant Special Care Unit. Defendant is without knowledge or information sufficient to form a belief as to Jane Doe 9's family situation. Defendant denies each and every remaining allegation.

**COMPLAINT ¶25:**

Plaintiff Jane Doe 10 is a surgical prep nurse at NorthShore University HealthSystem who submitted a signed, written request for an exemption and accommodation from NorthShore's

Mandatory COVID-19 Vaccination Policy, but Northshore has refused to provide a reasonable accommodation. Jane Doe 10 contracted COVID-19 in August 2020 and later fully recovered. Jane Doe 10's main reason being in the nursing profession is her desire to help others and she believes that nursing is her calling in life. Jane Doe 10 loves the work she does because she can impact others by caring for them. Jane Doe 10's termination or removal from her patient care role would deprive her of the ability to fulfill her mission and life calling of caring for others.

**ANSWER:**

Defendant admits that Jane Doe 10 submitted a request for a religious exemption and is a surgical prep nurse. Defendant is without knowledge or information sufficient to form a belief as to Jane Doe 10's calling to become a nurse. Defendant denies each and every remaining allegation.

**COMPLAINT ¶26:**

Plaintiff Jane Doe 11 is a Patient Access Representative in the Kellogg Cancer Center at NorthShore University HealthSystem who submitted a signed, written request for an exemption and accommodation from NorthShore's Mandatory COVID-19 Vaccination Policy, but Northshore has refused to provide a reasonable accommodation. Loss of employment would cause harm to Jane Doe 11 and her family because Jane Doe 11 relies on her employment with NorthShore to provide health insurance for her family, to fund her child's education, and to purchase everyday necessities.

**ANSWER:**

Defendant admits that Jane Doe 11 submitted a request for a religious exemption and is a patient access representative. Defendant is without knowledge or information sufficient to form a belief as to Jane Doe 11's family situation. Defendant denies each and every remaining allegation.

**COMPLAINT ¶27:**

Plaintiff Jane Doe 12 is a clinical nurse manager at NorthShore University HealthSystem who submitted a signed, written request for an exemption and accommodation from NorthShore's Mandatory COVID-19 Vaccination Policy, but Northshore has refused to provide a reasonable accommodation. Jane Doe 12 contracted COVID-19 in October 2020 and has since fully recovered. Jane Doe 12 is the primary breadwinner for her household, and she relies on her employment with NorthShore to pay for rent and other daily living expenses. Jane Doe 12 also relies on the insurance she receives from NorthShore to deal with several health issues. As result, any loss of employment, including her health insurance coverage, would be devasting [sic] to the wellbeing of Jane Doe 12 and her entire family. Without Jane Doe 12's income, Jane Doe 12's family would not be able to pay its bills and would not be able to afford housing, health insurance and other basic needs.

**ANSWER:**

Defendant admits that Jane Doe 12 submitted a request for a religious exemption and is a clinical nurse manager. Defendant is without knowledge or information sufficient to form a belief as to Jane Doe 12's family situation. Defendant denies each and every remaining allegation.

**COMPLAINT ¶28:**

Plaintiff Jane Doe 13 is a registered nurse at NorthShore University HealthSystem who submitted a signed, written request for an exemption and accommodation from NorthShore's Mandatory COVID-19 Vaccination Policy, but Northshore has refused to provide a reasonable accommodation. Jane Doe 13 contracted COVID-19 back in October 2020 and has regularly tested positive for antibodies. Jane Doe 13 relies on her employment with NorthShore for health insurance and to contribute toward her family's monthly expenses. Loss of Jane Doe 13's employment would result in significant consequences to her physical and financial well-being.

**ANSWER:**

Defendant admits that Jane Doe 13 submitted a request for a religious exemption and is a registered nurse. Defendant is without knowledge or information sufficient to form a belief as to Jane Doe 13's medical or family situation. Defendant denies each and every remaining allegation.

**COMPLAINT ¶29:**

Plaintiff Jane Doe 14 is a Senior Application Analyst at NorthShore University HealthSystem who submitted a signed, written request for an exemption and accommodation from NorthShore's Mandatory COVID-19 Vaccination Policy, but Northshore has refused to provide a reasonable accommodation. Jane Doe 14 previously tested positive for COVID-19 and has since fully recovered. She also tested positive for antibodies and has been excused from weekly testing. Jane Doe 14 relies on her employment with NorthShore to pay her mortgage, health insurance (for herself and 2 children) and for her ability to meet everyday expenses. NorthShore's actions have had a devastating effect of Jane Doe 14's children (ages 11 & 15) who ask daily whether they will lose their home and subsequently need to relocate schools. This mental anguish is negatively impacting their social emotional health and academics. Jane Doe 14's son has multiple chronic medical conditions including asthma and a congenital thoracic condition. Losing health insurance would have a devastating impact on his medical care, quality of life and health. In addition, NorthShore's intimidation and pressure tactics have caused Jane Doe 14 toxic stress resulting in the exacerbation of previously stabilized health conditions. The prolonged stress is causing Jane Doe 14's adrenal and cortisol levels to rise, resulting in sleep and digestive disturbances that are damaging to her physical, psychological and emotional health, and increased healthcare expenses to mitigate these conditions. Loss of employment and insurance for Jane Doe 14 would result in her defaulting on her mortgage, her family becoming homeless and destitute, her defaulting on

healthcare and other unsecured debt, and an inability to provide food, shelter and medical care for herself and her children.

**ANSWER:**

Defendant admits that Jane Doe 14 submitted a request for a religious exemption, which was approved and for which a remote-work accommodation was granted, and is a senior application analyst. Defendant is without knowledge or information sufficient to form a belief as to Jane Doe 14's family situation. Defendant denies each and every remaining allegation.

**COMPLAINT ¶30:**

Each of the Plaintiffs' initial religious exemption applications were denied on the basis of a non-descript "evidence-based criteria" and each of them appealed those decisions with additional evidence only to be denied any reasonable accommodation for their sincerely held religious beliefs.

**ANSWER:**

Defendant admits that the initial exemption request submitted by each Plaintiff was denied based on failure to fulfill evidence-based criteria and that each Plaintiff appealed the denial. Defendant denies each and every remaining allegation.

**COMPLAINT ¶31:**

Each of the 14 Plaintiffs have filed or are filing claims with the Equal Employment Opportunity Commission, accompanied by attorney requests for immediate right to sue letters.

**ANSWER:**

Defendant admits this allegation on information and belief.

**COMPLAINT ¶32:**

Defendant, Northshore [sic] University HealthSystem, is a not-for-profit corporation incorporated under the laws of the State of Illinois since 1891 (then Evanston Hospital) with its principal place of business at 1301 Central Street, Evanston, IL 60201.

**ANSWER:**

Defendant admits this allegation.

77268685v.2

## JURISDICTION AND VENUE

**COMPLAINT ¶33:**

This action arises under the laws of the United States, specifically 21 U.S.C. §360bbb-3 and 42 U.S.C. § 2000e, *et seq.* This action also arises under the laws of the State of Illinois, specifically the Illinois Health Care Right of Conscience Act, 745 ILCS 70, *et seq.*

**ANSWER:**

Defendant admits that Plaintiffs purport to assert claims under the cited statutes, but denies

that it has violated any cited law or incurred any liability to Plaintiffs.

**COMPLAINT ¶34:**

This Court has jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343, and 1367.

**ANSWER:**

Defendant admits this allegation.

**COMPLAINT ¶35:**

Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

**ANSWER:**

Defendant admits that venue is proper in this judicial district and division.

**COMPLAINT ¶36:**

This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

**ANSWER:**

This paragraph asserts legal conclusions to which no answer is required. To the extent an

answer is required, Defendant denies each and every allegation inconsistent with the stated law.

**COMPLAINT ¶37:**

This Court is authorized to grant Plaintiffs' prayer for a temporary restraining order and preliminary and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

**ANSWER:**

This paragraph asserts legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies each and every allegation inconsistent with the stated law.

**COMPLAINT ¶38:**

This Court is authorized to grant Plaintiffs' prayer for relief regarding damages pursuant to Rule 54 of the Federal Rules of Civil Procedure and the supplementary laws of the State of Illinois, as applicable under Fed. R. Civ. P. 69.

**ANSWER:**

This paragraph asserts legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies each and every allegation inconsistent with the stated law.

**COMPLAINT ¶39:**

This Court is authorized to grant Plaintiffs' prayer for relief regarding damages, including treble damages, under the Illinois Health Care Right of Conscience Act, 745 ILCS 70/12.

**ANSWER:**

This paragraph asserts legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies each and every allegation inconsistent with the stated law.

**COMPLAINT ¶40:**

This Court is authorized to grant Plaintiffs' prayer for relief regarding costs and expenses, including reasonable attorneys' fees, pursuant to the Illinois Health Care Right of Conscience Act, 745 ILCS 70/12.

**ANSWER:**

This paragraph asserts legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies each and every allegation inconsistent with the stated law.

77268685v.2

## GENERAL ALLEGATIONS

A.    **NORTHSHORE'S MANDATORY AND DISCRIMINATORY COVID-19 VACCINATION POLICY.**

**COMPLAINT ¶41:**

On August 16, 2021, NorthShore announced a policy mandating COVID-19 vaccines for all of its 18,000 employees, contractors, and volunteers.

**ANSWER:**

Defendant admits that on or about August 16, 2021, it announced a policy that in part mandated COVID-19 vaccinations for its employees, contractors, and volunteers, but denies that this paragraph completely and accurately alleges the contents of that policy and refers to the policy for a complete and accurate record of its contents.

**COMPLAINT ¶42:**

NorthShore announced, through a spokesperson, that "[requiring COVID-19 vaccination as a condition of employment is a critical and essential defense against this pandemic."[1]

**ANSWER:**

Defendant admits that the quoted language in this paragraph was part of an announcement made on or about August 18, 2021, through a spokesperson, but denies that this paragraph completely and accurately alleges the contents of that announcement and refers to the announcement for a complete and accurate record of its contents.

**COMPLAINT ¶43:**

NorthShore's Mandatory COVID-19 Vaccination Policy specifically states that the "requirement applies to all Northshore team members (physicians, team members, affiliates, partners/contractors and volunteers. . . ."

---

[1] https://www.chicagotribune.com/business/ct-biz-northshore-covid-vaccine-requirement-20210816-7m3b4mrnnojag7dtmiycf4dgzem-story.html

77268685v.2

**ANSWER:**

Defendant admits that the quoted language in this paragraph is contained as part of Defendant's COVID-19 Vaccination Policy but denies that this paragraph completely and accurately alleges the contents of the Policy and refers to the policy for a complete and accurate record of its contents.

**COMPLAINT ¶44:**

The Mandatory COVID-19 Vaccination Policy further provides that the final deadline to be "fully vaccinated" is October 31, 2021.

**ANSWER:**

Defendant admits that its COVID-19 Vaccination Policy provides in part an October 31, 2021 deadline for full vaccination, subject to other provisions in the policy, but denies that this paragraph completely and accurately alleges the contents of the policy and refers to the policy for a complete and accurate record of its contents. Defendant denies each and every remaining allegation.

**COMPLAINT ¶45:**

In its Mandatory COVID-19 Vaccination Policy, NorthShore purported to permit employees to obtain religious exemptions from the mandate, but as explained further below, that process was a sham, because NorthShore never intended to grant exemptions or accommodations for all or virtually all of its employees who request them.

**ANSWER:**

Defendant admits that exemptions for religious or medical/disabilities reasons were permitted to be requested under the policy. Defendant denies each and every remaining allegation.

**COMPLAINT ¶46:**

The Mandatory COVID-19 Vaccination Policy does not take into account individuals who have already recovered from COVID-19 and thus have antibodies or natural immunity, nor does it take into account alternative measures such as face coverings, personal protective equipment, self-monitoring and reporting of symptoms, or periodic testing.

18

**ANSWER:**

Defendant admits that the Policy does not exempt those who previously had COVID-19.

Defendant denies each and every remaining allegation.

**COMPLAINT ¶47:**

NorthShore's Mandatory COVID-19 Vaccination Policy contrasts with and flouts the Federal Government's recent announcement that the Department of Labor is developing a rule to require certain large employers to mandate vaccination or periodic testing for their employees. **NorthShore does not provide a testing alternative for any of its employees, as the Federal Government contemplates to be sufficient.**

**ANSWER:**

This paragraph asserts legal conclusions to which no answer is required. To the extent an

answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶48:**

NorthShore's Mandatory COVID-19 Vaccination Policy also contrasts with and flouts Governor Pritzker's Executive Orders 2021-22 and 2021-23, which require healthcare workers to be vaccinated or be subject to weekly testing. **NorthShore does not provide a testing alternative for any of its employees, as Governor Pritzker contemplates to be sufficient.**

**ANSWER:**

This paragraph asserts legal conclusions to which no answer is required. To the extent an

answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶49:**

NorthShore's Mandatory COVID-19 Vaccination Policy also contrasts with and flouts the regulations adopted by the Illinois Department of Public Health, including 77 Ill. Adm. Code §250.455(b), 690.1380(i), 690.1385(f), which require patient-facing healthcare workers to undergo COVID-19 vaccination or regular testing. **NorthShore does not provide a testing alternative for any of its employees, as the Illinois Department of Public Health contemplates to be sufficient.**

**ANSWER:**

This paragraph asserts legal conclusions to which no answer is required. To the extent an

answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶50:**

The Mandatory COVID-19 Vaccination Policy also differs substantially from the European Union's digital COVID-19 certificate, which considers the following as equivalent: (1) a COVID-19 vaccine; (2) a negative COVID-19 test; or (3) having previously recovered from COVID-19. See EU Digital COVID Certificate, EUROPEAN COMMISSION, https://ec.europa.eu/info/live-work-travel-eu/coronavirus-response/safe-covid-19-vaccines-europeans/eu-digital-covid-certificate_en.

**ANSWER:**

This paragraph asserts legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶51:**

Indeed, many healthcare systems around the country, including many in Illinois, have shown that the important policies of accommodating sincerely held religious beliefs and protecting health and safety of patients and fellow healthcare workers can coexist. Attached as composite **Exhibit 1** are **thirty-two sworn declarations from patient-care employees across the country whose employers were willing and able to provide reasonable accommodations for their sincerely held religious beliefs against abortion-derived vaccines, and allowed them to remain in their same job functions, with appropriate precautions in place.** The declarations from Employees 17, 18, 19, and 20, in particular, involve premier Illinois healthcare entities, including University of Chicago Medical Center and Advocate Aurora Health.

**ANSWER:**

Defendant admits that some health care organizations, including some in Illinois, have different practices regarding COVID vaccinations, protecting the health and safety of their patients and employees, and accommodations. Defendant further admits that Plaintiffs purport to have provided sworn declarations with their Complaint at Exhibit 1. Defendant denies each and every remaining allegation.

**COMPLAINT ¶52:**

There is nothing different or unique about NorthShore that requires NorthShore to flout the recommendations and requirements of the Governor and the Illinois Department of Public Health, and to refuse to accommodate its religiously-exempt employees while all of its peers are able and willing to accommodate their similarly situated employees.

20

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶53:**

NorthShore's refusal to exempt and accommodate its employees' sincerely held religious convictions is the product of NorthShore's animus towards, and discrimination against, its employees because of their religious beliefs.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶54:**

NorthShore's religious animus and discrimination are further evidenced by the fact that, while NorthShore requires its employees to be vaccinated and refuses to accommodate its religiously-objecting employees, **NorthShore does not require patients or visitors to be vaccinated**, even though these individuals interact with NorthShore staff on a daily basis. If NorthShore were concerned about potential "outbreaks" caused by unvaccinated people on its premises, NorthShore would not exempt large groups of people on its premises, while refusing to exempt only employees who object to vaccination on religious grounds.

**ANSWER:**

Defendant admits that it does not mandate COVID vaccination for patients and visitors.

Defendant denies each and every remaining allegation.

**COMPLAINT ¶55:**

NorthShore's religious animus and discrimination are further evidenced by the fact that, while NorthShore requires its employees to be vaccinated and refuses to accommodate its religiously-objecting employees, **NorthShore provides exemptions and accommodation for its employees with medical reasons for declining vaccination, including employees who are pregnant.** Attached hereto as **Exhibit 2** is a sample accommodation notice that NorthShore sends employees who are pregnant, exempting them from undergoing vaccination while they are pregnant, and allowing them to remain in their same job functions, with various alternative safety precautions, including PPE and weekly testing. NorthShore provides this exemption and accommodation to its pregnant employees even though it tells them, in the same notices, that "the CDC recommends vaccination in pregnancy on the basis of data that the benefits of receiving a COVID-19 vaccine outweigh any known or potential risks of vaccination during pregnancy." (Exhibit 2). If NorthShore were concerned about potential "outbreaks" caused by unvaccinated people on its premises, NorthShore would not exempt pregnant employees, and employees with other medical concerns, while refusing to exempt only employees who object to vaccination on religious grounds.

77268685v.2

**ANSWER:**

Defendant admits that certain pregnant employees were given temporary accommodations from the COVID-19 vaccine during their pregnancy and that the CDC recommends vaccinations for pregnant females. Defendant denies each and every remaining allegation.

**B.** **NORTHSHORE'S SHAM RELIGIOUS EXEMPTION PROCESS, AND ITS DISCRIMINATORY APPLICATION OF ITS MANDATORY COVID-19 VACCINATION POLICY.**

**COMPLAINT ¶56:**

As mentioned above, NorthShore's Mandatory COVID-19 Vaccination Policy provided employees, in theory but not in practice, the illusory ability to obtain a religious exemption from the vaccine mandate.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶57:**

Those seeking religious exemptions were required to submit a "Request for Religious Exemption" form by September 30, 2021. Attached hereto as **Exhibit 3** is a sample copy of NorthShore's "Request for Religious Exemption" form. The form specified that an employee need only provide "a description of my sincerely held religious principle or practice that guides my objection to receiving the required vaccination."

**ANSWER:**

Defendant admits the allegations contained in the first two sentences of this paragraph. Defendant denies each and every remaining allegation.

**COMPLAINT ¶58:**

NorthShore asked employees to limit their responses to a mere five lines of text, "if possible," indicating to them very clearly that NorthShore was not seeking detailed explanations.

**ANSWER:**

Defendant admits that it asked employees to limit their responses to five lines of text "if possible." Defendant denies each and every remaining allegation.

**COMPLAINT ¶59:**

In submitting their requests for religious exemptions, each of the Plaintiffs followed the directions given to them by NorthShore, and complied fully with NorthShore's purported requirements.

**ANSWER:**

Defendant denies the conclusory allegation that its requirements were "purported." Defendant is without knowledge or information sufficient to form a belief as to each and every remaining allegation.

**COMPLAINT ¶60:**

However, after first granting the exemptions for some employees, NorthShore then unilaterally re-reviewed the requests and denied **all or virtually all** of them in mid-September. A sample of the general and generic denial notice that NorthShore sent to all of its employees who requested religious exemptions is attached hereto as **Exhibit 4**.

**ANSWER:**

Defendant admits that it reviewed some exemptions initially granted and later denied some exemption requests. Defendant further admits that Exhibit 4 is a denial notice used by Defendant. Defendant denies each and every remaining allegation.

**COMPLAINT ¶61:**

NorthShore's generic denials were purportedly because all of the requests failed to meet some phantom "evidence-based criteria" that NorthShore never provided its employees in advance. (*See* Exhibit 4). The Religious Exemption Form contained no "criteria," "evidence-based" or otherwise, to guide employees as to what information or "evidence" NorthShore was seeking. (*See* Exhibit 3).

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶62:**

Even though NorthShore's employees went far above and beyond what NorthShore itself requested, and submitted detailed letters explaining the basis of their sincerely held religious beliefs against the vaccine, NorthShore ultimately and uniformly denied all exemptions for no reason at all, or for supposed lack of "evidence-based criteria," without identifying any such "evidence" — either in advance or at the time of the denials.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶63:**

In fact, NorthShore had previously granted one of its employees (Jane Doe 1) a "lifetime religious exemption" to required vaccines, and told her that she did "**not need to submit exemption requests anymore,**" but then denied even her a religious exemption to the COVID-19 vaccine for supposed lack of "evidence-based criteria."

**ANSWER:**

Defendant admits that Jane Doe 1 had been granted a lifetime exemption to the influenza

vaccine in 2018 and denied her exemption from the COVID-19 vaccine. Defendant denies each

and every remaining allegation.

**COMPLAINT ¶64:**

NorthShore then only gave Plaintiffs three business days to file an appeal — providing no guidance on what was deficient in the original application. (*See* Exhibit 4). A sample of NorthShore's "Appeal for Exemption" form is attached hereto as **Exhibit 5**.

**ANSWER:**

Defendant admits that it gave three business days to file an appeal and that Exhibit 5 is the

appeal exemption form. Defendant denies each and every remaining allegation.

**COMPLAINT ¶65:**

In that appeal, and regardless of the nature of any individual request, NorthShore also required employees to do the impossible — include their **entire vaccination history since the age of eighteen** (see Exhibit 4 at 2), ostensibly to judge the validity of their religious beliefs, even though NorthShore never requested its employees to provide prior vaccine information in their initial exemption requests. (See Exhibit 3).

**ANSWER:**

Defendant admits that vaccine history was part of the appeal process and was not requested

in the initial exemption request. Defendant denies each and every remaining allegation.

77268685v.2

**COMPLAINT ¶66:**

NorthShore's "Appeal for Exemption" form also contained no guidance for employees as to any criteria NorthShore would be using or expecting. (See Exhibit 5). NorthShore asked its employees to "limit your response to the area provided if possible," **meaning only three lines of text**, signaling to its employees that NorthShore was interested in even less detail than the five lines it provided in its initial exemption form. (*Id.*)

**ANSWER:**

Defendant admits that the form asked employees to limit their response to the three-line area in the form but provided that "if needed attach additional documentation with this appeal form." Defendant denies each and every remaining allegation.

**COMPLAINT ¶67:**

In one case, after being denied an exemption an employee privately requested clarification as to what NorthShore meant by "evidence-based criteria." NorthShore privately told the employee that the committee supposedly evaluated (1) whether the request includes a clear description of the sincerely held religious belief or practice that supports the request and (2) why such belief or practice guides the individual's objection to receiving the required vaccination. The email further stated that if the employee previously obtained vaccines, then a "satisfactory explanation of how this vaccine impacts their religious belief or practice is necessary." A copy of NorthShore's explanation of its supposed criteria, which NorthShore never published to its employees in advance of any requests or appeals, is attached hereto as **Exhibit 6**.

**ANSWER:**

Defendant admits that Exhibit 6 is an explanation of what Defendant meant by evidence-based criteria. Defendant is without knowledge or information sufficient to form a belief as to the remaining allegations.

**COMPLAINT ¶68:**

NorthShore then removed all pretense of a lawful exemption process by suddenly changing its exemption form to include a warning that all religious objections based on "aborted fetal cell lines, stem cells, tissue or derivative materials" "will result in denials," because supposedly "[t]hese are not in the NorthShore administered vaccines." A copy of NorthShore's revised Request for Religious Exemption is attached hereto as **Exhibit 7**.

**ANSWER:**

Defendant admits that information on aborted fetal lines was included in its exemption

form attached as Exhibit 7. Defendant denies each and every remaining allegation.

**COMPLAINT ¶69:**

NorthShore falsely asserted or implied that the COVID-19 vaccines have no link to aborted fetal cell lines, and also unlawfully purported to judge as invalid the religious beliefs of employees who object to the vaccines' indisputable connection to aborted fetal cell lines. (See Exhibit 7).

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶70:**

All of the individual exemption requests submitted by Plaintiffs clearly met NorthShore's unpublished, purported "criteria," yet were **still** denied, uniformly and generically. For example:

a.   Each of these employees provided "evidence" of their religious beliefs, including references to multiple Bible verses which they understand as commands from God to abstain from the vaccine.

b.   With only one or two exceptions, each of these employees provided the name and telephone number of their religious leader, as improperly requested by NorthShore. Most of the employees also provided letters of support from their clergy and churches, further discussing and validating their sincere religious beliefs, even though NorthShore did not, and could not legally, require such letters.

c.   These employees also provided ample "evidence" of the indisputable connection between the COVID-19 vaccines and aborted fetal cells, including by reference to multiple government websites that establish and document this connection. Several of the clergy letters provided by these employees also themselves contain further evidence of the connection between COVID-19 vaccines and aborted fetal cells.

**ANSWER:**

Defendant admits that some employees provided names and telephone information for

religious leaders and letters of support. Defendant denies each and every remaining allegation.

**COMPLAINT ¶71:**

And yet, **NorthShore denied all fourteen Plaintiffs' exemption requests** (and numerous others) with the same generic and non-descript communication referring to phantom "evidence-based criteria." (Exhibit 4).

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶72:**

It is clear from NorthShore's denials, that NorthShore never intended to grant any of these exemption requests to begin with, and that its entire exemption process was a sham. Indeed, NorthShore's express exclusion of abortion-related religious beliefs from consideration, and NorthShore's imposition of the requirement for employees to provide vaccination records for their entire adult lives (both of which are unlawful) rendered most, if not all, of those appeals futile.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶73:**

This point is further reinforced by Jane Doe 3's experience with a manager. On one occasion, a manager approached Jane Doe 3 and informed her that her position was going to be filled by someone else. When Jane Doe 3 informed the manager that her religious exemption appeal was still pending, the manager replied, **"it doesn't matter, we are not approving anyone."**

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶74:**

Likewise, when Jane Doe 5 informed her manager that she was still waiting on her appeal, her manager simply told her that the appeal would be denied.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶75:**

Moreover, even though NorthShore has imposed an October 31, 2021 deadline for its employees to be fully vaccinated, it has already sent letters **before that deadline** to employees advising them that their positions are currently being actively recruited for and potentially being filled. **NorthShore did this even for employees who had filed appeals of their exemption denials, before NorthShore gave them a decision on those appeals.**

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶76:**

In fact, NorthShore committed to providing a decision to exemption appeals within "approximately 10 days of receiving" an appeal. (Exhibit 4.) However, even though Northshore held its employees strictly to their "three business days" deadline for filing appeals, and warned them that "your appeal will not be considered if submitted after 3 business days," (Exhibit 5), NorthShore did not provide its appeal decisions timely, as it has promised. Indeed, as of the filing of this lawsuit, weeks after NorthShore received its employees' appeals, and with only one week remaining before NorthShore's November 1, 2021 deadline to purge itself of employees with religious objections, **NorthShore still has not responded to the great majority of the appeals it received from its employees**. This has left employees purposefully in the dark as to their fate on November 1, 2021, which NorthShore is using as an unconscionable pressure and intimidation tactic to force its employees to receive vaccination in violation of their sincerely held religious beliefs.

**ANSWER:**

Defendant admits that it planned to make decisions within approximately 10 days of receiving an appeal and that not all decisions were issued in that time frame. Defendant denies each and every remaining allegation.

**COMPLAINT ¶77:**

And, as of Friday, October 22, 2021, NorthShore had already started to purge itself of employees with sincere religious objections to its Mandatory COVID-19 Vaccination Policy, by removing many of those employees from the November work schedule, thereby confirming NorthShore's intention to terminate these employees.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶78:**

NorthShore even removed from the November schedule numerous employees whose appeals were still pending, indicating that NorthShore never intended to consider those appeals in good faith or to grant them.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶79:**

Therefore, NorthShore's provision for a religious exemption was a sham and its practice, with the exception of an isolated incident, was to simply deny religious exemptions en masse with boilerplate language, for unlawful reasons.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶80:**

As a result, NorthShore failed to engage with the individual Plaintiffs, and with all of its similarly situated employees, in good faith in the interactive process contemplated by Title VII.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶81:**

The one exception appears to be a nurse, Jane Doe 15, who submitted an exemption request very similar to (but much simpler and less detailed than) those submitted by Plaintiffs. Jane Doe 15 was initially denied her exemption, but upon filing her appeal NorthShore reversed itself and granted of her exemption request. A copy of NorthShore's approval notice to Jane Doe 15 is attached hereto as **Exhibit 8**. NorthShore granted Jane Doe 15 an accommodation to permit her to remain in her same patient-care role, with appropriate use of PPE and regular testing. (*Id.*) NorthShore did not claim that it would be an "undue hardship" to allow Jane Doe 15 to remain onsite or in her patient care role, and did not reassign Jane Doe 15 to a remote or other position. (*Id.*)

**ANSWER:**

Defendant admits that Jane Doe 15 was initially denied an exemption but the decision was

reversed on appeal in error, and that Exhibit 8 appears to be a notice provided to Jane Doe 15.

Defendant denies each and every remaining allegation.

**COMPLAINT ¶82:**

Jane Doe 15 was similarly situated to Plaintiffs and scores of other NorthShore employees. Jane Doe 15's request and subsequent appeal were basic and significantly shorter and less detailed than any of the Plaintiffs. She included only a short and plain statement identifying the conflict between her beliefs and the vaccination requirement (i.e., the vaccines' connection to aborted fetal cells), provided no "evidence" of the link between COVID-19 vaccines and abortion, and no "evidence" of her prior vaccination history. Jane Doe 15 described her religious beliefs generally, did not cite to a single Bible verse, and was ultimately granted a religious exemption and

accommodation. There is nothing materially different about Jane Doe 15's religious beliefs, or about her patient-care position at NorthShore, that would have justified NorthShore's uneven, illogical and discriminatory treatment of its other employees.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶83:**

In contrast, Plaintiffs' religious exemption requests were far more detailed and contained significantly more "evidence," and yet were repeatedly denied. NorthShore's approval of Jane Doe 15's religious exemption request, and its accommodation of her belief without any remote work requirement, while denying those of the Plaintiffs and many other employees amounts to unlawful disparate treatment and only further highlights NorthShore's sham, arbitrary and illogical religious exemption process.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶84:**

On October 1, 2021, counsel for the Plaintiffs sent NorthShore's counsel a detailed letter advising NorthShore that its policy and actions violated state and federal law. A copy of this letter is attached as **Exhibit 9**. Specifically, Plaintiffs' counsel informed NorthShore that its exemption application process was a sham and that NorthShore's failure to provide any religious exemptions and accommodations was a violation of the Illinois Health Care Right of Conscience Act, Title VII of the Civil Rights Act of 1964, and the Emergency Use Authorization statute. (Id.)

**ANSWER:**

Defendant admits it received a letter from Plaintiffs' counsel on or about October 1, 2021

and that Exhibit 9 appears to be a copy of that letter. Defendant denies any allegations inconsistent

with the contents of Exhibit 9 and further denies that it violated any rights of the Plaintiffs

whatsoever.

**COMPLAINT ¶85:**

On October 19, 2021, after some deliberation between counsel for the parties, NorthShore sent a letter to Plaintiffs' counsel purportedly reversing the denials of all but one of the Plaintiffs' religious exemption requests. The one religious request that was not granted is purportedly still pending review. A copy of NorthShore's response is attached hereto as **Exhibit 10**.

**ANSWER:**

Defendant objects to any reference to or the inclusion of Exhibit 10 on the grounds that it was a letter sent in furtherance of settlement discussions under Federal Rule of Evidence 408 and was so marked. To the extent an answer is required, Defendant denies any allegations inconsistent with the contents of Exhibit 10.

**COMPLAINT ¶86:**

However, while NorthShore reversed course and supposedly "approved" the religious exemptions, it did so in name only. Understanding that its previous rejection of its employees' religious exemption requests are legally indefensible, NorthShore now has switched tactics to achieve the exact same result, claiming that it will suffer an "undue hardship" if the Plaintiffs "remain in the worksite," and therefore, even though the exemptions have been "approved," NorthShore will only consider "an offer of fully remote work" or give Plaintiffs "the opportunity to apply for a fully remote position." (Exhibit 10).

**ANSWER:**

Defendant objects to any reference to or the inclusion of Exhibit 10 on the grounds that it was a letter sent in furtherance of settlement discussions under Federal Rule of Evidence 408 and was so marked. To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶87:**

NorthShore has therefore made it clear that it is unwilling to reasonably accommodate the religious beliefs of any of its employees, to allow them to continue their passion and life calling of serving others. This is the same result that NorthShore set out to accomplish from the very beginning, when it denied virtually all of its employees' exemption and accommodation requests for supposed failure to meet NorthShore's phantom, undisclosed "evidence-based criteria."

**ANSWER:**

Defendant denies each and every allegation.

### C. PLAINTIFFS AND THEIR SINCERELY HELD RELIGIOUS BELIEFS.

**COMPLAINT ¶88:**

Plaintiffs all have sincerely held religious beliefs that preclude them from complying with the Mandatory COVID-19 Vaccination Policy because of the connection between all three COVID-19 vaccines (in their origination, production, development, or testing), and the cell lines of aborted fetuses.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of whether the Plaintiffs have sincerely held religious beliefs relative to the COVID-19 vaccines and their beliefs concern fetal cell lines. Defendant denies each and every remaining allegation.

**COMPLAINT ¶89:**

A fundamental component of Plaintiffs' sincerely held religious beliefs is that all life is sacred, from the moment of conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶90:**

Plaintiffs' sincerely held religious beliefs are rooted in Scripture's teachings that "[a]ll Scripture is given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." *2 Timothy* 3:16 (KJV).

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶91:**

Because of that sincerely held religious belief, Plaintiffs believe that they must conform their lives, including their decisions relating to medical care, to the commands and teaching of Scripture.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

77268685v.2

**COMPLAINT ¶92:**

Plaintiffs have sincerely held religious beliefs that God forms children in the womb and knows them prior to their birth, and that because of this, life is sacred from the moment of conception. *See Psalm* 139:13-14 ("For you formed my inward parts; you knitted me together in my mother's womb. I praise you, for I am fearfully and wonderfully made." (ESV)); *Psalm* 139:16 ("Your eyes saw my unformed substance; in your book were written, every one of them, the day that were formed for me, when as yet there was none of them." (ESV)); *Isaiah* 44:2 ("the Lord that made thee, and formed thee from the womb . . ." (KJV)); *Isaiah* 44:24 ("Thus saith the Lord, thy redeemer, and he that formed thee from the womb, I am the Lord that maketh all things." (KJV)); *Isaiah* 49:1 ("The Lord hath called my from the womb; from the bowels of my mother hath he made mention of my name." (KJV)); *Isaiah* 49:5 ("the Lord that formed me from the womb to be his servant" (KJV)); *Jeremiah* 1:5 ("Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee, and I ordained thee." (KJV)).

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶93:**

Plaintiffs also have sincerely held religious beliefs that every child's life is sacred because they are made in the image of God. See *Genesis* 1:26-27 ("Let us make man in our image, after our likeness . . . So God created man in his own image; in the image of God created he him; male and female created he them." (KJV)).

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶94:**

Plaintiffs also have sincerely held religious beliefs that because life is sacred from the moment of conception, the killing of that innocent life is the murder of an innocent human in violation of Scripture. *See, e.g.*, *Exodus* 20:13 ("Though shalt not kill." (KJV)); *Exodus* 21:22-23 (setting the penalty as death for even the accidental killing of an unborn child); *Exodus* 23:7 ("the innocent and righteous slay thou not, for I will not justify the wicked." (KJV)); *Genesis* 9:6 ("Whoso sheddeth a man's blood, by man shall his blood be shed: for in the image of God made he man." (KJV)); *Deuteronomy* 27:25 ("Cursed be he that taketh reward to slay an innocent person." (KJV)); *Proverbs* 6:16-17 ("These six things doth the Lord hate: yea, seven are an abomination to him . . . hands that shed innocent blood." (KJV)).

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶95:**

Plaintiffs have sincerely held religious beliefs, rooted in the Scriptures listed above, that anything that condones, supports, justifies, or benefits from the taking of innocent human life via abortion is sinful, contrary to the Scriptures, and must be denounced, condemned, and avoided altogether.

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶96:**

Plaintiffs have sincerely held religious beliefs, rooted in the Scriptures listed above, that it is an affront to Scripture's teaching that all life is sacred for Plaintiffs to use a product derived from or connected in any way with abortion.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶97:**

Plaintiffs' sincerely held religious beliefs, rooted in the above Scriptures, preclude them from accepting any one of the three currently available COVID-19 vaccines, because all three vaccines were derived from, produced, manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶98:**

Plaintiffs have sincerely held religious objections to the Johnson & Johnson (Janssen Pharmaceuticals) vaccine because it unquestionably used aborted fetal cells lines to produce and manufacture the vaccines.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶99:**

As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson **did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine."** *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), available at https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 2, 2021) (bold emphasis original).

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, Defendant admits the North Dakota Department of Health has a handout as alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶100:**

The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine, which used PER.C6 fetal cell line, "is a retinal cell line that was **isolated from a terminated fetus in 1985.**" Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19VaccineFAQ.pdf (last visited Aug. 2, 2021) (emphasis added).

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, Defendant admits the Louisiana Department of Health has a handout as alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶101:**

Scientists at the American Association for the Advancement of Science have likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine. *Meredith Wadman, Vaccines that use human fetal cells draw fire*, Science (June 12, 2020), *available at* https://science.sciencemag.org/content/368/6496/1170.full (last visited Aug. 2, 2021).

**ANSWER:**

Defendant admits the American Association for the Advancement of Science published the

research alleged.  Defendant denies each and every remaining allegation.

**COMPLAINT ¶102:**

Plaintiffs also have sincerely held religious objections to the Moderna and Pfizer/BioNTech COVID-19 vaccines because both of these vaccines, too, have their origins in research on aborted fetal cells lines.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or

falsity of Plaintiffs' beliefs alleged.  Defendant denies each and every remaining allegation.

**COMPLAINT ¶103:**

As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, the Moderna and Pfizer mRNA vaccines are ultimately derived from research and testing on aborted fetal cell lines. In fact, "[e]arly in the development of mRNA vaccine technology, **fetal cells were used for `proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein."** *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), available at https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 2, 2021) (emphasis added).

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant admits the North Dakota Department of Health has

a handout as alleged.  Defendant denies each and every remaining allegation.

**COMPLAINT ¶104:**

The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their COVID-19 mRNA vaccines. Louisiana Department of Public Health, You Have Questions, We Have Answers: COVID-19 Vaccine FAQ (Dec. 12, 2020), available at https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Aug. 2, 2021).

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, Defendant admits the Louisiana Department of Health has a handout as alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶105:**

Therefore, NorthShore's pretext for excluding religious beliefs premised on the demonstrable and undeniable association between all three COVID-19 vaccines and aborted fetal cell lines was patently false, and the exclusion of those beliefs was unlawful and discriminatory.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶106:**

Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6, Plaintiffs' sincerely held religious beliefs compel them to abstain from obtaining or injecting any of these products into their body, regardless of the perceived benefit or rationale.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶107:**

In addition, Plaintiffs have sincerely held religious beliefs that their body is the temple of the Holy Spirit, and to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the Temple of the Holy Spirit. (*See 1 Corinthians* 6:15-20 ("Know ye not that your bodies are the members of Christ? shall I then take the members of Christ and make them members of an harlot? God forbid. . . . What? Know ye not that your body is the temple of the Holy Ghost which is in you, which have of God, and ye are not your own? For ye are bought with a price: therefore glorify God in your body, and in your spirit, which are God's." (KJV)).

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

77268685v.2

**COMPLAINT ¶108:**

While there may be some faith leaders and other adherents whose understanding of Scripture is different, and who may be willing to accept one of the three currently available COVID-19 vaccines despite their connection with aborted fetal cell lines, Plaintiffs' sincerely held religious beliefs compel them to adhere to the truth that the testing, development, production, or other connection to aborted fetal cell lines is morally and Scripturally unacceptable and an affront to Scripture's teachings that God values all human life, and that abortion — in all of its manifestations and with all of its so-called `benefits' - is a grave sin in which Plaintiffs cannot participate.

**ANSWER:**

Defendant admits on information and belief that there are faith leaders and others whose

understanding of Scripture is different. Defendant is without knowledge or information sufficient

to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged.  Defendant denies each and

every remaining allegation.

**COMPLAINT ¶109:**

In addition to their sincerely held religious beliefs that compel them to abstain from any connection to the grave sin of abortion, Plaintiffs have sincerely held religious beliefs that the Holy Spirit — through prayer and the revelation of Scripture — guide them in all decisions they make in life.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or

falsity of Plaintiffs' beliefs alleged.  Defendant denies each and every remaining allegation.

**COMPLAINT ¶110:**

Plaintiffs have sincerely held religious beliefs that Jesus Christ came to this earth, died on the cross for their sins, was resurrected three days later, and that when He ascended to Heaven, He sent the Holy Spirit to indwell His Believers and to guide them in all aspects of their lives. *See John* 16:7 ("Nevertheless I tell you the truth, it is expedient for you that I go away: for if I go not away, the Comforter will not come unto you; but if I depart, I will send him unto you." (KJV)); *John* 14:26 ("But the Comforter, which is the Holy Ghost, whom the Father will send in my name, he shall teach you all things, and bring all things to your remembrance, whatsoever I have said unto you." (KJV)).

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶111:**

Plaintiffs have sincerely held religious beliefs that the Holy Spirit was given to them by God to reprove them of righteousness and sin and to guide them into all truth. See John 16:8,13 ("And when he is come, he will reprove the world of sin, and of righteousness, and of judgment . . . when he, the Spirit of truth, is come, he will guide you into all truth: for he shall not speak of himself; but whatsoever he shall hear, that shall he speak: and he will shew you things to come." (KJV)).

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶112:**

Plaintiffs also have sincerely held religious beliefs that they shall receive all answers to their questions through prayer and supplication, including for decisions governing their medical health. *See James* 1:5 ("If any of you lack wisdom, let him ask of God, that giveth to all men liberally, and upbraideth not; and it shall be given him." (KJV)); *Mark* 11:24 ("Therefore I say unto you, What things soever ye desire, when ye pray, believe that ye receive them, and ye shall have them." (KJV)); *Philippians* 4:6-7 ("but in everything by prayer and supplication with thanksgiving let your request be made known to God. And the peace of God, which passeth all understanding, shall keep your hearts and minds through Christ Jesus." (KJV)); *1 John* 4:14-15 ("And this is the confidence we have in him, that, if we ask anything according to his will, he heareth us. And if we know that he hear us, whatsoever we ask, we know that we have the petitions that we desired of him." (KJV)).

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶113:**

Through much prayer and reflection, Plaintiffs have sought wisdom, understanding, and guidance on the proper decision to make concerning these COVID-19 vaccines, and Plaintiffs have been convicted [sic] by the Holy Spirit in their beliefs that accepting any of the three currently available vaccines is against the teachings of Scripture and would be a sin.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶114:**

Plaintiffs have sincerely held religious beliefs that compel them to follow the teachings of the Holy Spirit, who has not given them peace or comfort to accept any of the three currently available COVID-19 vaccines.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶115:**

Plaintiffs have sincerely held religious beliefs that they are being guided and instructed by the Holy Spirit not to accept any of the three currently available COVID-19 vaccines and that it would be a sin against God to do so.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiffs' beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶116:**

Plaintiffs have shared these religious beliefs, and others, with NorthShore, and have asked NorthShore for exemption and reasonable accommodation for these beliefs, but NorthShore has unlawfully and callously refused.

**ANSWER:**

Defendant admits that Plaintiffs shared certain of these beliefs with Defendant and requested exemption. Defendant denies each and every remaining allegation.

77268685v.2

### D. PLAINTIFFS' WILLINGNESS TO COMPLY WITH ALTERNATIVE SAFETY MEASURES.

**COMPLAINT ¶117:**

Plaintiffs can and will comply with all other reasonable alternatives to compliance with NorthShore's Mandatory COVID-19 Vaccination Policy.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to Plaintiff's

intentions. Defendant denies each and every remaining allegation.

**COMPLAINT ¶118:**

Plaintiffs are willing to and will comply with all requirements to wear a mask, if necessary, as a part of the reasonable accommodation for their sincerely held religious objection to NorthShore's Mandatory COVID-19 Vaccination Policy.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to Plaintiff's

intentions. Defendant denies each and every remaining allegation.

**COMPLAINT ¶119:**

Plaintiffs are willing to and will comply with surveillance testing protocols as part of their reasonable accommodation for their sincerely held religious objection to NorthShore's Mandatory COVID-19 Vaccination Policy.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to Plaintiff's

intentions. Defendant denies each and every remaining allegation.

**COMPLAINT ¶120:**

Plaintiffs are willing to and will comply with all self-monitoring, self-reporting, or other reasonable safety protocols to monitor and report any sign of symptoms or other issues, as part of their reasonable accommodation for their sincerely held religious objection to NorthShore's Mandatory COVID-19 Vaccination Policy.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to Plaintiff's

intentions. Defendant denies each and every remaining allegation.

**COMPLAINT ¶121:**

Plaintiffs are willing to and will comply with any reasonable request to accomplish their pursuit of obtaining a reasonable accommodation for their sincerely held religious objection to NorthShore's Mandatory COVID-19 Vaccination Policy.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to Plaintiff's

intentions. Defendant denies each and every remaining allegation.

**COMPLAINT ¶122:**

Plaintiffs are willing to and will comply with the same alternatives to vaccination that NorthShore provided as accommodations to Jane Doe 15, to employees with pregnancy and other medical conditions, and to visitors and patients of NorthShore, all of whom are allowed to be at NorthShore and are not being purged and excluded as NorthShore is doing to Plaintiffs and numerous other employees that have requested religious exemptions.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to Plaintiff's

intentions. Defendant denies each and every remaining allegation.

    E.    **IRREPARABLE INJURY TO PLAINTIFFS FROM THE MANDATORY COVID-19 VACCINATION POLICY.**

**COMPLAINT ¶123:**

Absent a TRO and injunctive relief, **and beginning on November 1, 2021, Plaintiffs will be subject to adverse employment action from NorthShore**. Plaintiffs will not be permitted to remain in their positions or any reasonably-similar position. NorthShore will expel Plaintiffs out of its facilities, and will terminate all or almost all of them. **NorthShore has already begun this purge by removing many Plaintiffs and others who have declined vaccination on religious grounds from the November work schedule.**

**ANSWER:**

Defendants deny each and every allegation.

**COMPLAINT ¶124:**

Absent a TRO and injunctive relief, Plaintiffs will be deprived of the statutorily protected rights to the exercise of their sincerely held religious beliefs.

**ANSWER:**

Defendants deny each and every allegation.

**COMPLAINT ¶125:**

Despite being willing and capable of complying with all social distancing, testing, monitoring, and facial covering requirements (and all other reasonable requests arising from accommodation for their sincerely held religious beliefs), Plaintiffs are being discriminatorily targeted, singled out, and punished for the exercise of their sincerely held religious beliefs.

**ANSWER:**

Defendants deny each and every allegation.

**COMPLAINT ¶126:**

Some of the harms which Plaintiffs will suffer absent a TRO include homelessness, lack of medical care, lack of food and shelter, disrupted education for their children, financial ruin, and harms to their physical, mental and emotional health.

**ANSWER:**

Defendants deny each and every allegation.

**F.      CLASS ALLEGATIONS.**

**COMPLAINT ¶127:**

Plaintiffs bring this class action under Federal Rules of Civil Procedure 23(a) and (b).

**ANSWER:**

Defendant admits that Plaintiffs' purport to bring this lawsuit as a class action  pursuant to

F.R.C.P. 23(a) and (b), but denies that class treatment is appropriate.

**COMPLAINT ¶128:**

Through this action, Plaintiffs seek to represent a class of all NorthShore employees who have requested or will request religious exemptions and accommodations from the Mandatory COVID-19 Vaccination Policy and who have had those requests unlawfully denied (expressly or constructively).

**ANSWER:**

Defendant admits that Plaintiffs seek to represent the alleged class but denies that it violated any rights whatsoever, denies that class treatment is appropriate, and denies that Plaintiffs are qualified to represent any putative class.

**COMPLAINT ¶129:**

The class is so numerous that joinder of all members is impractical. While the exact class size is unknown to Plaintiffs at this time, public reports indicate that NorthShore has as many as 18,000 employees.[2] The precise number and identification of the class members will be ascertainable from NorthShore's records during discovery.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no response is required.

To the extent a response is required, Defendant denies each and every allegation.

**COMPLAINT ¶130:**

There are questions of law and fact common to all members of the class. Those common questions include, but are not limited to, the following:

    a.    Did NorthShore comply with federal and state law when it indiscriminately denied religious exemption and accommodation requests en masse?

    b.    Did NorthShore comply with federal and state law when it informed the Plaintiffs that while their exemptions were finally "approved," it would be an "undue hardship" on NorthShore for them to keep their current positions, irrespective of any alternative safety measures that Plaintiffs are willing to undertake, and that other healthcare employers in Illinois and throughout the country allow their employees to undertake?

    c.    Did NorthShore violate federal and state law when it granted Jane Doe 15 her religious exemption request, and provided her a reasonable accommodation, even while denying Plaintiffs' similar requests?

    d.    Did NorthShore comply with its obligations under federal law to engage in the interactive process when responding to each exemption request?

---

[2] https://www.chicagotribune.com/business/ct-biz-northshore-covid-vaccine-requirement-20210816-7m3b4mmnojag7dtmiycf4dgzem-story.html

44

e.  Did NorthShore violate federal and state law when it informed Plaintiffs and others that they could not, and should not, submit exemption requests premised on the link between the vaccines and abortion?

f.  Did NorthShore provide an adequate mechanism for requesting and obtaining a religious exemption when it provided Plaintiffs and others only three days to appeal, and to provide an entire adult vaccine history, and then to deny them based on the lack of "evidence-based criteria"?

g.  Did NorthShore violate federal and state law when it failed to provide a decision to its employees appeals within the timeframe to which NorthShore committed; when it pressured its employees to accept vaccination against their religious beliefs by posting their jobs and recruiting their replacements; and when it removed employees from the November work schedule, even as their appeals were supposedly still pending?

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no response is required.

To the extent a response is required, Defendant denies each and every allegation.

**COMPLAINT ¶131:**

Plaintiffs' claims are typical of the claims of the class because they, like the class members, requested exemptions and accommodations from the Mandatory COVID-19 Vaccination Policy and NorthShore denied those requests.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no response is required.

To the extent a response is required, Defendant denies each and every allegation.

**COMPLAINT ¶132:**

For the same reason, Plaintiffs will fairly and adequately protect the interests of the class.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no response is required.

To the extent a response is required, Defendant denies each and every allegation.

**COMPLAINT ¶133:**

The question of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available

45

methods for fairly and efficiently adjudicating Plaintiffs' claims. Joinder of all members is impracticable.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no response is required.

To the extent a response is required, Defendant denies each and every allegation.

## COUNT I - VIOLATION OF THE ILLINOIS HEALTH CARE RIGHTS OF CONSCIENCE ACT, 745 ILCS 70

**COMPLAINT ¶134:**

Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-133 as if fully set forth herein.

**ANSWER:**

Defendant incorporates its answers to paragraphs 1-133 as if fully stated here.

**COMPLAINT ¶135:**

The Illinois Health Care Right of Conscience Act (the "Act") protects Plaintiffs' rights to engage in the exercise of their sincerely held religious beliefs without fear of discrimination from any entity, whether public or private, including NorthShore.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation with regards to

the claims contained in this Complaint.

**COMPLAINT ¶136:**

In fact, the State of Illinois has declared it to be the public policy of the State to protect the religious conscience rights of all individuals in the State of Illinois as it relates to health care services. The Illinois Health Care Right of Conscience Act provides, specifically,

The General Assembly finds and declares that people and organizations hold different beliefs about whether certain health care services are morally acceptable. **It is the public policy of the State of Illinois to respect and protect the right of conscience of all persons who refuse to obtain, receive or accept, or who are engaged in, the delivery of, arrangement for, or payment of health care services and medical care whether acting individually, corporately, or in association with other persons; and to prohibit all forms of discrimination,**

46

**disqualification, coercion, disability or imposition of liability upon such persons or entities by reason of their refusing to act contrary to their conscience or conscientious convictions in providing, paying for, or refusing to obtain, receive, accept, deliver, pay for, or arrange for the payment of health care services and medical care.** It is also the public policy of the State of Illinois to ensure that patients receive timely access to information and medically appropriate care.

745 ILCS 70/2 (emphasis added).

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies each and every allegation inconsistent with the language of the quoted section and further denies the conclusion preceding the language allegedly quoted from the Act.

**COMPLAINT ¶137:**

In furtherance of the State of Illinois public policy of protecting the religious conscience rights of all Illinoisans to exercise their sincere religious convictions in their medical decision-making, the Illinois Health Care Right of Conscience Act states:

**It shall be unlawful for any** person, public or **private institution**, or public official **to discriminate against any person in any manner**, including but not limited to, licensing, hiring, promotion, transfer, staff appointment, hospital, managed care entity, or **any other privileges, because of such person's conscientious refusal to receive, obtain, accept, perform, assist, counsel, suggest, recommend, refer or participate in any way in any particular form of health care services contrary to his or her conscience.**

745 ILCS 70/5 (emphasis added).

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies each and every allegation inconsistent with the language of the quoted section and further denies the conclusion preceding the language allegedly quoted from the Act.

77268685v.2

## COMPLAINT ¶138:

The Illinois Health Care Right of Conscience Act further provides:

**It shall be unlawful for any public or private** employer, entity, agency, **institution**, official or person, including but not limited to, a medical, nursing or other medical training institution, to deny admission because of, to place any reference in its application form concerning, to orally question about, to impose any burdens in terms or conditions of employment on, or to otherwise discriminate against, any applicant, in terms of employment, **admission to or participation in any programs for which the applicant is eligible, or to discriminate in relation thereto, in any other manner, on account of the applicant's refusal to receive, obtain, accept, perform, counsel, suggest, recommend, refer, assist or participate in any way in any forms of health care services contrary to his or her conscience.**

745 ILCS 70/7 (emphasis added).

## ANSWER:

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation inconsistent with

the language of the quoted section.

## COMPLAINT ¶139:

The Illinois Health Care Right of Conscience Act defines "Health care" broadly to include vaccinations. Specifically, it provides that "Health Care":

means **any phase** of patient care, including but not limited to, **testing**; diagnosis; **prognosis**; ancillary research; **instructions**; family planning, counselling, referrals, or any other advice in connection with the use or procurement of contraceptives and sterilization or abortion procedures; **medication**; surgery or **other care or treatment rendered by a physician or physicians, nurses, paraprofessionals or health care facility, intended for the physical**, emotional, and mental well-being of persons.

745 ILCS 70/3 (a) (emphasis added).

## ANSWER:

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation inconsistent with

the language of the quoted section and further denies the conclusion that the law defines health

care "broadly to include vaccinations."

## COMPLAINT ¶140:

The Illinois Health Care Right of Conscience Act defines "Conscience," as "a sincerely held set of moral convictions arising from belief in or relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths." 745 ILCS 70/3(e).

## ANSWER:

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation inconsistent with

the language of the quoted section.

## COMPLAINT ¶141:

A violation of the Illinois Health Care Right of Conscience Act provides for the following remedies:

> **Any person, association, corporation, entity or health care facility injured by any public or private person, association, agency, entity or corporation by reason of any action prohibited by this Act may commence a suit therefor, and shall recover threefold the actual damages, including pain and suffering, sustained by such person, association, corporation, entity or health care facility, the costs of the suit and reasonable attorney's fees; but in no case shall recovery be less than $2,500 for each violation in addition to costs of the suit and reasonable attorney's fees. These damage remedies shall be cumulative, and not exclusive of other remedies afforded under any other state or federal law.**

745 ILCS 70/12 (emphasis added).

## ANSWER:

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation inconsistent with

the language of the quoted section.

49

**COMPLAINT ¶142:**

The Illinois Health Care Right of Conscience Act acts as a super statute in Illinois, preempting and superseding all other acts and portions of acts that conflict with the explicit policies contained in the statute.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶143:**

Specifically, the Illinois Health Care Right of Conscience Act states: "This Act shall supersede all other Acts or parts of Acts to the extent that any Acts or parts of Acts are inconsistent with the terms or operation of this Act." 745 ILCS 70/14.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation inconsistent with

the language of the quoted section.

**COMPLAINT ¶144:**

Even as a private institution, NorthShore is subject to the provision of the Illinois Health Care Right of Conscience Act under 745 ILCS 70/5 and 745 ILCS 70/7, and is therefore prohibited from discriminating against Plaintiffs for their refusal to accept one of the vaccines on account of their sincerely held religious beliefs.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation inconsistent with

the language of the cited section.

**COMPLAINT ¶145:**

Plaintiffs' sincerely held religious beliefs, which were articulated to NorthShore under the signed written requests required by the Mandatory COVID-19 Vaccination Policy, constitute Plaintiffs' "conscience" under the Act because they are "a sincerely held set of moral convictions arising from belief in or relation to God." 745 ILCS 70/3(e).

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶146:**

The COVID-19 vaccines constitute "Health care" under the Act because they are a "phase of patient care," "medication," and/or "other care or treatment rendered by a physician or physicians, nurses, paraprofessionals or health care facility, intended for the physical, emotional, and mental well-being of persons." 745 ILCS 70/3(a).

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶147:**

The Act does not provide NorthShore with any defense to discriminate against Plaintiffs based on so-called "undue hardship." *Rojas v. Martell*, 2020 IL App (2d) 190215, ¶ 43, 443 Ill. Dec. 212, 224, 161 N.E.3d 336, 348.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶148:**

By imposing its Mandatory COVID-19 Vaccination Policy upon Plaintiffs and refusing to grant them religious exemptions and reasonable accommodations from the Mandatory COVID-19 Vaccination Policy, NorthShore has impermissibly, unlawfully, and unconscionably discriminated against Plaintiffs because of their conscientious refusal to receive or accept one of the three currently available COVID-19 vaccines in contradiction to their rights of conscience and sincerely held religious beliefs.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶149:**

By threatening Plaintiffs with adverse employment action for failure to comply with the Mandatory COVID-19 Vaccination Policy, NorthShore has impermissibly discriminated against

the Plaintiffs on account of their sincerely held religious objections to receiving or accepting one of the three COVID-19 vaccines in violation of 745 ILCS 70/5.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶150:**

NorthShore's Mandatory COVID-19 Vaccination Policy, on its face and as applied, is a gross violation of Plaintiffs' sincerely held beliefs, and their rights of conscience under the Illinois Health Care Right of Conscience Act.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶151:**

NorthShore's Mandatory COVID-19 Vaccination Policy, on its face and as applied, is an impermissible discrimination against Plaintiffs on the basis of their sincerely held religious beliefs, and in violation of Plaintiffs' rights of conscience under the Illinois Health Care Right of Conscience Act.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶152:**

NorthShore's Mandatory COVID-19 Vaccination Policy has caused, is causing, and will continue to cause Plaintiffs immediate and irreparable harm by denying them their statutory right to accept or refuse administration of a COVID-19 vaccine that violates their conscience and religious beliefs, in direct violation of the Illinois Health Care Right of Conscience Act.

Defendant denies each and every allegation.

**COMPLAINT ¶153:**

Plaintiffs have no adequate remedy at law to prevent the ongoing deprivation of their statutory rights under the Illinois Health Care Right of Conscience Act.

**ANSWER:**

Defendant denies each and every allegation.

77268685v.2

**COMPLAINT ¶154:**

Absent a TRO and injunctive relief, NorthShore's deprivation of Plaintiffs' right to accept or refuse administration of health care will cause them to suffer for the exercise of their statutory rights under the Illinois Health Care Right of Conscience Act.

**ANSWER:**

Defendant denies each and every allegation.

WHEREFORE, Plaintiffs respectfully pray for relief against NorthShore as set forth in their Prayer for Relief.

**ANSWER:**

Pursuant to Federal Rule of Civil Procedure 10(b), "a party must state its claims or defenses in numbered paragraphs." Fed. R. Civ. P. 10(b). This paragraph therefore does not state a claim to which a response is required. To the extent a response is required, Defendant admits that Plaintiffs seek relief but denies Plaintiff are entitled to any relief whatsoever.

### COUNT II - VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq.*

**COMPLAINT ¶155:**

Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-133 as if fully set forth herein.

**ANSWER:**

Defendant incorporates its answers to paragraphs 1-133 as if fully stated here.

**COMPLAINT ¶156:**

Title VII of the Civil Rights Act of 1964 prohibits NorthShore from discriminating against its employees on the basis of their sincerely held religious beliefs. *See* 42 U.S.C. §2000e-2(a).

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required. To the extent an answer is required, Defendant denies any allegations inconsistent with the cited law.

**COMPLAINT ¶157:**

Plaintiffs hold sincere religious beliefs that preclude them from receiving a COVID-19 vaccine.

**ANSWER:**

Defendant is without knowledge or information sufficient to form a belief as to the truth or

falsity of Plaintiffs beliefs alleged. Defendant denies each and every remaining allegation.

**COMPLAINT ¶158:**

Plaintiffs informed NorthShore of those beliefs and requested religious exemptions and reasonable accommodations from the vaccine mandate.

**ANSWER:**

Defendant admits that Plaintiffs informed Defendant of certain of their alleged beliefs and

requested accommodations. Defendant denies each and every remaining allegation.

**COMPLAINT ¶159:**

NorthShore has failed to engage in the interactive process with Plaintiffs regarding their religious accommodation requests.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶160:**

Irrespective of the interactive process, NorthShore failed to provide Plaintiffs with religious exemptions and reasonable accommodations, thereby discriminating against Plaintiffs because of their religious beliefs.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶161:**

NorthShore's failure to provide religious exemptions and accommodations has harmed and will continue to harm the Plaintiffs.

77268685v.2

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶162:**

By failing to engage in the interactive process or offer any reasonable accommodation, NorthShore's discriminatory actions were intentional and/or reckless and in violation of Title VII.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶163:**

Plaintiffs have filed and are filing charges with the EEOC complaining of these discriminatory actions, accompanied by attorney-requested immediate right to sue, which is expected imminently. This Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's administrative process. *See* e.g., *Sheehan v. Purolator Courier Corp.*, 676 F.2d 877, 884 (2d Cir. 1981); *Drew v. Liberty Mut. Ins. Co.*, 480 F.2d 69, 74 (5th Cir. 1973); *Bailey v. Delta Air Lines, Inc.*, 722 F.2d 942, 944-45 (1st Cir. 1983).

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant admits on information and belief that Plaintiffs

have filed or are filing charges with the EEOC and that their counsel has requested an immediate

right to sue with regards to those charges. Defendant denies each and every remaining allegation.

**COUNT III - VIOLATION OF EMERGENCY USE AUTHORIZATION PROVISIONS OF THE UNITED STATES CODE, 21 U.S.C. §360bbb-3,** *et seq.*

**COMPLAINT ¶164:**

Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1-133 as if fully set forth herein.

**ANSWER:**

Defendant incorporates its answers to paragraphs 1-133 as if fully stated here.

**COMPLAINT ¶165:**

The United States Code provides that:

77268685v.2

**subject to the provisions of this section**, the Secretary (of the Department of Health and Human Services) may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in this section as an "emergency use."

21 U.S.C. §360bbb-3 (a) (1) (emphasis added).

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies any allegations inconsistent with the quoted

section.

**COMPLAINT ¶166:**

166.    For ease of reference, Plaintiffs will refer to the general provisions of 21 U.S.C. §360bbb-3 as the "Emergency Use Authorization Statute" or "EUA Statute."

**ANSWER:**

Defendant admits this allegation.

**COMPLAINT ¶167:**

Part of the explicit statutory conditions for an Emergency Use Authorization under the Emergency Use Authorization statute, **the statute mandates that all individuals to whom the product approved for Emergency Use may be administered be given the option to accept or refuse administration of the product.**

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies any allegations inconsistent with the

referenced section.

**COMPLAINT ¶168:**

Specifically, 21 U.S.C. §360bbb -3 (e) (1) (A)(ii)(III), states:

With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall for a person who carries out an activity for which the authorization is issued, establish such conditions on an authorization under this section as the

Secretary finds necessary or appropriate to protect the public health, including the following

. . .

Appropriate conditions designed to ensure that individuals to whom the product is administered are informed—

(I)        that the Secretary has authorized the emergency us of the product;

(II)        of the significant known potential benefits and risks of such use, and of the extent to which such benefits are unknown; and

(III)        **of the option to accept or refuse administration of the product**, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

21 U.S.C. §360bbb-3(e)(1)(A)(ii)(I)-(III) (emphasis added).

## ANSWER:

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies any allegations inconsistent with the quoted

section.

## COMPLAINT ¶169:

Put simply, the Emergency Use Authorization statute provides that, **as a condition of receiving authorization for Emergency Use, <u>all individuals to whom the product may be administered are given the right to accept or refuse administration of the product.</u>**

## ANSWER:

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies any allegations inconsistent with the cited

section.

## COMPLAINT ¶170:

The only currently available COVID-19 vaccines (Janssen/Johnson & Johnson, Moderna, and Pfizer/BioNTech) are only authorized for use under the Emergency Use Authorization statute and have no general approval under the United States Code.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶171:**

Because all three of the currently available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute mandates that all individuals to whom the product may be administered, including Plaintiffs, be given the right to accept or refuse administration of the product.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶172:**

The recent FDA biologics license application (BLA) approval of the product COMIRNATY, COVID-19 Vaccine, mRNA, manufactured by BioNTech Manufacturing GmbH,[3] **does not change the EUA status** of the Pfizer-BioNTech COVID-19 Vaccine that has been available under EUA since December 23, 2020.[4] According to the EUA extension letter issued by the FDA to Pfizer on August 23, 2021, the Pfizer-BioNTech COVID-19 Vaccine and BioNTech's COMIRNATY, COVID-19 Vaccine, mRNA "**are legally distinct**" products.[5]

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶173:**

Moreover, the now "approved" COMIRNATY vaccine cannot be distributed for use until BioNTech submits "final container samples of the product in final containers together with protocols showing results of all applicable tests" and BioNTech receives "a notification of release from the Director, Center for Biologics Evaluation and Research (CBER)."[6] Thus, it is not clear

---

[3] BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA (Aug. 23, 2021), https://www.fda.gov/media/151710/download .

[4] 5 EUA Extension Letter for Pfizer-BioNTech COVID-19 Vaccine (Aug. 23, 2021), https://www.fda.gov/media/150386/download .

[5] 6 *Id.* at 3 n.10 (emphasis added). release from the Director, Center for Biologics Evaluation and Research (CBER)."7 Thus, it is not clear when (or if) any NorthShore employee will have access to the "approved" COMIRNATY vaccine, leaving all NorthShore employees who may elect to receive the "Pfizer" vaccine pursuant to NorthShore's mandatory vaccine policy to receive a dose of the current stock of Pfizer-BioNTech vaccine still being administered subject to EUA rules.

[6] BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA, *supra* note 4 at 2.

when (or if) any NorthShore employee will have access to the "approved" COMIRNATY vaccine, leaving all NorthShore employees who may elect to receive the "Pfizer" vaccine pursuant to NorthShore's mandatory vaccine policy to receive a dose of the current stock of Pfizer-BioNTech vaccine still being administered subject to EUA rules.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶174:**

On August 23, 2021, the United States Food and Drug Administration issued two separate letters pertaining to two separate COVID-19 vaccines. **Exhibit 11**, BioNTech Letter, United States Food and Drug Administration to BioNTech Manufacturing GmbH (Aug. 23, 2021), **Exhibit 12** Pfizer Letter, United States Food and Drug Administration to Pfizer, Inc. (Aug. 23, 2021).)

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶175:**

In the Pfizer Letter, the FDA confirms that, on December 11, 2020, it granted Emergency Use Authorization for the previous Pfizer-BioNTech COVID-19 Vaccine. (Ex. 12, Pfizer Letter at 1.) It also notes that the EUA approval was continued on December 23, 2020, February 25, 2020, May 10, 2021, June 25, 2021, and August 12, 2021. (Pfizer Letter at 1-2.)

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶176:**

The Pfizer Letter also makes clear that **there is a scientific, manufacturing, and legally significant difference between the Pfizer-BioNTech COVID-19 Vaccine and the newly approved Comirnaty Vaccine.** (Pfizer Letter at 2 n.9.)

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶177:**

Specifically, the FDA stated that although the COMIRNATY COVID-19 Vaccine was granted full approval by the FDA, the Pfizer-BioNTech COVID-19 Vaccine was still only subject to the EUA authorization. (Pfizer Letter at 2 n.9 ("In the August 23, 2021 revision, FDA clarified that, subsequent to the FDA approval of COMIRNATY (COVID19 Vaccine, mRNA) for the prevention of COVID-19 for individuals 16 years of age and older, **this EUA would remain in place for the Pfizer-BioNTech COVID-19 vaccine for the previously-authorized indication and uses**. It also authorized COMIRNATY (COVID-19 Vaccine, mRNA) under this EUA for certain uses that are not included in the approved biologics license application (BLA)." (Emphasis added).

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶178:**

Put simply, because all three of the currently available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute prohibits NorthShore (or any other entity) from making the COVID-19 vaccines mandatory.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶179:**

All existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine remain under the sole authorization of the EUA. (Pfizer Letter at 2 n.9.)

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶180:**

On information and belief, the existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine register in the millions, and anyone receiving any COVID-19 vaccine for the foreseeable future is guaranteed to receive the EUA-approved Pfizer-BioNTech COVID-19 Vaccine, **not the fully approved COMIRNATY**.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶181:**

There are no currently existing doses of COMIRNATY in the United States and **it is not being manufactured for production or distribution in the United States at this time.**

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶182:**

In fact, the FDA Pfizer Letter plainly indicates that COMIRNATY is not available in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age and older, <u>there is no sufficient approved vaccine for distribution to the population.</u>" (Pfizer Letter at 6 n.12 (emphasis added).)

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶183:**

Thus, the FDA has admitted and acknowledged that the current supply of the fully approved COMIRNATY is not even available for the population in the United States, and thus issued the continued EUA authorization for the Pfizer-BioNTech Covid-19 Vaccine. (*Id.*).

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶184:**

Indeed, in order for the FDA to have even continued the EUA for the Pfizer-BioNTech Covid-19 Vaccine, **it was required to find that there were no alternatives available for the Pfizer-BioNTech vaccine**. (*See* Pfizer Letter at 6 ("There is no adequate, approved, and **available alternative** to the Pfizer-BioNTech COVID-19 Vaccine to prevent COVID-19." (Emphasis added.))

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶185:**

Thus, the only currently available COVID-19 vaccines are subject solely to EUA approval and therefore cannot be mandated by NorthShore.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶186:**

In addition, consistent with the requirement in the Emergency Use Authorization statute that all potential recipients of the COVID-19 vaccine be informed of the option to accept or refuse the vaccine, the Emergency Use Authorization Fact Sheet for all three of the currently available COVID-19 vaccines specifically states — **as required by the Emergency Use Authorization statute** — that individuals have the right to refuse administration of the COVID-19 vaccine. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Modem COVID-19 Vaccine is attached hereto as **Exhibit 13** and incorporated herein. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Pfizer-BIONTECH COVID-19 Vaccine is attached hereto as **Exhibit 14** and incorporated herein. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Janssen COVID-19 Vaccine is attached hereto as **Exhibit 15** and incorporated herein.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶187:**

Specifically, the Emergency Use Authorization Fact Sheets for all three COVID-19 vaccines state that it is the individual's right to refuse administration of the vaccine.

**ANSWER:**

Defendant admits the allegations.

**COMPLAINT ¶188:**

By imposing its Mandatory COVID-19 Vaccination Policy on Plaintiffs and refusing to grant Plaintiffs their requested religious exemption from such mandatory vaccination, NorthShore is denying Plaintiffs their right to accept or refuse administration of the three currently available COVID-19 vaccines, which are subject only to Emergency Use approval under the Emergency Use Authorization statute.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶189:**

NorthShore, by denying Plaintiffs the right to accept or refuse administration of the three currently available COVID-19 vaccines, is violating the provisions of the Emergency Use Authorization statute.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶190:**

NorthShore, by denying Plaintiffs their requested religious exemption and reasonable accommodation, is denying Plaintiffs' their statutory rights under the United States Code and infringing upon the explicit protections outlined in the Emergency Use Authorization statute.

**ANSWER:**

The allegations in this paragraph state legal conclusions to which no answer is required.

To the extent an answer is required, Defendant denies each and every allegation.

**COMPLAINT ¶191:**

NorthShore's Mandatory COVID-19 Vaccination Policy has caused, is causing, and will continue to cause Plaintiffs immediate and irreparable harm by denying them their statutory right to accept or refuse administration of the three COVID-19 vaccines, which are subject only to Emergency Use under the Emergency Use Authorization statute.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶192:**

Plaintiffs have no adequate remedy at law to prevent the ongoing deprivation of their statutory rights under the Emergency Use Authorization statute to be given the right to accept or refuse administration of the COVID-19 vaccines, which are subject only to Emergency Use authorization under the Emergency Use Authorization statute.

**ANSWER:**

Defendant denies each and every allegation.

**COMPLAINT ¶193:**

Absent a TRO and injunctive relief, NorthShore's deprivation of Plaintiffs' right to accept or refuse administration of a product subject only to Emergency Use Authorization will cause them to suffer adverse employment action from NorthShore.

**ANSWER:**

Defendant denies each and every allegation.

**WHEREFORE**, Defendant NorthShore University HealthSystem respectfully requests that this Court: (A) dismiss the Complaint and Plaintiffs' claims with prejudice; (B) enter Judgment in favor of Defendant and against Plaintiffs; (C) award Defendant its costs expended in defense of this action; and (D) grant Defendant such further relief as may be proper.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

In asserting these defenses, Defendant does not assume the burden of proof as to matters that, pursuant to law, are Plaintiffs' burden to prove. Defendant reserves the right to plead any additional affirmative defenses as they become known during the pendency of this action.

**FIRST AFFIRMATIVE DEFENSE**

The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

To the extent Plaintiffs have damages, they have failed to use reasonable diligence to mitigate such damages.

77268685v.2

**THIRD AFFIRMATIVE DEFENSE**

Plaintiffs failed to exhaust administrative remedies under Title VII of the Civil Rights Act before filing this Complaint.

**FOURTH AFFIRMATIVE DEFENSE**

Count III fails to state  a claim on which relief may be granted because there is no private right of action under the cited law.

**FIFTH AFFIRMATIVE DEFENSE**

Any claim under the Health Care Right of Conscience Act is preempted by federal law.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiffs are  not entitled to recover punitive or treble damages because Defendant cannot be held vicariously liable for discriminatory employment decisions of managerial agents because those decisions, if any, were contrary to Defendant's good faith efforts to comply with applicable federal, state, and local laws and regulations.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred because Defendant exercised reasonable care to prevent and correct promptly any discrimination, and Plaintiffs unreasonably failed to take advantage of any preventive or corrective opportunities provided by Defendant or to avoid harm otherwise.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs and members of the purported putative class lack standing.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred because this action may not be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

77268685v.2

**TENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred because they failed to comply with procedural requirements, administrative rules, and/or contractual requirements established by NorthShore including but not limited to arbitration, mediation, or other forms of dispute resolution.

**WHEREFORE**, Defendant NorthShore University HealthSystem respectfully requests that this Court:  (A) dismiss the Complaint and Plaintiffs' claims with prejudice; (B) enter Judgment in favor of Defendant and against Plaintiffs; (C) award Defendant its costs expended in defense of this action; and (D) grant Defendant such further relief as may be proper.

**DATED: November 15, 2021**          **NORTHSHORE UNIVERSITY HEALTHSYSTEM**


By: /s/ *Marc R. Jacob*s _____
     One of Its Attorneys


Marc R. Jacobs
mjacobs@seyfarth.com
Paul Yovanic
pyovanic@seyfarth.com
**SEYFARTH SHAW LLP**
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606
Telephone:     (312) 460-5000
Facsimile:     (312) 460-7000

David E. Dahlquist
ddahlquist@winston.com
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
Telephone:     (312) 558-5600
Facsimile:     (312) 558-5700

77268685v.2

## NOTICE OF FILING/CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on this 15th day of November, 2021, he electronically filed the foregoing:

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' VERIFIED CLASS ACTION COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES**

with the Clerk of Court by using the CM/ECF system, and caused to be served upon all counsel of record via the Court's electronic filing system

/s/ *Marc R. Jacobs*