**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JANE DOES 1-14, on their own behalf and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | Case No. 1:21-cv-05683 |
| v. | ) ) | Judge John F. Kness |
| NORTHSHORE UNIVERSITY HEALTHSYSTEM, | ) ) ) | Mag. Judge Jeffrey I. Cummings |
| Defendant. | ) ) | |

**JOINT INITIAL STATUS REPORT UNDER RULE 26(f)**

The parties have conferred as required by Rule 26(f), and jointly submit the following discovery plan. *See* Fed. R. Civ. P. 26(f)(2); Fed. R. Civ. P. 26(f)(3); Fed. R. Civ. P. 16(b). The parties understand that the Court will enter a scheduling order under Rule 16(b)(1), and that the Court will modify any such schedule "only for good cause." *See* Fed. R. Civ. P. 16(b)(4).

**I.**     **Nature of the Case**

    A.     Identify the attorneys of record for each party. Note the lead trial attorney and any local counsel.

         Plaintiffs are represented by Horatio G. Mihet (lead trial attorney), Mathew D. Staver, Roger K. Gannam and Daniel J. Schmid of Liberty Counsel. Local counsel for Plaintiffs is Sorin A. Leahu of Leahu Law Group, LLC.

         Defendant is represented by David E. Dahlquist (lead trial attorney) of Winston & Strawn, LLP; and Marc R. Jacobs (co-counsel) of Seyfarth Shaw LLP.

B.    State the basis for federal jurisdiction.

This Court has federal question jurisdiction over Plaintiffs' federal law claims under 28 U.S.C. § 1331 and 1343, and supplemental jurisdiction over Plaintiffs' state law claim under 28 U.S.C. § 1367.

C.    Provide a short overview of the case.

Plaintiffs, on behalf of themselves and all others similarly situated, bring religious discrimination in employment claims against NorthShore University HealthSystem, arising out of NorthShore's alleged refusal to provide any reasonable accommodation to its mandatory COVID-19 vaccination policy. NorthShore denies that it has violated Plaintiffs' rights or any applicable laws.

D.    Describe the claims asserted in the complaint and the counterclaims and/or third-party claims and/or affirmative defenses.

Plaintiffs bring claims of religious discrimination under the Illinois Health Care Right of Conscience Act, 745 ILCS 70, *et seq.* (Count I), and Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000(e), *et seq.* (Count II). Plaintiffs also bring a claim under the Emergency Use Authorization Provisions of the United States Code, 21 U.S.C. §360bbb-3, *et seq.* (Count III).

NorthShore denies that Plaintiffs are entitled to any relief.

NorthShore has asserted a total of 10 affirmative defenses:

(1) Plaintiffs fail to state a claim upon which relief can be granted;

(2) Plaintiffs have failed to use reasonable diligence to mitigate damages;

(3) Plaintiffs failed to exhaust administrative remedies under Title VII;

(4) There is no private right of action under Count III;

(5) Any Health Care Right of Conscience Act claim is preempted by federal law;

(6) Plaintiffs are not entitled to punitive or treble damages because NorthShore cannot be held vicariously liable for discriminatory employment decisions of managerial agents because those decisions, if

2

any, were contrary to NorthShore's good faith efforts to comply with applicable federal and state laws and regulations;

(7) NorthShore exercised reasonable care to prevent and correct promptly any discrimination, and Plaintiffs unreasonably failed to take advantage of any preventive or corrective opportunities provided by NorthShore;

(8) Plaintiffs and members of the purported putative class lack standing;

(9) This action may not be maintained as a class action under Fed. R. Civ. P. 23; and

(10) Plaintiffs' claims fail to comply with procedural requirements, administrative rules, and/or contractual requirements established by NorthShore.

E.    What are the principal factual issues?

Among the principal factual issues in this case are the following:

1.  Whether NorthShore discriminated against Plaintiffs on the basis of their religious beliefs by requiring them to obtain COVID vaccinations to which Plaintiffs have sincerely held religious objections, and by taking or threatening to take adverse employment actions against Plaintiffs for their religious refusal to accept COVID vaccinations.

2.  Whether NorthShore discriminated against Plaintiffs on the basis of their religious beliefs by requiring them to obtain COVID vaccinations to which Plaintiffs have sincerely held religious objections, and by refusing to provide Plaintiffs with any reasonable accommodation.

3.  Whether NorthShore could have provided Plaintiffs with reasonable accommodations to NorthShore's mandatory COVID-19 vaccination policy without undue burden.

4.  Whether NorthShore has engaged in an individualized reasonable accommodation process and determination with employees who requested religious accommodation to NorthShore's mandatory COVID-19 vaccination policy.

3

5. Whether NorthShore's religious exemption process was undertaken in good faith or was a sham.

6. Whether NorthShore's asserted "undue burden" justification is genuine or a pretext for discrimination.

7. Whether NorthShore had sufficient evidence that non-vaccinated employees posed a greater threat or danger to NorthShore's patients than vaccinated employees.

8. Whether NorthShore has treated employees with religious objections to COVID-19 vaccination in discriminatory fashion compared with employees with secular objections to COVID-19 vaccination who pose a similar risk to NorthShore's asserted interests.

9. Whether a COVID-19 vaccine that is fully approved by the Food and Drug Administration was available for Plaintiffs to be mandated to take.

F.    What are the principal legal issues?

Among the principal legal issues in this case are the following:

1. Whether NorthShore violated the Illinois Health Care Right of Conscience Act.

2. Whether the Illinois Health Care Right of Conscience Act is preempted by federal law.

3. Whether the purported amendment of the Illinois Health Care Right of Conscience Act by the Illinois Legislature in 2021 is constitutional, lawful or otherwise legally effective.

4. Whether NorthShore violated Title VII of the Civil Rights Act of 1964.

5. Whether NorthShore's team member COVID vaccination policy violated the Emergency Use Authorization.

6. Whether class certification is appropriate under Fed. R. Civ. P. 23 and applicable law.

G.   What relief is the plaintiff(s) seeking (money damages, injunctive relief, etc.)?

In addition to the preliminary injunctive relief sought by Plaintiffs to date, Plaintiffs are seeking any and all other relief available under the law to make them whole, including but not limited to: equitable relief, compensatory damages, emotional distress and pain and suffering damages, punitive damages, statutory damages and treble damages. Plaintiffs also seek declaratory and permanent injunctive relief. Plaintiffs also seek to recover their reasonable attorney's fees and costs.

H.   Have all the defendants been served, or waived service of process? If not, identify the defendants that have not received service.

NorthShore is currently the only defendant, and it has been served.

## II.   <u>Case Scheduling and Discovery</u>

A.   Propose a discovery schedule. Also, submit a Word version of the proposed scheduling order to Judge Kness's proposed order inbox:

[Proposed_Order_Kness@ilnd.uscourts.gov](mailto:Proposed_Order_Kness@ilnd.uscourts.gov).

The parties have been unable to agree on a proposed schedule and request the Court's guidance on their respective proposals.

### <u>Plaintiffs' Position</u>

As explained more fully in Section V.A., *infra*, this spring and early summer numerous NorthShore employees and former employees are expected to receive right to sue letters from the EEOC, and will need to promptly determine whether their claims against NorthShore can be decided in this class action or whether they will need to bring their own separate actions. Fairness to them counsels that the class certification issue in this case be decided by early August 2022. Plaintiffs propose a schedule that meets this goal, and that is consistent with the exhortation of Fed. R. Civ. P. 23(c)(1)(A) that class certification be decided "[a]t an early practicable time after a person sues."

The principal disagreement between the parties is over how long NorthShore should have to respond to Plaintiffs' class certification motion. Plaintiffs respectfully submit that NorthShore's request of **sixty days** is unwarranted for four reasons:

**First**, Plaintiffs do not intend to rely upon expert testimony for class certification, and do not believe that expert testimony is necessary or appropriate to determine the issue of class certification. **Second**, as the Court will recall, the parties have already extensively briefed the issue of class certification, and the new motion and response should be substantially similar, albeit with more factual support. **Third**, NorthShore's proposal would push the class certification issue well beyond August 2022, considering that the Court will need to read the briefs, potentially hold a hearing, and draft a ruling. **Fourth**, the parties cannot simply choose an earlier date to start the briefing on class certification, because the parties will need *some* time to conduct *some* discovery beforehand. NorthShore's contention that Plaintiffs have four months to draft the class certification motion is misleading, because discovery needs to be conducted first, and it has not even begun yet. The May 16 filing date is already very early, considering the need to propound written discovery, receive responses and document productions, and take several depositions. If the Court were inclined to push the class certification decision further out, it should be to provide more discovery time for the parties upfront (and push the opening brief out), and not to provide NorthShore with an unnecessary sixty days to respond.

Under these circumstances, three weeks, or a maximum of 30 days, is more than sufficient for NorthShore to prepare an opposition brief that is already largely written.

Beyond the class certification briefing, Plaintiffs believe that NorthShore's suggested deadlines for the remaining discovery period are too bloated and could be trimmed to move the case along, particularly as to the times for expert reports, expert depositions and dispositive motions. Without preliminary injunctive relief in place, Plaintiffs have a strong interest to see their day in court as expeditiously as possible. Plaintiffs respectfully request the Court to enter their proposed schedule.

**NorthShore's Position**

NorthShore respectfully requests the Court allow NorthShore 60 days to file its Class Certification Opposition. NorthShore requires sufficient time after Plaintiffs file their Class Certification Motion to evaluate Plaintiffs' motion, prepare a response, and determine whether expert reports are necessary based on Plaintiffs' submission. Even if Plaintiffs choose not to submit expert reports, NorthShore may still reasonably

determine that it needs to submit its own expert reports based on fact discovery and Plaintiffs' presentation of class issues.

NorthShore's request for 60 days to file its Class Certification Opposition is more than reasonable considering that Plaintiffs are provided over four months to submit their Class Certification Motion. Although the parties preliminarily briefed class issues based on Plaintiffs' unsupported allegations, Plaintiffs are wrong to assume for scheduling purposes that the issues will be "substantially similar" following class discovery and expert reports.

Further, while Plaintiffs unilaterally believe that NorthShore's time for its opposition should be curtailed in order to meet an arbitrary decision date of August 1, that date is not binding on either NorthShore or the Court. If Plaintiffs are seeking to obtain a decision on class certification on or around August 1, Plaintiffs can move their Class Certification Motion filing date earlier to March or April. Whether the date for Plaintiffs to file their Class Certification Motion occurs in May or earlier, NorthShore requests 60 days to submit its Class Certification Opposition.

## PROPOSED SCHEDULE

| Event | Plaintiffs' Proposal | NorthShore's Proposal |
|---|---|---|
| Initial Disclosures | January 20, 2022 | January 20, 2022 |
| Motions to Amend the Pleadings | January 31, 2022 | January 31, 2022 |
| Service of process on any "John Does" | N/A | N/A |
| Class Certification Motion | May 16, 2022 | May 16, 2022 |
| Class Certification Opposition | June 6, 2022 | July 15, 2022 |
| Class Certification Reply | June 27, 2022 | July 26, 2022 |
| Completion of Fact Discovery | September 1, 2022 | November 4, 2022 |
| Disclosure of Plaintiffs' Expert Report(s) | October 3, 2022 | December 16, 2022 |
| Deposition of Plaintiffs' Expert(s) | October 24, 2022 | January 10, 2023 |

| Disclosure of Defendant's Expert Report(s) | November 14, 2022 | February 10, 2023 |
| Deposition of Defendant's Expert(s) | December 5, 2022 | March 3, 2023 |
| Dispositive Motions | February 1, 2023 | May 1, 2023 |

B.     How many depositions do the parties expect to take?

The parties intend to depose all named parties, up to 10 additional fact witnesses per side, and all designated experts.

C.     Do the parties foresee any special issues during discovery?

Some of the discovery in this case will involve personal and confidential information of NorthShore employees. The existing protective order may need to be updated or expanded to protect the confidentiality of private/protected employment information.

D.     Rule 26(f)(2) requires the parties to propose a discovery plan. *See* Fed. R. Civ. P. 26(f)(2). Rule 26(f)(3), in turn, provides that a "discovery plan must state the parties' views and proposals" on six different topics. *See* Fed. R. Civ. P. 26(f)(3). Have the parties discussed a discovery plan, including all of the topics required by Rule 26(f)(3)? If so, do the parties propose anything?

If the parties do make any proposals, be sure to include them in the proposed scheduling order that will be sent to Judge Kness's proposed order inbox.

1.     <u>Initial Disclosures</u>: the parties have agreed to exchange the disclosures required by Fed. R. Civ. P. 26(a)(1) on or before January 20, 2022.

2.     <u>Discovery Subjects and Phasing</u>: the parties agree to focus their initial discovery efforts on class certification issues, so as to enable them to submit class certification to the Court expeditiously. (*See* Section V.A., *infra*.) To this end, the parties agree to take no more than 5 depositions per side prior to the completion of class certification briefing, and to work cooperatively with each other to prioritize document searches and production relevant to class certification.

8

3. <u>ESI</u>: the parties agree to work cooperatively to search and produce electronically stored information in a mutually beneficial manner.

4. <u>Privilege</u>: the parties agree to follow the requirements of Fed. R. Civ. P. 26(b)(5)(A)-(B).

5. <u>Changes to Discovery Limits</u>: the parties request leave from this Court to take the depositions of all named parties, up to 10 additional fact witnesses per side, and all designated experts.

6. <u>Other orders</u>: None at this time.

## III. <u>Trial</u>

A. Have any of the parties demanded a jury trial?

The parties have not yet demanded a jury trial but may do so in forthcoming amendments to the pleadings.

B. Estimate the length of trial.

Predicting the length of trial is difficult at this early stage, but, given the number of parties, potential witnesses, and issues to be resolved, the parties estimate that trial may take between 14 and 21 days.

## IV. <u>Settlement, Referrals, and Consent</u>

A. Have any settlement discussions taken place? If so, what is the status? Has the plaintiff made a written settlement demand? And if so, did the defendant respond in writing? (Do not provide any particulars of any demands or offers that have been made.)

The parties have not engaged in settlement discussions since the filing of this case.

B. Do the parties request a settlement conference at this time before this Court or the Magistrate Judge?

Given their divergent views of the law and facts, the parties do not believe that settlement discussions would be fruitful at this point.

C. Have counsel informed their respective clients about the possibility of proceeding before the assigned Magistrate Judge for all purposes, including trial and entry of final judgment? Do all parties <u>unanimously</u>

9

consent to that procedure? The Court strongly encourages parties to consent to the jurisdiction of the Magistrate Judge.

Counsel have informed their respective clients about the possibility of proceeding before the assigned Magistrate Judge. The parties do not unanimously consent to proceeding before the Magistrate Judge.

## V. Other

A.    Is there anything else that the plaintiff(s) wants the Court to know?

### Plaintiffs' Statement

Plaintiffs are informed and believe that several hundred employees and former employees of NorthShore have filed (or are filing) charges of employment discrimination with the Equal Employment Opportunity Commission, and expect that they will likely receive right to sue letters in the late Spring or early Summer of 2022. Ordinarily (barring any applicable tolling), these employees may have 90 days from the receipt of EEOC right to sue letters to bring action against NorthShore. For this reason, Plaintiffs believe that it is important for the Court to determine the class certification question in this case no later than **August 1, 2022**, so that NorthShore's employees and former employees will know whether they will be able to have their claims adjudicated in this lawsuit, or whether they will need to bring separate individual actions against NorthShore. Plaintiffs have proposed a discovery and briefing schedule that would have the class certification motion fully briefed and ready for adjudication by June 27, 2022. (*See* Section II.A., *supra*). The parties have agreed to focus their initial discovery efforts on class certification issues. (*See* Section II.D.2, *supra*).

### NorthShore's Response

NorthShore is not aware of any information regarding the intent of a significant number of employees to file actions with the EEOC and question the veracity of Plaintiffs' statement above. Regardless, NorthShore believes the proposed case schedule is consistent with the requirements that Plaintiffs bring any Rule 23 motion to the Court as soon as practicable. NorthShore defers to the Court on the appropriate timing for any Rule 23 hearing and subsequent ruling.

B.    Is there anything else that the defendant(s) wants the Court to know?

**NorthShore's Statement**

NorthShore respectfully requests that this Court reconsider its grant of leave for Plaintiffs to proceed pseudonymously in this litigation. NorthShore preferred simply to advise the Court in this status report of its intent to renew the issue at the forthcoming case management conference. Regrettably, Plaintiffs have instead insisted upon using this status report to preliminarily brief this issue and to assign false motives to NorthShore's position on this issue. NorthShore therefore submits this brief response to avoid prejudice from Plaintiff's statement below.

NorthShore renews this issue because Plaintiffs requested the same leave from the Seventh Circuit on their appeal of this Court's denial of their motion for preliminary injunction, but the Seventh Circuit denied their motion. Specifically, the Seventh Circuit ruled that "[a]nonymous litigation is generally disfavored, and the plaintiffs have not justified anonymity in this appeal. *See* OPER. P. 10(a); *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004)." (Dkt. 59). Indeed, the Seventh Circuit has consistently noted its disfavor of allowing parties to proceed anonymously in litigation. *See e.g.*, *Doe v. Vill. of Deerfield*, 819 F.3d 372, 376 (7th Cir. 2016); *In re: Boeing 737 Max Pilots Litig.*, 1:19-cv-5008, 2020 WL 247404, *2 (N.D. Ill. Jan. 20, 2020) (collecting 7th Cir. cases).

Plaintiffs' stated arguments for proceeding pseudonymously fail to overcome the burden for such extraordinary relief based on past precedent as well as the current posture of this case.  First, all but one of the Named Plaintiffs no longer work for NorthShore which means any alleged threat of retaliation is moot.  Plaintiffs originally supported their argument to proceed using pseudonyms by alleging they would face harassment and retaliation at work if their identities were made known.  This argument is now moot as the Named Plaintiffs are no longer employed at NorthShore. *See In re: Boeing 737 Max Pilots Litig.* (rejecting pseudonymity when ***plaintiffs did not work for defendant***).  Next, Plaintiffs argued that they should be permitted to proceed using pseudonyms because a person's vaccine status is a sensitive and private medical decision. The Seventh Circuit has found disclosure of a medical issue is not a sufficient reason for allowing the use of a pseudonym. *See Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869 (7th Cir. 1997) (finding that obsessive-compulsive syndrome is a common enough disorder and does not support concealing the identity of a party).  Notably, a district court in the Second Circuit, in which precedent on pseudonymity tracks closely with

that in the Seventh Circuit, recently denied a plaintiff's attempt to proceed anonymously in their challenge of the defendant's COVID vaccine policy for students. *Doe v. City University of New York*, 21 Civ. 9544 (NRB), 2021 WL 5644642 (S.D.N.Y. Dec. 1, 2021) (finding courts have denied pseudonyms where far more serious medical conditions than vaccine status are at issue).

In light of the above, NorthShore respectfully asks if this Court will entertain a motion to reconsider its ruling on Plaintiffs' ability to proceed under pseudonyms, and if so, whether the Parties may submit additional briefing on the question of proceeding pseudonymously.

## Plaintiffs' Response

This Court's well-reasoned determination on anonymity is correct, and the Court should decline NorthShore's attempt to re-litigate that issue and engage in satellite litigation over the identity of parties that **NorthShore already knows**.

Because NorthShore has regrettably chosen to use this status report to present its flawed reading of the Seventh Circuit's order in Plaintiffs' interlocutory appeal, Plaintiffs are compelled to present the Court with the relevant context.

In their emergency interlocutory appeal to the Seventh Circuit, Plaintiffs understood the Seventh Circuit rules and operating procedures to allow them to proceed pseudonymously on appeal based upon this Court's earlier determination. Given that understanding, and the short time and emergency nature of their appeal, **Plaintiffs did not seek pseudonymous status anew in the appeal**, and merely filed a perfunctory, 3-paragraph, one-page-and-a-half motion for leave to file only **the appeal disclosure statement** under seal. Plaintiffs did not provide any record evidence (or independent argument) to the Seventh Circuit to substantiate the need for them to proceed pseudonymously, relying instead on this Court's earlier determination. As it turns out, the Seventh Circuit apparently did expect a full-blown motion and justification to proceed pseudonymously, supported by record evidence, and in the absence of same the Seventh Circuit summarily denied Plaintiffs' pro forma request to file **the appeal disclosure form** under seal, concluding in its two-sentence order that "plaintiffs have not justified anonymity **in this appeal**." (Dkt. 59 (emphasis added)).

The Seventh Circuit's initial determination is therefore not determinative of pseudonymity here, and is not unlike this Court's

initial determination—in the absence of evidence and argument—that Plaintiffs must disclose their identities. But just as this Court reconsidered its initial determination once Plaintiffs made their case for anonymity, Plaintiffs submit that the Seventh Circuit would have done the same, had their appeal continued and had they filed a full, evidence-supported motion as they had done in this Court. Therefore, the Seventh Circuit's summary ruling on one discrete issue, without the benefit of evidence and argument, provides no reason for this Court to reconsider its well-reasoned decision to permit anonymity.

Moreover, just last week, in similar circumstances, the District of Colorado granted the motion of several healthcare workers to proceed pseudonymously in their lawsuit against their university hospital employer, arising out of the denial of religious exemptions to the employer's COVID-19 vaccination requirement. *See JANE DOES 1 through 11 et al. v. Bd. of Regents of the Univ. of Colo. et al.,* No. 21-CV-02637-RM-KMT, 2022 WL 43897 (D. Colo. Jan. 5, 2022). Reviewing a record of threats, intimidation and ostracism similar to what Plaintiffs have adduced here, the Colorado court concluded that "[t]here is no question that there exists in our nation a certain enmity from some persons in society against those persons who choose not to become vaccinated," and that "[a]rguments on both sides of the vaccine mandate controversy are often vitriolic and personal." *Id.* at *4. As such, even though the Court had earlier expressed skepticism towards plaintiffs' case (and denied preliminary injunctive relief), *id.* at *1, the Colorado court granted plaintiffs' motion to proceed under pseudonym because "Plaintiffs have a substantial privacy right in protecting against public knowledge of their identities that outweighs the presumption of openness in judicial proceedings." *Id.* at *5.

In sum, because NorthShore already knows the identity of the Plaintiffs, NorthShore is transparently seeking to avoid accountability for its unlawful actions by forcing Plaintiffs to choose between asserting their meritorious claims and being exposed to threats, harassment and violence for their religious beliefs and private medical decisions. The Court should reject this tactic and should decline NorthShore's invitation to re-open this settled issue.

13

Respectfully Submitted,

/s/ Horatio G. Mihet

Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org; hmihet@lc.org
        rgannam@lc.org; dschmid@lc.org

Sorin A. Leahu (Local Counsel)
Ill. Bar No. 6315515
LEAHU LAW GROUP, LLC
53 W. Jackson Blvd., #1527
Chicago, IL 60604
Phone: (847) 529-7221
Email: sleahu@leahulaw.com

***Attorneys for Plaintiffs***

*/s/ David E. Dahlquist*

David E. Dahlquist
Kevin P. Simpson
Nasir Hussain
Savannah L. Murin
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
ddahlquist@winston.com
ksimpson@winston.com
nhussain@winston.com
smurin@winston.com

Marc R. Jacobs
Paul J. Yovanic, Jr.
**SEYFARTH SHAW LLP**
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606
(312) 460-5000
mjacobs@seyfarth.com
pyovanic@seyfarth.com

***Counsel for NorthShore University HealthSystem***

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this January 13, 2021, I caused a true and correct copy of the foregoing to be electronically filed with the Court. Service will be effectuated on all counsel of record via the Court's ECF/electronic notification system.

/s/ Horatio G. Mihet
Horatio G. Mihet
Attorney for Plaintiffs
