UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOE 1, et al., | Case No. 1:21-cv-05683 |
| Plaintiffs; | Judge John F. Kness |
| v. | |
| NORTHSHORE UNIVERSITY HEALTHSYSTEM | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION
FOR CERTIFICATION OF SETTLEMENT CLASS AND
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................... iv

INTRODUCTION .............................................................................................................. 1

BACKGROUND AND PROCEDURAL HISTORY ........................................................ 1

    A.    The Litigation................................................................................................1

    B.    Negotiations and Settlement Efforts ...........................................................3

THE PROPOSED SETTLEMENT ................................................................................... 4

    A.    The Settlement Class....................................................................................4

    B.    The Settlement Fund, Settlement Administrator, and Plan of Allocation...............5

    C.    Non-Monetary Relief ...................................................................................5

    D.    Attorneys' Fees and Costs, and Plaintiff Service Awards ...........................6

LEGAL STANDARD ........................................................................................................ 6

ARGUMENT ..................................................................................................................... 8

I.    The Court Should Preliminarily Certify the Settlement Class.............................8

    A.    The Settlement Class satisfies Rule 23(a)'s requirements. ........................8

        1.    The Settlement Class is sufficiently numerous, and joinder of all members is impracticable. ..........................................................8

        2.    The Settlement Class satisfies Rule 23(a)(2)'s commonality requirement because there are common questions of law and fact. ................................9

        3.    The Settlement Class satisfies Rule 23(a)(3)'s typicality requirement because the class representatives' claims are typical. ...............................10

        4.    The class representatives will fairly and adequately protect the Settlement Class's interests....................................................................11

    B.    The Settlement Class meets Rule 23(b)(3)'s requirements...................12

        1.    Common issues of law and fact predominate. ............................................12

        2.    Class-wide settlement is the superior method for resolving the claims at issue.............................................................................................13

II.    The Court Should Preliminarily Approve the Proposed Settlement. .................................14

    A.    The Settlement amount is substantial given the strengths of Plaintiffs' claims and the attendant risks..............................................................14

    B.    The proposed settlement avoids the complexity, length, and expense of trial and appeal. ..........................................................................................17

    C.    The Court cannot assess the Class's reaction until after notice issues...................18

    D.    Competent counsel endorse the Settlement Agreement........................................18

    E.    Settlement was reached after significant analysis and arm's length negotiation...18

III.    The Court Should Set Settlement Deadlines for Preliminary Approval and Consideration of the Notice Program. ...............................................................20

CONCLUSION.............................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
2011 WL 32903023 (N.D. Ill. July 26, 2011) ........................................................................ 7

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................................ 12

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008) ........................................................................................... 10

*Beaton v. SpeedyPC Software*,
907 F.3d 1018 (7th Cir. 2018) ............................................................................................ 8

*Donovan v. Est. of Fitzsimmons*,
778 F.2d 298 (7th Cir. 1985) ........................................................................................... 15

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) .............................................................................. 7, 14, 20

*Gen. Tel. Co. of the Sw. v. Falcon*,
457 U.S. 147 (1982) ........................................................................................................ 13

*Gilliam v. Addicts Rehab. Ctr. Fund*,
2008 WL 782596 (S.D.N.Y. Mar. 24, 2008) .................................................................... 17

*Goldsmith v. Tech. Sols. Co.*,
1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) .................................................................. 19

*Holmes v. Godinez*,
311 F.R.D. 177 (N.D. Ill. 2015) ...................................................................................... 10

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) .......................................................................... 14, 15, 19

*In re General Motors Corp. Engine Interchange Litig.*,
594 F.2d 1106 (7th Cir. 1979) ......................................................................................... 15

*In re Southwest Airlines Voucher Litig.*,
2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ................................................................... 16

*In re TikTok, Inc., Consumer Priv. Litig.*,
565 F. Supp. 3d 1076 (N.D. Ill. 2021) ...................................................................... passim

*In re Warner Commc'ns Sec. Litig.*,
618 F. Supp. 735 (S.D.N.Y. 1985) ................................................................................... 19

*Isby v. Bayh*,
75 F.3d 1191 (7th Cir. 1996) .............................................................................. 14, 18, 19

*Kaufman v. Am. Express Travel Related Servs. Co.*, Inc.,
877 F.3d 276 (7th Cir. 2017) ........................................................................................... 15

*Keele v. Wexler*,
149 F.3d 589 (7th Cir. 1998) ............................................................................................. 9

*Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*,
    2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ............................................ 14

*Magpayo v. Advoc. Health & Hosps. Corp.*,
    2018 WL 950093 (N.D. Ill. Feb. 20, 2018) ............................................. 13

*McKinnie v. JP Morgan Chase Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009) .................................................. 18

*Mejdrech v. Met-Coil Sys. Corp.*,
    319 F.3d 910 (7th Cir. 2003) ............................................................ 13

*Mulvania v. Sheriff of Rock Island Cty.*,
    850 F.3d 849 (7th Cir. 2017) .............................................................. 9

*Parker v. Risk Mgmt. Alternatives, Inc.*,
    206 F.R.D. 211 (N.D. Ill. 2002) ......................................................... 10

*Reynolds v. Beneficial Nat. Bank*,
    288 F.3d 277 (7th Cir. 2002) ........................................................ 7, 17

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986) ......................................................... 11

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ......................................................... 8, 9

*Schulte v. Fifth Third Bank*,
    805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................. 17, 19

*Seiden v. Nicholson*,
    72 F.R.D. 201 (N.D. Ill. 1976) ......................................................... 18

*Streeter v. Sheriff of Cook Cty.*,
    256 F.R.D. 609 (N.D. Ill. 2009) ........................................................ 12

*Susquehanna Corp. v. Korholz*,
    84 F.R.D. 316  (N.D. Ill. 1979) ......................................................... 19

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ....................................................... 14, 18

*Taifa v. Bayh*,
    846 F. Supp. 723 (N.D. Ind. 1994) ..................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ...................................................................... 9

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ....................................................... 14, 18

**Rules**

Fed. R. Civ. P. 23 ....................................................................... passim

Fed. R. Civ. P. 54 ........................................................................... 6

**Treatises**

4 Newberg on Class Actions § 13:1 (6th ed.) ............................................................... 14

## INTRODUCTION

Following eight months of vigorous litigation, mediation overseen by a private, experienced mediator, and eight weeks of arm's length negotiations, Plaintiffs and Defendant NorthShore University HealthSystem have agreed to settle this case. The proposed Settlement provides fair, reasonable, and adequate relief for a proposed settlement class of former and current NorthShore team members impacted by NorthShore's Team Member vaccination policy, which NorthShore updated in August 2021 to include a requirement that that any individual who has staff privileges at any NorthShore facility, including all employees, contractors, and volunteers (collectively "Team Members") obtain a COVID-19 vaccination ("Vaccine Policy"). Under the Settlement Agreement's terms, NorthShore will pay $10,337,500.00 into a non-reversionary settlement fund for class members and revise its System Vaccine Program to enhance its accommodation procedures for individuals with approved exemptions for sincerely held religious beliefs. Class members who were terminated because of their religious declination of a COVID-19 vaccine will also be eligible to apply for re-employment at NorthShore. The Parties reached an agreement that substantially benefits the proposed settlement class and promotes judicial economy. The Parties now seek an order preliminarily approving the settlement.

Balancing the risks of continued litigation against the substantial benefits of settling now, the Court should find that the Settlement is fair, adequate, and reasonable. Plaintiffs accordingly request that the Court: (i) certify a class for settlement purposes; (ii) appoint Class Representatives and Class Counsel; and (iii) preliminarily approve the Settlement Agreement.

## BACKGROUND AND PROCEDURAL HISTORY

### A. The Litigation

This case involves Defendant NorthShore University HealthSystem's Vaccine Policy. (*See* Pls.' Verif. Class Action Compl.; Dkt. 1.) In August 2021, NorthShore updated its Vaccine Policy

to require that all Team Members receive a COVID-19 vaccine by October 31. Plaintiffs, who at the time were NorthShore Team Members, each submitted requests for a religious exemption from the Vaccine Policy. Plaintiffs' primary allegation is that NorthShore failed to accommodate their requests in violation of Title VII and the Illinois Health Care Right of Conscience Act.

In September 2021, Plaintiffs retained counsel to represent them in their claims of religious discrimination against NorthShore. Plaintiffs filed charges of discrimination with the Equal Employment Opportunity Commission and requested immediate right-to-sue letters. Plaintiffs filed the initial complaint with this Court on October 25, 2021, alleging class-wide religious discrimination and seeking injunctive and monetary relief for a class of NorthShore Team Members with religious objections to the Vaccine Policy.[1] Plaintiffs specifically alleged that NorthShore failed to accommodate Plaintiffs' religious beliefs, that it was engaged in a pattern or practice of religious discrimination, and that its system-wide Vaccine Policy was intentionally discriminatory. Plaintiffs also moved for a temporary restraining order to enjoin the Vaccine Policy. NorthShore denied, and continues to deny, all material allegations of wrongdoing.

For the first several months of this litigation, the Parties engaged in substantial motion practice over Plaintiffs' requests for temporary and preliminary injunctive relief, which included significant research and argument about the validity of Plaintiffs' legal claims. NorthShore also answered Plaintiffs' complaint, denying Plaintiffs' allegations and asserting several affirmative defenses. (Dkt. 43.) After full briefing, oral argument, and supplemental submissions, the Court denied Plaintiffs' motion for a preliminary injunction, holding that Plaintiffs had sufficiently

---

[1] Plaintiffs later moved to amend their complaint (Dkt. 74), but the Court has not adjudicated that motion. Pursuant to the Parties' Settlement Agreement, upon Final Approval of the proposed settlement Plaintiffs request that their motion to amend be withdrawn, and that the Court permanently withhold adjudication of same.

established some likelihood of success on the merits of their Title VII failure-to-accommodate claim but that they failed to establish irreparable harm justifying injunctive relief. (Dkt. 52.)

In January 2022, the Parties exchanged mandatory initial disclosures, which set forth the factual and legal bases for their claims and defenses and the issues in the case. The Parties also propounded and exchanged extensive discovery requests, including interrogatories and requests for production. The Parties have conferred extensively about the proper scope of discovery, and NorthShore has challenged the content of Plaintiffs' initial disclosures through a motion to compel.[2] (Dkt. 83.)

### B. Negotiations and Settlement Efforts

While the Court was considering both Plaintiffs' motion to amend the complaint and NorthShore's motion to compel, the Parties agreed to engage in private mediation to determine whether they could settle this dispute before undertaking lengthy class discovery, class certification motion practice, a trial on liability and damages, and potential appeals.

To facilitate negotiations, the Parties retained an experienced Title VII class action mediator. In May 2022, the Parties engaged in a formal, day-long, arm's length mediation. The in-person mediation was followed by many weeks of extensive, informal negotiations by phone and email. Every facet of the Settlement Agreement was considered, discussed, debated, and negotiated. During these sessions, the Parties presented factual and legal arguments, and exchanged competing theories. Understanding and fulfilling their fiduciary duties to the putative class, Plaintiffs' class representatives (the "Named Plaintiffs") had the opportunity to participate in the mediation session, and they were fully briefed on the mediation session and ongoing negotiations, being fully informed of the facts and applicable law, as well as the risks of prolonged litigation and the benefits

---

[2] NorthShore's motion to compel, like Plaintiffs' motion to amend, should be considered withdrawn and not be adjudicated upon Final Approval of the proposed settlement.

of settlement. The Parties' extensive efforts led to the Settlement Agreement—a product of hard-fought, principled negotiations initiated by a well-respected mediator.

## THE PROPOSED SETTLEMENT

The proposed Settlement, attached as **Exhibit A**, provides substantial monetary relief and valuable and meaningful programmatic relief for settlement class members. NorthShore believes that the settlement will continue to ensure NorthShore's oversight of its safety and quality standards and compliance across its health system, including in its ongoing, front-line efforts to lead the fight against the spread of COVID-19. Plaintiffs believe that the settlement will bring NorthShore's policies and conduct in compliance with the law and ensure that NorthShore will not discriminate against others in the future.

### A.     The Settlement Class

Plaintiffs ask that the Court certify the following class for settlement purposes only (the "Settlement Class"):

> All NorthShore Team Members who: (1) between July 1, 2021, and January 1, 2022, submitted to NorthShore a request for religious exemption and/or accommodation from its Vaccine Policy requiring COVID-19 vaccination; (2) were denied a religious exemption and/or accommodation; and (3) either received a COVID-19 vaccine to avoid termination or were discharged or resigned based upon their religious declination of a COVID-19 vaccine.

NorthShore has represented to Plaintiffs that the approximate class size is estimated to be 523 current or former NorthShore Team Members. Based on currently available information, NorthShore estimates that 269 Team Members requested a religious exemption and were discharged or resigned from their employment with NorthShore based upon their religious declination of a COVID-19 vaccine. NorthShore further estimates that 204 Team Members requested a religious exemption and, after denial, became compliant with the Vaccine Policy.

**B.      The Settlement Fund, Settlement Administrator, and Plan of Allocation**

NorthShore will establish a non-reversionary settlement fund of $10,337,500.00 to compensate Settlement Class members, including Plaintiffs. The Settlement Fund will be a Qualified Settlement Fund (QSF) for federal tax purposes under Treas. Reg. § 1.468B-1. Depending on which of two allocation groups (Compliance or Termination) they belong to, Settlement Class members will receive a pro rata payment after the deduction of settlement-related costs, including the settlement administrator's expenses and the costs of notice to the Settlement Class, any service awards, any attorneys' fees, and any other administrative fees and expenses that the Court may approve. If the estimates regarding the size of the Settlement Class and allocation groups are accurate, and if all of the Settlement Class members submit timely, valid claims, then it is estimated that each member of the Compliance Allocation Group may be eligible to receive approximately $3,000.00, and each member of the Termination Allocation Group may be eligible to receive approximately $25,000.00. These amounts are estimates for illustrative purposes only, to demonstrate that the Settlement Fund should provide meaningful recovery for Settlement Class members. The final amounts will depend on the number of valid and timely claims received and their allocation between the two Allocation Groups.

To provide notice to the Settlement Class members, review and process claims, and otherwise administer the settlement, the Parties have agreed upon American Legal Claims Services as Settlement Administrator. The Settlement Administrator's costs and expenses will be paid from the Settlement Fund.

**C.      Non-Monetary Relief**

As detailed in the Settlement Agreement, NorthShore has agreed to implement programmatic relief over a three-year period that provides rehire eligibility and opportunities to Settlement Class members in the Termination Allocation Group and aims to provide that Team

Members with sincere religious objections to COVID-19 vaccines may receive a potential accommodation in the future. To that end, NorthShore has agreed to revise its System Vaccine Program to maintain a step-by-step review process for requests for religious exemptions and accommodations.

### D. Attorneys' Fees and Costs, and Plaintiff Service Awards

Plaintiffs seek Court approval for $2,061,500 for attorneys' fees and costs. The requested amount is 20% of the total settlement, which is far below the typical 33% requested in common-fund class actions. The Court need not fully decide attorneys' fees and costs now: Under Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiffs will move for Court approval of Attorneys' Fees and Costs simultaneously with the Motion for Final Approval of the Settlement.

The Settlement Agreement also sets aside $260,000 for service awards to the Named Plaintiffs. If none are excluded from the Settlement, each of the 13 Named Plaintiffs[3] would receive a Service Award of $20,000, in total equal to approximately 2.5% of the Settlement Fund. These Service Awards are appropriate and warranted to compensate the Named Plaintiffs for their services to the putative Class, including their involvement in court proceedings, their extensive and personal participation in document gathering and in responding to discovery requests, their personal participation in settlement negotiations, and their willingness to personally participate in a sensitive case involving personal matters as well as issues of intensive, public debate, even when it was uncertain whether their identities would be required to be disclosed to the public.

### LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires district court approval for any settlement that dismisses a class action. *See Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279 (7th Cir.

---

[3] A fourteenth Named Plaintiff will be filing a Stipulation for Dismissal with prejudice because her religious accommodation request was granted by NorthShore.

2002). "When parties seek preliminary approval of a class-action settlement agreement under Rule 23(e), the district court must undertake three essential inquiries." *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1083 (N.D. Ill. 2021) ("*In re TikTok*"). *First*, the district court must determine "whether it 'will likely be able' to certify the putative class for purposes of judgment on the proposed settlement." *In re TikTok*, 565 F. Supp. 3d at 1083 (quoting Fed. R. Civ. P. 23(e)(1)(B)(ii)); *see also Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302, at *3 (N.D. Ill. July 26, 2011). *Second*, the court must determine "whether the proposed settlement is 'within the range of possible approval' with regard to the criteria set forth in Rule 23(e)(2)." *In re TikTok*, 565 F. Supp. 3d at 1083 (quoting *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (cleaned up)). Under that rule, the court may approve a settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). *Third*, the district court must "direct the plaintiffs to provide notice 'in a reasonable manner to all class members who would be bound' by the proposed settlement agreement." *In re TikTok*, 565 F. Supp. 3d at 1084 (quoting Fed. R. Civ. P. 23(e)(1)).

In making the following joint arguments, the Parties do so only for purposes of settlement, and in reliance on Sections 3.6, 13.4, and 13.6 of the Settlement Agreement, which provide that, in the event their Settlement is not fully and finally approved, or is terminated, **the Parties do not waive any claims, objections, rights, defenses, legal arguments, or positions, and the Parties retain the right to litigate the case on the merits, including as to class certification issues**. If this Court does not grant Preliminary and Final Approval of the proposed settlement, the Parties will return to their pre-settlement positions and continue to litigate this contested matter. The statements and arguments asserted below are for settlement purposes only and will not prejudice either Party's arguments or positions if this settlement does not receive Final Approval.

**ARGUMENT**

**I.** **The Court Should Preliminarily Certify the Settlement Class.**

The first step is to determine "whether the Court 'will likely be able' to certify the putative Settlement Class for purposes of a judgment on the proposed settlement." *In re TikTok*, 565 F. Supp. 3d at 1084 (quoting Fed. R. Civ. P. 23(e)(1)(B)(ii)). Rule 23(a) provides that a class may be certified by meeting four prerequisites: numerosity, commonality, typicality, and adequate representation. *See Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1025 (7th Cir. 2018). Once these requirements are met, the potential class must also satisfy at least one provision of Rule 23(b). *See Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). As discussed below, the proposed Settlement Class satisfies both inquiries.

**A.** **The Settlement Class satisfies Rule 23(a)'s requirements.**

Under Rule 23(a), the Court may certify a class if the "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a); *see also In re TikTok*, 565 F. Supp. 3d at 1084. The proposed Settlement Class meets each requirement.

**1.** **The Settlement Class is sufficiently numerous, and joinder of all members is impracticable.**

The Settlement Class is sufficiently numerous that joinder of all members would be impractical. *See* Fed. R. Civ. P. 23(a)(1). The Settlement Class comprises all NorthShore Team Members who requested and were ultimately denied a religious exemption and/or accommodation from NorthShore's Vaccine Policy, and thereafter either received a COVID-19 vaccine to avoid termination or were discharged or resigned based upon their religious declination of a COVID-19

vaccine. Based on NorthShore's estimate, not yet verified by Plaintiffs, the number of Settlement Class members is approaching or exceeding 520 current or former Team Members. Although there is no "no magic number," 40 or more members is generally accepted as sufficient to satisfy Rule 23(a). *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 859 (7th Cir. 2017). Given that around 520 people are expected to be part of the Settlement Class, the numerosity requirement is satisfied, and joinder would be impracticable.

## 2. The Settlement Class satisfies Rule 23(a)(2)'s commonality requirement because there are common questions of law and fact.

The Settlement Class also meets Rule 23's commonality requirement. Commonality requires at least one question common to all the class members, the answer to which is "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Thus, the commonality requirement is usually met where there is a common nucleus of operative fact, *see Rosario*, 963 F.2d at 1018, which is generally found where "the defendants have engaged in standardized conduct towards members of the proposed class," *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

Here, the members of the proposed Settlement Class were all subject to NorthShore's Vaccine Policy. Common questions of law and fact therefore include:

- Whether NorthShore complied with federal and state law in enacting and implementing its Vaccine Policy;

- Whether NorthShore complied with its obligations under Title VII to engage in an interactive process with employees when responding to each exemption request; and

- Whether class members are entitled to monetary and injunctive relief under Title VII and Illinois law.

The proposed Settlement Class satisfies the commonality requirement. *Cf. Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement.").

### 3. The Settlement Class satisfies Rule 23(a)(3)'s typicality requirement because the class representatives' claims are typical.

The claims of Plaintiffs as representative parties of the Settlement Class "are typical of the claims or defenses of the class." *See* Fed. R. Civ. P. 23(a)(3). "Claims are typical if they 'arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members' and if they 'are based on the same legal theory' as other class members." *Holmes v. Godinez*, 311 F.R.D. 177, 220 (N.D. Ill. 2015) (quoting *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008)). Here, each Settlement Class member is a current or former NorthShore Team Member who was affected by the Vaccine Policy. Thus "the claims of the proposed class representatives typify those of the absent class members." *In re TikTok*, 565 F. Supp. 3d at 1085; *cf. Parker*, 206 F.R.D. at 213 ("Typicality is satisfied if a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to the claim of the other class members, and if the claims are based on the same legal theory."). In short, Plaintiffs' claims are typical of those of other Settlement Class members because "both focus on the same alleged policies and standard practices" that affected other Settlement Class members seeking religious exemptions to the Vaccine Policy. *Holmes*, 311 F.R.D. at 221.

Likewise, the named Plaintiffs and Settlement Class members "share the same legal theories." *Holmes*, 311 F.R.D. at 221. They alleged that NorthShore's practices and policies violate state and federal statutes by not providing a valid religious exemption or accommodation to the Vaccine Policy. In sum, the Named Plaintiffs' claims are typical of the Settlement Class members "in that they focus on the same conduct and are based on the same legal theories." *Id*.

4. **The class representatives will fairly and adequately protect the Settlement Class's interests.**

Plaintiffs will fairly and adequately protect the interests of the Settlement Class. To satisfy this requirement under Rule 23(a)(4), "(1) the representatives must not possess interests which are antagonistic to the interests of the class, and (2) the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *In re TikTok*, 565 F. Supp. 3d at 1085 (cleaned up).

Plaintiffs' interests are aligned with, not antagonistic to, those of the proposed Settlement Class members. As with each Settlement Class member, Plaintiffs sought a religious exemption to NorthShore's Vaccine Policy, and they allege that NorthShore violated each requesting Team Member's rights. Plaintiffs thus "have a sufficient interest in the outcome to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986). Plaintiffs have no known antagonistic or conflicting claims with other Settlement Class members.

As for the qualification of Plaintiffs' counsel, Rule 23(g) guides the court. *See* Fed. R. Civ. P. 23, Notes of Advisory Committee on 2003 Amendments. In appointing class counsel, a court "must consider" (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Each of those requirements is satisfied here. Plaintiffs' counsel have thoroughly investigated NorthShore's Vaccine Policy and analyzed the basis for Plaintiffs' claims. And, since October 2021, they have vigorously litigated this case, committing substantial resources in doing so. Plaintiffs' counsel have extensive experience litigating complex litigation and class actions, including complex litigation related to religious discrimination in employment matters. This

experience was already detailed for the Court in Plaintiffs' previously-filed Motion for Provisional Class Certification and accompanying declaration of attorney Mihet. (Dkt. 37-10), and is incorporated herein by reference. Together, Plaintiffs' counsel's subject matter expertise and class-action experience qualify them to adequately represent the Settlement Class.

**B.      The Settlement Class meets Rule 23(b)(3)'s requirements.**

The Parties seek to certify the Settlement Class under Rule 23(b)(3), which requires the Court to determine whether "the questions of law or fact common to the class members predominate over any questions affecting only individual members" and whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). These requirements are met here for the Settlement Class.

**1.      Common issues of law and fact predominate.**

Common questions of law and fact predominate for the Settlement Class. The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When a proposed class challenges a uniform policy, the validity of that policy tends to be the predominant issue in the litigation." *Streeter v. Sheriff of Cook Cty.*, 256 F.R.D. 609, 614 (N.D. Ill. 2009). Here, Plaintiffs' claims center on how NorthShore developed and carried out its Vaccine Policy and the result that process had on NorthShore Team Members who sought religious exemptions and/or accommodations. This question predominates over other issues affecting individual Settlement Class members. And the central questions in this case are capable of resolution on a class-wide basis by looking to NorthShore's vaccine policies and procedures. Accordingly, the predominance requirement is satisfied for the Settlement Class.

12

**2.   Class-wide settlement is the superior method for resolving the claims at issue.**

Plaintiffs satisfy Rule 23(b)(3)'s superiority requirement for the Settlement Class. A class action is superior to other methods of adjudication "when the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). The efficiency of resolving this case as a settlement class action "derives from having to answer common questions of fact and law just once." *Magpayo v. Advoc. Health & Hosps. Corp.*, 2018 WL 950093, at *16 (N.D. Ill. Feb. 20, 2018). Indeed, the judicial economy from consolidating separate claims "outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding." *Mejdrech*, 319 F.3d at 911.

Here, liability questions common to all Settlement Class members substantially outweigh any possible issues individual to each class member. Further, resolving hundreds of potential claims in one action is far superior to individual lawsuits, because it promotes judicial efficiency and avoids inconsistent decisions. *Cf. Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting that "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affective every class member to be litigated in an economical fashion under Rule 23"). Concentrating litigation in this Court, and resolving it with this settlement, will achieve economies of scale, conserve the resources of the judicial system, and avoid repetitive proceedings and inconsistent adjudications of similar issues and claims. In sum, a class action is the superior method of adjudicating this case, and the proposed Settlement Class should be certified under Rule 23(b)(3).

## II.     The Court Should Preliminarily Approve the Proposed Settlement.

The Seventh Circuit has long maintained that "[f]ederal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *accord* 4 Newberg on Class Actions § 13:1 (6th ed.) (noting a "strong judicial policy in favor of class action settlement"). Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006).

At the preliminary approval stage, courts in this district perform a "summary version" of the final fairness inquiry. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) ("*In re AT&T*") (quoting *Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007)). Accordingly, the court simply assesses whether the proposed settlement is "within the range of possible approval." *In re TikTok*, 565 F. Supp. 3d at 1087 (citing *Gautreaux*, 690 F.2d at 621 n.3). In making this determination, the court considers "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (quoting *Gautreaux*, 690 F.2d at 631). Each of these factors supports finding that the proposed settlement fair, reasonable, and adequate.

### A.     The Settlement amount is substantial given the strengths of Plaintiffs' claims and the attendant risks.

The "most important factor" relevant to a class action settlement's fairness is the strength of the plaintiff's case balanced against the settlement amount. *Synfuel*, 463 F.3d at 653 (quoting *In*

*re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979));
*Donovan v. Est. of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985) ("[A]n integral part of the
strength of a case on the merits is a consideration of the various risks and costs that accompany
continuation of the litigation."). Even so, the Seventh Circuit has "instructed district courts 'to
refrain from resolving the merits of the controversy or making a precise determination of the
parties' respective legal rights' when considering this factor." *In re TikTok*, 565 F. Supp. 3d at 1087
(quoting *Kaufman v. Am. Express Travel Related Servs. Co.*, Inc., 877 F.3d 276, 285 (7th Cir.
2017)). "Because the essence of settlement is compromise, courts should not reject a settlement
solely because it does not provide a complete victory to the plaintiffs." *In re AT&T*, 270 F.R.D. at
347 (citations omitted).

After mediation with an experienced third-party mediator and extensive arm's length
negotiations, NorthShore has agreed to settle this case for $10.3 million, a substantial recovery for
Settlement Class members, both in the aggregate and individually. Given that Plaintiffs are seeking
preliminary approval, the Court need not undertake a "mechanical mathematic valuation" to
quantify the net expected value of continued litigation. *In re TikTok*, 565 F. Supp. 3d at 1088–89.
Instead, the court "need only recognize that the proposed settlement ensures meaningful,
immediate monetary and [programmatic] relief" for the approximately 520 NorthShore employees
and "weigh those benefits against the substantial risks that Plaintiffs would face in seeking a better
outcome at trial." *Id.* at 1088. The proposed settlement represents a significant value given the
attendant risks of litigation—for example, succeeding on all claims at summary judgment and trial,
establishing and proving damages, surviving any appeal, attaining class certification, and
overcoming motions to decertify the class.

To be clear, Plaintiffs believe that their claims against NorthShore have merit; equally clear, however, is that NorthShore vigorously disputes the merit of Plaintiffs' claims, and that, absent settlement, a protracted and uncertain litigation would continue for many years. The legal uncertainties of continued litigation risks non-recovery for the Settlement Class. For one, establishing both liability and damages would require significant factual development, particularly on Plaintiffs' allegations of intentional discrimination and religious animus. NorthShore also would continue to mount a vigorous defense that accommodating Plaintiffs' religious objections to the Vaccine Policy would be unduly burdensome and jeopardize the health and safety of patients and staff. As such, summary judgment and trial would be rife with battling experts in healthcare management, epidemiology, and public health. And, as the litigation has shown thus far, both parties are determined to fight hard through trial.

Beyond that, Plaintiffs face risks as to class certification. Although Title VII class actions are often certified, a legitimate risk remains that the Court could conclude that individualized factual inquiries preclude class treatment. Denial of class certification on that ground or any other basis would result in no recovery for the Settlement Class.

Further, the Illinois Legislature recently amended the Healthcare Right of Conscience Act to retroactively bar COVID-19 mandate-related claims. *See* 745 ILCS 70/13.5. Although Plaintiffs intended and were prepared to litigate the constitutionality and legality of that amendment, it could be that neither Plaintiffs nor any NorthShore Team Member may recover statutory damages under that statute. Considering these "legal uncertainties," settling now is in Plaintiffs' and the Settlement Class's best interests. *See In re Southwest Airlines Voucher Litig.*, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

**B. The proposed settlement avoids the complexity, length, and expense of trial and appeal.**

Preliminary approval is favored because "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Even if Plaintiffs were to defeat summary judgment, a trial on the merits would involve significant risk as to both liability and damages. To start with, the case might not go to trial for at least another year, and possibly much longer. And, even if the Settlement Class recovered a judgment at trial that is more than the $10.3 million provided by the Settlement, post-trial motions and the appellate process would deprive Settlement Class members of any recovery for years, and possibly forever in the event of a reversal. As for the merits, although Plaintiffs believe they could ultimately defeat NorthShore's defenses and establish liability (which NorthShore, of course, disputes), this would require significant factual development and favorable outcomes at trial and on appeal, all of which are inherently uncertain and lengthy. The proposed settlement alleviates that uncertainty. Indeed, when a settlement assures immediate payment of substantial amounts to class members, settlement is reasonable "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road." *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 WL 782596, at *5 (S.D.N.Y. Mar. 24, 2008) (cleaned up).

Continued litigation also carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, *supra*, 288 F.3d at 284. The proposed settlement, on the other hand, provides immediate benefits. Unlike the typical case in which plaintiffs may need to overcome many litigation obstacles to gain adequate leverage for a fair and reasonable result, in this case Plaintiffs have achieved substantial, material relief at a relatively still-early stage of the litigation.

By reaching a favorable settlement now, Plaintiffs seek to avoid significant expense and delay, and ensure recovery for the Class. *Cf. Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort."). By settling now, the Class will avoid the inherent risk, complexity, time, and cost associated with continued litigation.

### C.     The Court cannot assess the Class's reaction until after notice issues.

The Seventh Circuit has instructed district courts to evaluate the amount of opposition to a settlement among affected parties. *See Wong*, 773 F.3d at 863. Because putative Settlement Class members have not been notified of the settlement at this stage, the Court will be in a better position to analyze this factor more fully after notice is provided and putative Settlement Class members have had an opportunity to opt out or object.

### D.     Competent counsel endorse the Settlement Agreement.

The next factor examines the opinion of competent counsel as to whether a proposed settlement is fair, reasonable, and adequate. *See Isby*, 75 F.3d at 1200. Here, counsel for both Plaintiffs and NorthShore fully endorse the settlement achieved after extensive work on both sides. The joint endorsement of the settlement points to finding the Settlement fair, reasonable, and adequate. *Cf. McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (noting that the fact that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator … suggest that the settlement is fair and merits final approval").

### E.     Settlement was reached after significant analysis and arm's length negotiation.

The last factor concerns the stage of the proceedings and the amount of discovery completed at the time the settlement is reached. *See Synfuel*, 463 F.3d at 653. This factor is relevant because "it determines 'how fully the district court and counsel are able to evaluate the merits of

plaintiffs' claims.'" *Schulte*, 805 F. Supp. 2d at 587 (quoting *Armstrong*, 616 F.2d at 325). Plaintiffs' counsel have spent many months "engaging in arms'-length negotiations and performing exhaustive analysis of relevant law and evidence, giving them 'a clear view of the strengths and weaknesses' of their case in reaching the proposed settlement." *In re TikTok*, 565 F. Supp. 3d at 1091 (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985)). With this information, Plaintiffs and their counsel were in a strong position to negotiate a fair, reasonable, and adequate settlement.

Although preparing this case through trial would require hundreds of hours of discovery on both sides, the Parties have completed enough discovery to recommend settlement. That includes exchanging initial disclosures and submitting and receiving document requests and interrogatories. Courts regularly approve settlements at a similar stage in discovery to avoid expending unnecessary resources. *See, e.g.*, *Taifa v. Bayh*, 846 F. Supp. 723, 728–29 (N.D. Ind. 1994), *aff'd sub nom Isby*, 75 F.3d at 1199–1200 (approving settlement early in case when the parties thoroughly investigated the background facts relevant to the claims); *In re AT&T*, 270 F.R.D. at 350 (same). In addition, the Parties have engaged in substantial motion practice in litigating Plaintiffs' requests for temporary restraining order and preliminary injunction.

Because the proposed settlement is "the product of arm's-length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced," the Court may presume that the agreement is fair and adequate. *Goldsmith v. Tech. Sols. Co.*, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995) (citing *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 321 (N.D. Ill. 1979)).

* * *

All of the Seventh Circuit's factors weigh in favor of finding that the Parties' proposed settlement is "within the range of possible approval," *In re TikTok*, 565 F. Supp. 3d at 1087 (citing *Gautreaux*, 690 F.2d at 621 n.3). Accordingly, the Court should preliminarily approve the proposed settlement.

## III. The Court Should Set Settlement Deadlines for Preliminary Approval and Consideration of the Notice Program.

In connection with preliminary approval of the Settlement, the parties recommend that the Court schedule the following dates:

| Settlement Agreement Section # | Event | Proposed Deadline |
|---|---|---|
| | Execution of Agreement | 7/28/2022 |
| | Filing of Joint Motion to Approve Settlement | 7/29/2022 |
| | Submitting Proposed Notice, Notice Plan and Claim Forms for Court Approval | 8/5/2022 |
| 14.2 | Parties to Agree on Individual Release for Class Representatives | 8/5/2022 |
| 10.3.4 | NorthShore to Provide Notices Required by 28 U.S.C. § 1715, and Confirmation/Copies to Class Counsel | 8/8/2022 (10 days after submission of settlement to Court) |
| | Preliminary Approval Hearing | 8/9/2022 at 11:00 a.m. |
| 6 | Doe 14 to File Stipulation for Dismissal | 8/11/2022 |
| 5.3 | NorthShore to Provide Documentation re: Class Size and Claimant Eligibility | 8/29/2022 (30 days after Execution, plus weekend time) |
| 7.1 | NorthShore to Deposit $30,000.00 into Settlement Fund | 9/8/2022 (30 days after Preliminary Approval; assuming PA on 8/9/22) |
| 9.3.1 | Named Plaintiffs to Seek Rehire | 9/8/2022 (before 30 days after Preliminary Approval; assuming PA on 8/9/22) |
| | Notice and Claim Forms to be Mailed to Settlement Class Members (and otherwise distributed per Notice Plan) | 9/13/2022 (15 days after NS provides Section 5.3 Documents) |

| | Reminder Notice to be Mailed to Non-Responsive Class Members | 10/13/2022 (30 days after initial notice) |
|---|---|---|
| 9.3.1 | NorthShore to Communicate Rehire Details to Named Plaintiffs Who Seek Rehire | 10 days before Opt-Out Deadline |
| 8.2.1 | Claim Form Submission | 30 days prior to Fairness Hearing (but not earlier than 11/14/2022) |
| 11.1 | Opt-Out Deadline | 30 days prior to Fairness Hearing (but not earlier than 11/14/2022) (same as Claim Form Submission Deadline) |
| 12.2 | Objections Deadline (and deadline for objectors to notify of intent to appear at Fairness Hearing) | 30 days prior to Fairness Hearing (but not earlier than 11/14/2022) (same as Opt-Out Deadline) |
| 11.4 | Settlement Administrator to Provide Opt-Out List to Parties and the Court | 7 days after Opt-Out Deadline |
| 5.2 | Plaintiffs to Exercise Re-negotiation or Termination Remedy | 14 days after Claim Submission Deadline |
| 14.2 | Class Representatives to Execute Individual and Separate Release | 14 days after Opt-Out Deadline |
| 11.7 | NorthShore to Exercise Re-negotiation or Termination Remedy | 14 days after Settlement Administrator Provides Opt-Out List |
| 11.6 | Recission of Opt-Outs to be received by Settlement Administrator | Day before Fairness Hearing |
| | Fairness Hearing | TBD by the Court, but not earlier than 12/14/2022. |
| | Final Approval / Effective Date of Settlement | TBD by Court |
| 9.2 | Effective Date for Revision of NorthShore's System Vaccine Program | Same as the Final Approval Date |
| FRAP 4 | Appeal Deadline for Final Approval and Judgment | 30 days after Final Approval and Judgment |
| 7.2 | NorthShore to Deposit $10,307,500.00 into Settlement Fund | 35 days after Final Approval |
| 8.2.6 | All Valid and Timely Claims Paid | 60 days after Final Approval |
| 9.3.2 | Termination Allocation Group Members to Seek Rehire from NorthShore | 90 days after Final Approval |

| 9.1 | Expiration of Programmatic Relief | 3 years after Final Approval |
|-----|-----------------------------------|------------------------------|

## CONCLUSION

For all the above-stated reasons, Plaintiffs and Defendant request that the Court grant their Motion and enter an order (i) certifying the Settlement Class; (ii) granting Preliminary Approval of the Settlement; and (iii) establishing the deadlines reflected above.

Dated: July 29, 2022

*s/ Horatio G. Mihet*
Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid
**LIBERTY COUNSEL**
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org; hmihet@lc.org
rgannam@lc.org; dschmid@lc.org

Sorin A. Leahu (Local Counsel)
Ill. Bar No. 6315515
**LEAHU LAW GROUP, LLC**
53 W. Jackson Blvd., #1527
Chicago, IL 60604
Phone: (847) 529-7221
Email: sleahu@leahulaw.com

*Attorneys for Plaintiffs*

*s/ David E. Dahlquist*
David E. Dahlquist
Kevin P. Simpson
Nasir Hussain
Savannah L. Murin
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
(312) 558-5600
ddahlquist@winston.com
ksimpson@winston.com
nhussain@winston.com
smurin@winston.com

Marc R. Jacobs
**SEYFARTH SHAW LLP**
233 South Wacker Drive
Suite 8000
Chicago, Illinois 60606
(312) 460-5000
mjacobs@seyfarth.com

*Attorneys for NorthShore University HealthSystem*

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2022, I caused a true and correct copy of the foregoing to be electronically filed with the Court. Service will be effectuated on all counsel of record via the Court's ECF/electronic notification system.

/s/ Horatio G. Mihet
Horatio G. Mihet

*Attorney for Plaintiffs*