IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Doe 1, et al.**, | Case: 1:21-CV-05683 |
| Plaintiffs, | Judge: Hon. John F. Kness |
| v. | |
| **NorthShore University HealthSystem**, | |
| Defendant. | |

**[PROPOSED] CLASS ACTION SETTLEMENT AGREEMENT**

# TABLE OF CONTENTS

1. INTRODUCTION .................................................................................................. 1

2. DEFINITIONS ...................................................................................................... 1

3. RESTRICTIONS ON USE OF AGREEMENT ................................................... 4

4. COOPERATION ................................................................................................... 5

5. SETTLEMENT CLASS AND CERTIFICATION ............................................... 5

6. VOLUNTARY DISMISSAL OF DOE 14'S CLAIMS ........................................ 6

7. SETTLEMENT FUND ......................................................................................... 6

8. PLAN OF ALLOCATION .................................................................................... 8

9. PROGRAMMATIC RELIEF ............................................................................... 10

10. COURT APPROVAL, NOTICE, AND FAIRNESS HEARING ......................... 12

11. EXCLUSIONS AND OPT-OUTS ....................................................................... 13

12. OBJECTIONS ...................................................................................................... 14

13. TERMINATION OR MODIFICATION OF AGREEMENT ............................... 15

14. RELEASE; BAR OF CLAIMS ........................................................................... 16

15. NO ADMISSION; NO DETERMINATION ....................................................... 17

16. ENFORCEMENT OF THE AGREEMENT ........................................................ 17

17. OTHER TERMS AND CONDITIONS OF SETTLEMENT .............................. 18

1.      **Introduction**

This Class Action Settlement Agreement and Release ("Agreement") is entered into between the individuals defined below as "Class Representatives," for themselves individually and on behalf of the Settlement Class as defined in this Agreement, and NorthShore University HealthSystem (as defined below). The Class Representatives and NorthShore are, collectively, the "Parties."

The Parties intend for this Agreement to fully, finally, and forever resolve, discharge, and settle all Released Claims (as defined below) subject to the terms of this Agreement, and conditioned upon the Court's preliminary and final approval.

2.      **Definitions**

Along with the terms identified and defined elsewhere in this Agreement, and as used in this Agreement, the below terms will have the following meanings:

"<u>Action</u>" means the civil action captioned *Doe 1, et al. v. NorthShore University HealthSystem*, Case No. 1:21-CV-05683, pending in the United States District Court for the Northern District of Illinois before United States District Judge John F. Kness, and the allegations set forth in the Verified Class Action Complaint filed on October 25, 2021 (ECF No. 1).

"<u>Claim Form</u>" means the form to be submitted by eligible Class Members to request a payment from the Settlement Fund, with the contents of the Claim Form to be agreed upon by the Parties in cooperation with the Settlement Administrator.

"<u>Class</u>" or "<u>Settlement Class</u>" broadly means the class of persons which the Parties seek to have certified solely for purposes of this Agreement, which is defined as:

> All NorthShore Team Members who: (1) between July 1, 2021, and January 1, 2022, submitted to NorthShore a request for religious exemption and/or accommodation from its Vaccine Policy requiring COVID-19 vaccination; (2) were denied a religious exemption and/or accommodation; and (3) either received a COVID-19 vaccine to avoid termination or were discharged or resigned based upon their religious declination of a COVID-19 vaccine.

"<u>Class Counsel</u>" means the attorneys who sign this agreement as Plaintiffs' Counsel and as putative class counsel until the Court appoints counsel to represent the Class in its preliminary approval order; and following the appointment, "Class Counsel" means the counsel that the Court appoints to represent the Class.

"<u>Class Member</u>" or "<u>Settlement Class Member</u>" means any person who meets the criteria set forth in the definition of "Class" and who does not submit a valid Request for Exclusion that is received by the Settlement Administrator on or before the last day of the Opt-Out and Objection Deadline and/or who is excluded by the Court pursuant to Fed. R. Civ. P. 23.

"Class Representatives," "Named Plaintiffs," or "Plaintiffs" mean the individual Plaintiffs in this Action, specifically Jane Doe 1, Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Jane Doe 6, Jane Doe 7, Jane Doe 8, Jane Doe 9, Jane Doe 10, Jane Doe 11, Jane Doe 12, and Jane Doe 13, except those that may opt out of this Settlement or be excluded pursuant to Section 11. As provided for in this Agreement, Jane Doe 14 is voluntarily dismissing her claims, and therefore she is not a "Class Member," "Class Representative," "Named Plaintiff," or "Plaintiff." All other Persons who were not included as individual Plaintiffs in this Action in the original Complaint filed on October 25, 2021, and who were subsequently proposed to be added as individual Plaintiffs but were not approved by the Court as of the Execution of this Agreement, are not "Class Representatives," "Named Plaintiffs," or "Plaintiffs." "Class Representatives," "Named Plaintiffs," or "Plaintiffs" are also Class Members or Settlement Class Members.

"Complaint" means the Verified Class Action Complaint filed in this Action on October 25, 2021, including any and all allegations against NorthShore in all proposed or accepted amendments to the Verified Class Action Complaint filed on February 14, 2022 (ECF No. 74-1), and Plaintiffs' Second Amended Complaint filed as Plaintiffs' Supplement to Their Motion for Leave to Amend Complaint on March 7, 2022 (ECF No. 78).

"Compliance Allocation Group" means all Class Members who submitted a request for religious exemption and/or accommodation from the Vaccine Policy requiring COVID-19 vaccination between July 1, 2021, and January 1, 2022, but were denied exemption and/or accommodation and subsequently received a COVID-19 vaccine to avoid termination.

"Court" means the United States District Court for the Northern District of Illinois.

"Effective Date" means the date the Court issues Final Approval of this Agreement.

"Execution" means the signing of this Agreement by all signatories.

"Fairness Hearing" means the hearing where the Court will consider final approval of the Settlement.

"Final Approval" means the date on which the Court grants final approval of the Settlement.

"Final Order and Judgment" means the order entered by the Court approving the Settlement and this Agreement under Fed. R. Civ. P. 23 and making such other findings and determinations as the Court considers necessary to provide Final Approval.

"NorthShore University HealthSystem" or "NorthShore" means NorthShore University HealthSystem, including its sole corporate parent, NorthShore – Edward-Elmhurst Health, and all of its current or former subsidiaries, hospitals, affiliates, officers, and directors.

"NorthShore's Counsel" means the law firms of Winston & Strawn LLP and Seyfarth Shaw LLP, who are counsel of record for NorthShore in the Action.

"Notice" means the Notice of Class Action, Proposed Settlement, and Fairness Hearing, which the Parties will agree upon, the Court will approve, and the Settlement Administrator will mail to Class Members.

"Notice Plan" means the plan for providing the Notice to Class Members, which the Parties will agree upon and the Court will approve.

"Opt-Out and Objection Deadline" means the deadline set forth in the Preliminary Approval Order for a Class Member to submit a Request for Exclusion or an objection.

"Plaintiffs' Counsel" means Liberty Counsel, counsel of record for Plaintiffs in the Action.

"Plan of Allocation" means the plan for allocating the Settlement Fund (as defined below), either as described in this Agreement or as may be approved by the Court.

"Preliminary Approval" means the order of the Court preliminarily certifying the Settlement Class and preliminarily approving the Settlement and the form of Notice to be sent to Class Members.

"Programmatic Relief" means the non-monetary terms of the Settlement described in Section 9 of this Agreement, including NorthShore's development and implementation of a Revised System Vaccine Program.

"Released Claims" means all claims, demands, and causes of action that were or could have been asserted by Plaintiffs in their Complaint, as well as all allegations in any proposed or accepted amendments to the Verified Class Action Complaint, including Plaintiffs' Proposed Amended Complaint filed on February 14, 2022 (ECF No. 74-1), and Plaintiffs' Second Amended Complaint filed as Plaintiffs' Supplement to Their Motion for Leave to Amend Complaint on March 7, 2022 (ECF No. 78), in the Action up to and through the Effective Date. Specifically included in the Released Claims are all religious discrimination or related claims arising out of the Named Plaintiffs' and Class Members' employment and separation from employment with NorthShore or the nucleus of operative facts that form the basis of the claims that were or could have been asserted in the Action, including but not limited to, claims of alleged religious employment discrimination under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e, et seq. ("Title VII"); violations of the Illinois Health Care Right of Conscience Act, 745 ILCS 70/1, et seq.; claims under Illinois Human Rights Act; any breach of contract or employment agreement; and any other employment discrimination or related retaliation claims under federal, state, or local statute, common law, or regulation, including but not limited to claims of retaliatory discharge, wrongful termination, intentional infliction of emotional distress, interference with contractual or other legal rights, invasion of privacy, personal injury, negligence, misrepresentation, or public policy violations. Released Claims do not include or cover any action, omission, or claims that have not yet occurred or accrued as of the Effective Date, including any of the claims specified in Section 14.4.

"Request for Exclusion" means the form that must be completed and returned in the time and manner specified in this Agreement or in the Preliminary Approval Order for a Class Member to request exclusion from the Class.

"Settlement" means the class action settlement between the Parties as reflected in this Agreement.

"Settlement Administrator" means American Legal Claim Services LLC, designated hereunder to fulfill the administrative duties set forth in this Agreement.

"Team Member" or "Team Members" mean any individual who previously or currently works at, has staff privileges, or provides services at any NorthShore facility. It includes, without limitation, employees, contractors and their employees, physicians, staff, and volunteers.

"Termination Allocation Group" means any Class Member who did not receive a COVID-19 vaccine and was subsequently discharged or terminated, or who incurred adverse employment action or resigned based upon their religious declination of a COVID-19 vaccine.

"Vaccine Policy" means NorthShore's Team Member required vaccination policy as amended from time to time, including NorthShore's COVID-19 vaccination requirement issued on August 16, 2021, including any subsequent revisions thereof prior to the Effective Date.

3.   **Restrictions on Use of Agreement**

3.1.   This Agreement is for settlement purposes only and is a compromise to avoid the inherent risks and expenses posed by continued litigation of the claims in the Action.

3.2.   The Parties agree that, in consideration for the undertakings, promises, and payments in this Agreement and upon the entry by the Court of the Final Order and Judgment, the Action will be settled and compromised upon the terms set forth in this Agreement.

3.3.   The Parties have agreed to enter into this Agreement as a suitable compromise of the claims in the Action to put all controversy to rest and avoid the uncertainty, risk, expense, and burden of protracted and costly litigation that would be involved in prosecuting and defending the Action.

3.4.   Acceptance or approval of this Agreement does not establish or admit any liability on the part of NorthShore for any of the allegations or claims in the Complaint. NorthShore has denied and continues to deny each allegation and all charges of wrongdoing or liability of any kind asserted in the Complaint.

3.5.   Subject to the Court's approval, NorthShore conditionally agrees and consents to jurisdiction, venue, and certification of the Class only for settlement purposes and within the context of this Agreement.

3.6.   If the Settlement is not approved or this Agreement is otherwise terminated, the Parties expressly reserve all rights, claims, objections, and defenses in the Action, as well as the right to challenge the merits of all allegations in the Complaint. Class

4

Representatives, individually and on behalf of the Class, reserve their rights to pursue their claims in the Action on any available factual, procedural, equitable, or legal grounds.

**4.      Cooperation**

4.1.   The Parties agree that they will cooperate in carrying out all terms of this Agreement and work in good faith to accomplish the terms of this Agreement. The Parties agree to accept non-material and procedural changes to this Agreement if required by the Court in connection with Final Approval of the Settlement. The Parties are not obligated to accept any changes in the monetary relief amount or any material change in the substantive Programmatic Relief or any other material substantive change.

4.2.   The Parties agree that this Settlement will terminate all discovery obligations by both Parties relating to the claims in this Action or any other litigation based on the claims and allegations asserted in the Complaint, except for any claims or litigation brought by persons who are excluded or opt out of this Agreement under Section 11. For the avoidance of doubt, this Section 4.2 bars non-excluded Plaintiffs or any non-excluded Class Member from serving discovery requests, subpoenas, or requests for information in whatever form on NorthShore in relation to the claims and allegations asserted in the Complaint, and NorthShore may assert this Section 4.2 as a complete defense to any such request.

**5.      Settlement Class and Certification**

5.1.   Concurrently with their joint motion requesting Preliminary Approval, the Parties will jointly request that the Court certify the following Class, for settlement purposes, under Rules 23(b) and (e) of the Federal Rules of Civil Procedure:

All NorthShore Team Members who: (1) between July 1, 2021, and January 1, 2022, submitted to NorthShore a request for religious exemption and accommodation from its Vaccine Policy requiring COVID-19 vaccination; (2) were denied a religious exemption and/or accommodation; and (3) either received a COVID-19 vaccine to avoid termination or were discharged or resigned based upon their religious declination of a COVID-19 vaccine.

5.2.   Based upon its review of employment records, NorthShore estimates that approximately 523 Team Members requested and were denied religious exemption and/or accommodation to its Vaccine Policy requiring COVID-19 vaccination between July 1, 2021, and January 1, 2022. Of these Team Members, NorthShore further estimates that approximately 204 became compliant with the Vaccine Policy's COVID-19 vaccination requirement; and 269 were discharged or resigned based upon their religious declination of a COVID-19 vaccine. In the event that the number of valid Claim Forms filed pursuant to the terms set forth in Section 8.2 exceeds NorthShore's estimate of 523 Team Members by eight percent (8%) or more, Plaintiffs will have the option to renegotiate and/or terminate this Agreement.

In the event that Plaintiffs intend to renegotiate and/or terminate this Agreement as set forth in this Section 5.2, Class Counsel must provide written notice of Plaintiffs' intent by email to NorthShore's Counsel within 14 days after the deadline for submission of Claim Forms as set forth in Section 8.2.

5.3. Notwithstanding the provision of Section 4.2, within 30 days after the Execution of this Agreement, NorthShore will provide the following documents to Class Counsel, to enable Class Counsel to verify the size and make-up of the Class and the eligibility of any claimant to payment out of the Settlement Fund, and to facilitate notices to the Class: (a) a list with the full name and last provided information, if any, on the address, email address, telephone number and employee identification number of each Team Member who requested and was denied religious exemption and/or accommodation to NorthShore's Vaccine Policy's requirement for COVID-19 vaccination between July 1, 2021, and January 1, 2022; (b) an identification of which of these Team Members became compliant with NorthShore's Vaccine Policy, and which of these Team Members were discharged or resigned after remaining non-compliant with its Vaccine Policy; and (c) the religious exemption request(s) submitted to NorthShore by each of these Team Members. In the event the Settlement Administrator or Class Counsel needs reasonable additional information from NorthShore to verify the eligibility of any claimant to receive payment from the Settlement Fund, or to provide notice to a claimant, NorthShore will work in good faith with the Settlement Administrator or Class Counsel to provide it. In the event that the Settlement Administrator or Class Counsel request that NorthShore confirm that claimants' personal information matches NorthShore's employment records (including without limitation the claimants' social security or taxpayer identification numbers), NorthShore will work in good faith with the Settlement Administrator or Class Counsel to timely provide such confirmation.

5.4. Class Counsel and the Settlement Administrator will treat these documents as "Confidential" under the existing Protective Order in this Action, and will use these documents solely for the purposes permitted by Section 5.3. Class Counsel may share these documents with the Settlement Administrator to facilitate the administration of the Settlement Fund.

## 6. Voluntary Dismissal of Doe 14's Claims

Because her religious exemption and accommodation request was approved by NorthShore, Doe 14 agrees that she is not part of the Class. Within 14 days after the Execution of this Agreement, the Parties will file a stipulation of dismissal with prejudice of Doe 14's claims pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure.

## 7. Settlement Fund

7.1. Within 30 days after Preliminary Approval, NorthShore will deposit $30,000.00 into an account established by the Settlement Administrator to create the Settlement Fund. These funds will be used for the administration of the Settlement Fund as set

forth in Sections 7.5 and 8.1 of this Agreement. Any and all administrative costs related to the Settlement, or the Settlement Fund, will be paid out of the Settlement Fund.

7.2. Within 35 days after entry of final judgment, NorthShore will deposit an additional $10,307,500.00 into the Settlement Fund. If any appeal is taken from the entry of final judgment, NorthShore will not deposit any additional payment into the Settlement Fund until all appeals are finally resolved. NorthShore will not be asked, required, or otherwise compelled to contribute any funds in addition to those identified in Section 7.1 and 7.2.

7.3. Class Counsel and the Settlement Administrator will select the Settlement Fund account and the Settlement Fund depository bank.

7.4. The Settlement Fund will be a court-approved Qualified Settlement Fund (QSF) for federal tax purposes under Treas. Reg. § 1.468B-1. NorthShore will be the "transferor" to the QSF within the meaning of Treas. Reg. § 1.468B-1(d)(1). The Settlement Administrator will be the "administrator" of the QSF within the meaning of Treas. Reg. § 1.468B-2(k)(3), responsible for filing all tax returns relating to the QSF, paying from the QSF any taxes owed by or connected to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Treas. Reg. § 1.468B-2(l)(2) or any other applicable law. NorthShore will provide the Settlement Administrator with any documentation reasonably necessary to facilitate obtaining QSF status for the Settlement Fund under Treas. Reg. § 1.468B-l.

7.5. All monetary obligations related to this Agreement, including the expenses of the Settlement Administrator and Notice and Notice Plan expenses, will be paid out of the Settlement Fund. Class Counsel will draw on the Settlement Fund for any payments to Settlement Class Members, Service Awards (as defined below), payment of attorneys' fees and costs to Class Counsel, and any other administrative fees and expenses. Class Counsel must approve any payments to the Settlement Administrator before the Settlement Administrator incurs such expenses. The Parties intend that, after the foregoing payments and disbursements are made, no funds will remain in the Settlement Fund. If any funds remain, they will be disposed of in accordance with Section 8.3.

7.6. If this Agreement is terminated prior to Final Approval, the Settlement Administrator will return all funds to NorthShore within ten days after the termination date, except that the Settlement Administrator need not return any funds already spent on Notice, the Notice Plan, and reasonable Settlement Administrator expenses incurred before the termination date, as demonstrated by supporting documentation.

7.7. Once deposited by NorthShore, the Settlement Fund will be in *custodia legis* of the Court and will remain subject to the Court's jurisdiction until the funds are distributed or returned pursuant to the Agreement or order of the Court.

7.8. No person will have any claim against the Class Representatives, Class Counsel, counsel of record for any party in the Action, the Settlement Administrator, or any other person designated by Class Counsel, based on determinations or distributions made pursuant to this Agreement, the Plan of Allocation, administration of the Settlement Fund, or order of the Court.

## 8. Plan of Allocation

8.1. In their joint motion requesting the Court's Preliminary Approval of this Agreement, the Parties will request that the Court approve the following Plan of Allocation of the Settlement Fund:

8.1.1. Payment of all approved expenses incurred by the Settlement Administrator;

8.1.2. Payment of $2,061,500 to Liberty Counsel, as and for reasonable attorneys' fees and costs incurred in the Action and in obtaining the Settlement Fund;

8.1.3. Payment of $260,000, in equal shares, to each of the Class Representatives, as and for Service Awards for their efforts and service to the Class;

8.1.4. After deduction of the payments described in Paragraphs 8.1.1 through 8.1.3, payment of nine percent (9%) of the remaining Settlement Fund in equal shares to each member of the Compliance Allocation Group who files a valid and timely Claim Form prior to the deadline imposed by the Court; and

8.1.5. After deduction of the payments described in Paragraphs 8.1.1 through 8.1.3, payment of ninety-one percent (91%) of the remaining Settlement Fund in equal shares to each member of the Termination Allocation Group who files a valid and timely Claim Form prior to the deadline imposed by the Court.

8.2. Payments to Settlement Class Members

8.2.1. Class Members may submit one claim per Class Member to receive a distribution from the Settlement Fund according to the Plan of Allocation. Each Class Member may be part of only one Allocation Group (Compliance or Termination). The deadline for Class Members to submit a timely Claim Form shall be no less than 30 days before the date of the Fairness Hearing.

8.2.2. The method for submitting a claim and for receiving a distribution will be described and provided in the Notice after consultation with the Settlement Administrator and approval by the Court. Class Members will need to prove eligibility by means reasonably resistant to fraud through a process to be mutually agreed upon by the Parties after consultation with the Settlement Administrator.

8.2.3. To submit a claim, each Class Member must provide to the Settlement Administrator at least (i) the Class Member's full name, address, email

address, telephone number(s), NorthShore employee identification number (if applicable and known), and social security number or taxpayer identification number; (ii) an attestation that the Class Member meets the eligibility requirements to be a Class Member and identifies the Class Member's Allocation Group; (iii) information sufficient for the Settlement Administrator to make a distribution to the Class Member; and (iv) a statement under penalty of perjury that the Class Member has submitted correct information and has not submitted more than one claim. Class Members whose identifying details do not match the information found in NorthShore's employment records will be required to provide additional information deemed necessary by the Settlement Administrator to avoid fraud, such as proof of address or name change and/or a legible color copy of the Class Member's driver's license or state-issued identification.

8.2.4.  Any Class Member with a valid claim who fails to provide sufficient or correct information or fails to submit a valid claim within the time identified in the Notice waives any right to any payment from the Settlement Fund and any future ability to make an individual Released Claim.

8.2.5.  The Settlement Administrator and Class Counsel will review all claims to determine their validity. The Settlement Administrator, in consultation with Class Counsel, may reject any claim that (i) does not materially comply with the instructions in the Notice; (ii) is not submitted by a Class Member; (iii) is a duplicate of another claim; (iv) is fraudulent, as reasonably determined by the Settlement Administrator; or (v) is submitted after the deadline for claim submission as determined by the Court. The Settlement Administrator's decision will be final as to the determination of a claim's validity.

8.2.6.  Claims of Class Members that are deemed valid will be paid out by the Settlement Administrator within sixty (60) days after Final Approval.

8.3.  **Residue.** The Parties intend that the entire Settlement Fund be distributed in accordance with the Plan of Allocation, and that no funds remain after the distribution. In the unanticipated event that any funds remain following the initial distribution of funds pursuant to the Plan of Allocation, the Parties will meet and confer, and propose to the Court, a plan for the subsequent distribution of funds, either to the Class Members (if practicable, in light of the costs of a second distribution) or as a *cy pres* distribution to a charitable organization selected by the Class Counsel and approved by the Court. In no event shall any amount of the Settlement Fund revert back to NorthShore or Class Counsel.

8.4.  **Tax Matters**

8.4.1.  The payments from the Settlement Fund may be subject to applicable taxes, deductions, and withholdings. The Settlement Administrator will report all payments from the Settlement Fund to taxing authorities as may be required

by law. It shall be the exclusive responsibility of each recipient of funds from the Settlement Fund to determine and satisfy any tax liability on any of the funds received from the Settlement Fund.

8.4.2. Plaintiffs are informed and in good faith believe that they and other Class Members in the Compliance and Termination Allocation Groups incurred damages for pain and suffering and emotional distress in excess of the payments provided for these Allocation Groups under Sections 8.1.4 and 8.1.5, and, as such, these payments are for pain and suffering and emotional distress, and not for back or future wages. NorthShore takes no position on the allocation of settlement payments.

8.4.3. NorthShore is not involved in any manner in the allocation of the settlement payments or their apportionment for tax and other purposes, and such determinations are being made solely by Plaintiffs, Plaintiffs' counsel, and/or the Settlement Administrator. Plaintiffs and Plaintiffs' Counsel, on behalf of themselves and the Class Members, acknowledge that they have not relied on any statements or representations by NorthShore or its attorneys with respect to the tax treatment of the settlement payments described in this Agreement. If any taxing body determines that the tax treatment was incorrect, that greater amounts should have been withheld from any payment above (or any part thereof), or one or more recipients of settlement payment under this Agreement have failed to properly report and or pay tax on the amount received, the recipient of such payment acknowledges and assumes all responsibility for paying those amounts and further agrees to indemnify and hold NorthShore harmless for payment of any taxes related to the settlement payment to such recipient, and any additional taxes and any interest and penalties thereon.

## 9. Programmatic Relief

9.1. The Programmatic Relief embodied in this Agreement will remain binding on the Parties, their agents, and their successors for three (3) years following the Effective Date.

9.2. NorthShore will revise its System Vaccine Program, effective no later than the Effective Date, as detailed in Addendum 1.

9.3. In addition to the policy revisions detailed in Addendum 1, the Parties agree that:

9.3.1. **Rehire of Class Representatives**. No later than 30 days after the date of Preliminary Approval, the Named Plaintiffs identified in Addendum 2 may apply for re-employment to the "Rehire Accommodation" positions at NorthShore identified for each listed Named Plaintiff, and NorthShore will grant each listed Named Plaintiff who re-applies a religious exemption to the Vaccine Policy and accommodation based on the Named Plaintiff's original exemption request. Any Named Plaintiff who is hired by

NorthShore pursuant to this Section 9.3.1 shall be entitled to retain his or her seniority (including for purposes of benefits accrual) held at the time of his or her separation from NorthShore. NorthShore will communicate re-employment offers and terms, including position, compensation, benefits, and religious accommodation to the Vaccine Policy's requirement of COVID-19 vaccination to each Named Plaintiff who applies for re-employment pursuant to this Section 9.3.1 no less than ten (10) days before the Opt-Out and Objection Deadline. Any Named Plaintiff, whether listed in Addendum 2 or not, who does not apply for re-employment as set forth in Addendum 2 and in this Section 9.3.1 may apply for re-employment as a Termination Allocation Group member pursuant to the terms of Section 9.3.2.

9.3.2. **Rehire of Termination Allocation Group Members**. No later than 90 days after the Effective Date, each member of the Termination Allocation Group may apply for re-employment to any open position at NorthShore including, to the extent available, the same or a similar position he or she held at the time of his or her termination and based on the following factors:

a. NorthShore will offer re-employment to members of the Termination Allocation Group based on individual review and determination of qualifications for the open position.

b. NorthShore does not guarantee or warrant that each member of the Termination Allocation Group who reapplies will be hired or earn pay, benefits and/or other consideration equal to that which he or she earned prior to termination, particularly if hired for a different position.

c. Any member of the Termination Allocation Group who is re-employed by NorthShore on or before the date 90 days after the Effective Date shall be entitled to retain his or her seniority (including for purposes of benefits accrual) held at the time of his or her termination.

d. Any member of the Termination Allocation Group seeking a religious exemption from and accommodation to NorthShore's Vaccine Policy must apply through NorthShore's then-current application form and review process. Exemptions and accommodations will be evaluated under NorthShore's System Vaccine Program, as revised.

e. It is understood and agreed that any claims that may arise out of NorthShore's actions or omissions after the Effective Date of this Agreement with respect to the hiring of members of the Termination Allocation Group or the handling of any of their religious exemption requests are not part of the Released Claims.

11

9.3.3.   NorthShore will seek to offer reasonable accommodations for all Team Members in all positions who obtain approved vaccination exemptions under NorthShore's System Vaccine Program. No position at NorthShore will be unavailable to any Team Member with an approved religious exemption solely because of the Team Member's COVID-19 vaccination status, subject to reasonable accommodation based on the workplace setting as determined by NorthShore. Any approved accommodation will reflect clinical assessment, best practices, and/or compliance with applicable law, regulation, or government order, and may include COVID-19 testing at NorthShore's expense, as well as personal protective equipment (PPE) requirements based on the Team Member's specific role, setting, and NorthShore's clinical assessment. NorthShore may adjust such accommodation requirements in good faith based on the evolution of the virus and/or applicable law, regulation, or government order.

9.4.   General Non-Discrimination Provisions

9.4.1.   NorthShore will not discriminate against any Team Member, including with respect to compensation, terms, conditions, or privileges of employment, on the basis of the Team Member's sincerely-held religious beliefs regarding vaccination, or the Team Member's vaccination state based on his or her sincerely-held religious beliefs.

9.4.2.   NorthShore will not retaliate against any Team Member for requesting religious exemption or accommodation, reporting religious discrimination, participating in any internal complaint process, participating in this Action, participating in this or any settlement, or filing a lawsuit or complaint with any outside agency or entity alleging religious discrimination.

9.4.3.   Nothing in this Settlement will prevent a Class Representative Plaintiff or other Class Member from pursuing any legal rights or remedies not covered by the Released Claims, including any claims for religious discrimination accruing on or after the Effective Date.

## 10.   Court Approval, Notice, and Fairness Hearing

10.1.   Jurisdiction. Subject to the Court's approval, NorthShore and Plaintiffs' Counsel conditionally agree and consent to jurisdiction, venue, and certification of the Class only for settlement purposes and within the context of this Agreement.

10.2.   Preliminary Approval. The Parties will jointly submit to the Court a motion for an order (i) conditionally certifying the Class; (ii) granting preliminary approval of the Settlement as reflected in this Agreement; (iii) approving the Notice Plan; (iv) setting the deadlines for submissions of opt-outs, objections, and Claim Forms; and (v) setting the Fairness Hearing and/or Final Approval hearing.

10.3.   Notice

    10.3.1. The Parties will agree to the Notice Plan and submit it to the Court for approval as soon as is reasonably practicable or by any deadline set by the Court. The Parties will also agree on the text and content of the Notice, subject to the Court's approval.

    10.3.2. NorthShore will provide information in its possession or control concerning contact information for the Class Members.

    10.3.3. The Notice Plan will include procedures for handling, protecting, securing and using the personal information of Class Representatives and Class Members.

    10.3.4. NorthShore will timely comply with the notice requirements imposed by the Class Action Fairness Act (CAFA), 28 U.S.C. § 1715, and will promptly provide to Class Counsel proof of such compliance, including copies of all notices it sent pursuant to that statute.

## 11.   Exclusions and Opt-Outs

11.1.   Any Class Member may request exclusion from the Settlement Class by mailing to the Settlement Administrator a Request for Exclusion—a written, signed statement that the Class Member is opting out of the Settlement. Requests for Exclusion must be postmarked by the deadline that will be set by the Court.

11.2.   The Settlement Class will not include those Class Members who timely submitted a Request for Exclusion, and any Class Member who opts out is not entitled to any monetary benefit under this Agreement.

11.3.   To be effective, a Request for Exclusion must include the language specified in the Notice confirming that the Class Member knows that by opting out of the Settlement, the Class Member will forego the opportunity to receive any monetary benefit from this Settlement. Class Members who have timely and properly opted out of the Settlement as set forth in this Paragraph may not participate in the Fairness Hearing.

11.4.   Within seven (7) days after the Opt-Out and Objection Deadline, the Settlement Administrator will provide the Parties a list of all persons who opted out by validly requesting exclusion. Class Counsel must file with the Court all timely opt-out statements. With the Court's permission, this filing shall be made under seal to protect the privacy interests of the persons opting out.

11.5.   The Parties may challenge the timeliness and validity of any Request for Exclusion. The Court will determine whether any contested Request for Exclusion is valid.

11.6.   Any Class Member who files a Request for Exclusion may rescind the Request for Exclusion. To be effective, any such rescission must be in writing and must be

received by the Settlement Administrator by no later than the day before the Fairness Hearing.

11.7. If eight percent (8%) of Class Members or more have validly opted out as of the Fairness Hearing, NorthShore will have the option to renegotiate and/or terminate this Agreement. In the event that NorthShore intends to renegotiate and/or terminate this Agreement as set forth in this Section 11.7, NorthShore's Counsel must provide written notice of NorthShore's intent by email to Class Counsel within 14 days after the Settlement Administrator provides the final opt-out list referenced in Section 11.4 of this Agreement.

11.8. Any Class Member who does not affirmatively opt-out of the Settlement by submitting a timely and valid request pursuant to the terms of this Section, will be bound by all of the terms of the Settlement as well as any judgment that may be entered by the Court after it grants Final Approval.

## 12. Objections

12.1. Only Settlement Class Members will be eligible to object to this Agreement.

12.2. Objections to this Agreement must: be in writing, signed, and filed with the Court (with copies served on the Parties' counsel); include a written statement that describes the basis of the objection; and indicate whether the Settlement Class Member intends to appear at the Fairness Hearing. To be timely and considered by the Court, objections must be postmarked on or before the Opt-Out and Objection Deadline that will be set by the Court.

12.3. An objector's written statement must include: (i) the name of the Action and a description of the objection(s), including any evidence and applicable legal authority and any supporting evidence the objector wishes to introduce; (ii) the objector's full name, address, email address, and telephone number(s); (iii) whether the objection applies only to the objector, a specific subset of the Settlement Class, or the entire Settlement Class; (iv) the identity of all counsel who represent the objector, including former or current counsel who may be entitled to compensation for any reason related to the objection, along with a statement of the number of times in which that counsel has objected to a class action settlement within five years preceding the submission of the objection, the caption of the case for each prior objection, and a copy of any relevant orders addressing the objection; (v) all agreements relating to the objection between the objector or objector's counsel and any other person or entity; (vi) the objector (and the objector's attorney's) signature on the written objection; and (vii) a declaration under penalty of perjury that the information provided by the objector and objector's counsel is true and correct.

12.4. A Settlement Class Member may object either on the Settlement Class Member's own behalf or through an attorney hired at the Settlement Class Member's own expense. If a Settlement Class Member hires an attorney other than Class Counsel to represent the Settlement Class Member, the attorney must (i) file a notice of

appearance with the Court no later than the Opt-Out and Objection Deadline, and (ii) deliver a copy of the notice of appearance to Class Counsel and NorthShore's counsel no later than the Opt-Out and Objection Deadline. Settlement Class Members, or their attorneys, intending to appear at any hearing relating to this Agreement, including the Fairness Hearing, must deliver, and file with the Court, a notice of their intention to appear at that hearing, to Class Counsel and NorthShore's counsel no later than 30 days before the hearing at which they plan to appear, or as the Court otherwise may direct.

12.5.  Objectors who fail to timely file and serve written objections will be deemed to have waived any objections and will be foreclosed from making any objection (whether by appeal or otherwise) to this Settlement.

12.6.  Only Settlement Class Members who timely file with the Court their signed, written objections and state in writing their intent to appear may appear at the Fairness Hearing. No Settlement Class Member may appear at the Fairness Hearing to object to the Settlement without first having filed with the Court the Settlement Class Member's objection(s) within the deadline that will be set by the Court.

12.7.  At no time shall any Party or counsel for any Party seek, solicit, or otherwise encourage any Plaintiff, Class Member, or Settlement Class Member to submit an objection to the Settlement or to appeal from the Court's approval of the Settlement.

## 13.  Termination or Modification of Agreement

13.1.  This Agreement is expressly contingent on both (i) the entry of the Preliminary Approval order approving this Agreement, including the Notice Plan and (ii) the Final Order and Judgment approving this Agreement and the expiration of all appeal periods and appeal rights without material modification of the Final Order and Judgment. If the Court declines to issue either the Preliminary Approval order or the Final Order and Judgment approving this Agreement following the Fairness Hearing, then this Agreement will be deemed terminated unless otherwise mutually agreed by the Parties.

13.2.  If the Final Order and Judgment is vacated or reversed by a reviewing court in whole or in part in any manner that prohibits subsequent approval of the Agreement without material modification, then this Agreement will be deemed terminated, unless all Parties who are adversely affected agree in writing to proceed with this Agreement as modified.

13.3.  If this Agreement is deemed terminated by refusal of the Court to approve or affirm approval of the Agreement, it will have no force or effect, will be void, and will not be admissible as evidence for any purpose in any pending or future litigation in any jurisdiction.

13.4.  If this Agreement does not become final and binding, each of the Parties reserves the right to prosecute the Action, and no Party will be deemed to have waived any claims, objections, rights, defenses, legal arguments, or positions.

13.5.    If the Court identifies any defect with the terms of this Agreement, the Parties agree to work together in good faith to cure any such defect and renegotiate the Agreement accordingly, if this can be done consistent with the agreed upon terms of settlement.

13.6.    If the Court does not approve the Settlement, or if this Agreement is terminated or fails to become effective (or if, following approval by this Court, such approval is reversed or substantively modified), the Parties will be restored to their positions that existed before entering into this Agreement. As a result, the terms and provisions of this Agreement will have no force or effect and will not be used in this Action or any proceeding for any purpose; the Settlement Fund will be returned to NorthShore (after deducting all costs and expenses, including costs of providing Notice to Class Members, paid or incurred by the Settlement Administrator as of the date of termination); and the litigation of the Action will resume as if there had been no Agreement, with no stipulated Class. The Parties retain all rights, claims, and defenses as to class certification and otherwise as to any of the allegations asserted in this Action. This Agreement will not represent a cap on damages available to the Named Plaintiffs or the Class, nor any admission of liability, nor that class wide treatment is proper in this Action.

13.7.    Except where specifically provided, this Agreement may not be amended or modified without the Parties' express written consent.

## 14.    Release; Bar of Claims

14.1.    All Class Members who do not timely opt out of this Settlement will deemed to release all Released Claims.

14.2.    Any Plaintiff or Class Member who receives a Service Award or any payment in excess of the payment received by other similarly situated Settlement Class Members will execute a separate and individual release. The separate and individual release will not be inconsistent with this Agreement and will not exceed the scope of the Release provided for in this Agreement. The Parties will mutually negotiate and agree upon the terms of the separate and individual release and will endeavor to do so prior to August 5, 2022, or as soon as is reasonably practicable thereafter. The separate and individual release will be executed by Service Award recipients within 14 days after the Opt-Out deadline.

14.3.    Released Claims will not be deemed to release, remise, waive, acquit, affect, or discharge any claims that are not releasable under the law, such as for unemployment or worker's compensation benefits, or any claims or defenses arising from enforcement of this Agreement. Plaintiffs and Class Members each acknowledge that they have received all compensation due from NorthShore prior to the Effective Date. Nothing in any part of this Agreement is intended to limit the right of any Plaintiff or Class Member to: (i) file a charge or complaint with any administrative agency, such as the U.S. Equal Employment Opportunity Commission or a state fair employment practices agency, or communicate directly

16

with or provide information (including testimony) to an agency, or otherwise participate in an agency proceeding; or (ii) communicate with law enforcement or his or her attorney. Nonetheless, Plaintiffs and Class Members waive all rights to any money or other individual relief based on any agency or judicial decision, including class or collective action rulings. Plaintiffs and Class Members may, however, receive money properly awarded by the U.S. Securities and Exchange Commission (SEC) as a reward for providing information to that agency.

14.4. Released Claims do not include or cover any action, omission, or claim that has not yet occurred or accrued as of the Effective Date. To illustrate for the avoidance of doubt, and not limit the scope of this exclusion, the Parties agree that Released Claims do not include claims arising out of any decision or omission by NorthShore after the Effective Date to: unlawfully deny employment to any Termination Allocation Group member who seeks reemployment with NorthShore, unlawfully discharge or take adverse action against any Class Member employed by NorthShore, unlawfully deny a religious exemption or reasonable accommodation to any Team Member or prospective Team Member, or to otherwise apply, implement, or change any aspect of its Vaccine Policy or System Vaccine Program in a manner inconsistent with applicable laws, regulations, rules, and/or orders.

14.5. Released Claims do not include or cover any action, omission, or claim that any Class Member may have against the State of Illinois or its subsidiaries.

## 15. No Admission; No Determination

This Agreement does not and is not intended to constitute, nor will it be deemed to constitute, an admission by any party as to the merits, validity, or accuracy of any of the allegations, claims, or defenses of any party in this case. The Class Representatives continue to assert the merits and validity of their claims, including their claims under 42 U.S.C. § 2000e (Title VII) and the Illinois Healthcare Right of Conscience Act, 745 Ill. Comp. Stat. 70/1 et seq. NorthShore continues to deny all claims as to wrongdoing, liability, damages, penalties, interest, fees, injunctive relief, and all other forms of relief, as well as the class allegations asserted in the Action. This Agreement cannot and will not be construed as an admission of liability on any claim or in any form against NorthShore.

## 16. Enforcement of the Agreement

16.1. The Court will retain jurisdiction to enforce the terms of this Agreement, and all Parties submit to the jurisdiction of the Court to implement and enforce the Settlement embodied in this Agreement. As part of its continuing jurisdiction, the Court may amend, modify, or clarify orders issued in connection with this Agreement upon good cause shown by a Party. No other court or tribunal will have jurisdiction over claims or causes of action arising under this Agreement.

16.2. Federal law will govern the validity, construction, and enforcement of this Agreement. If state law is deemed by a court of competent jurisdiction to govern

the validity, construction, or enforcement of this Agreement, then the substantive law of Illinois will apply.

16.3. The prevailing party in any action or proceeding in which is asserted a claim or cause of action for breach of this Agreement will be entitled to recover all reasonable costs and attorneys' fees incurred in connection with the action or proceeding.

16.4. Only Class Counsel or NorthShore's counsel will prosecute enforcement of this Agreement.

## 17. Other Terms and Conditions of Settlement

17.1. Each Party and its respective counsel agrees to not make any defamatory statements about any other Party. This provision does not enlarge, contract, or otherwise modify the requirements of, or remedies available under, defamation law. This provision also does not impose any responsibility on any person for any statement allegedly made by another person.

17.2. NorthShore and its counsel agree to not make any statements purporting to be on behalf of any Plaintiff or their counsel. Plaintiffs and their counsel agree to not make any statements purporting to be on behalf of NorthShore or its counsel. This provision also does not impose any responsibility on any person for any statement allegedly made by another person.

17.3. In their joint motion requesting the Court's Preliminary Approval of this Agreement, Plaintiffs will request that the Court withdraw and/or not adjudicate Plaintiffs' motion for leave to amend their Complaint, which is still pending in the Action. In the event any Plaintiff decides to proceed with any constitutional or legal claim against the State of Illinois, including any claim arising out of the amendment of the Illinois Health Care Right of Conscience Act, such Plaintiff must do so in a separate action that does not include NorthShore.

17.4. Arms-Length Negotiation and Cooperation

17.4.1. This Agreement has been negotiated at arms' length by Class Counsel and NorthShore's counsel. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

17.4.2. If any dispute arises out of this Agreement or in any proceeding to enforce this Agreement, no Party will be deemed to be the drafter of this Agreement or any particular provision. No part of this Agreement will be construed against any Party based on that Party's identity as the drafter of any part of this Agreement.

17.5. Entire Agreement

17.5.1. This Agreement, including each addendum hereto, contains the entire agreement and understanding of the Parties regarding the Settlement. This Agreement imposes no obligations on the Parties beyond the Agreement's terms.

17.5.2. Each provision and term of this Agreement will be interpreted so as to be valid and enforceable.

17.5.3. Paragraph and section headings are for convenience of reference only and are not intended to create substantive rights or obligations.

17.5.4. This Agreement may be executed in counterparts. Each signed counterpart, together with the others, will constitute the full Agreement.

17.6. Agreement Binding. As of the date of Execution, this Agreement will be binding in all respects unless the Court fails to approve the Settlement, after which the Agreement is deemed terminated and void.

17.7. Parties' Authority

17.7.1. The signatories represent that they are fully authorized to enter into this Agreement and bind the Parties to its terms.

17.7.2. The Parties acknowledge that through this Agreement and its attachments, they and the Class Members are being advised that they may consult an attorney regarding their participation in this Agreement.

17.7.3. The Parties also acknowledge that competent, experienced counsel have represented them throughout all negotiations preceding the Agreement's Execution and that this Agreement is made with the consent and advice of counsel who have jointly prepared this Agreement.


[This space is intentionally left blank; signature page follows.]

IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their duly authorized attorneys below.

Executed on: July 28, 2022

Horatio G. Mihet
Mathew D. Staver
Roger K. Gannam
Daniel J. Schmid
**LIBERTY COUNSEL**
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org

Sorin A. Leahu (Local Counsel)
**LEAHU LAW GROUP, LLC**
53 W. Jackson Blvd., #1527
Chicago, IL 60604
(847) 529-7221
sleahu@leahulaw.com

***Attorneys for Plaintiffs***

Executed on: July 28, 2022

David E. Dahlquist
Kevin P. Simpson
Nasir Hussain
Savannah L. Murin
**WINSTON & STRAWN LLP**
35 W. Wacker Dr.
Chicago, IL 60601
(312) 558-5600
ddahlquist@winston.com
ksimpson@winston.com
nhussain@winston.com
smurin@winston.com

Marc R. Jacobs
**SEYFARTH SHAW LLP**
233 S. Wacker Dr., Suite 8000
Chicago, IL 60606
(312) 460-5000
mjacobs@seyfarth.com

***Attorneys for NorthShore***
***University HealthSystem***

**ADDENDUM 1**

**NORTHSHORE UNIVERSITY HEALTHSYSTEM**
**REVISED SYSTEM VACCINE PROGRAM - 2022**

**Overview:**

- NorthShore will maintain a team member vaccination policy which may include without limitation: MMR, Tdap, Varicella, Hepatitis B, COVID-19, and annual seasonal influenza.
- NorthShore will maintain an exemption process for team members to apply within dedicated time frames for an exemption from vaccination policy compliance. Such exemption request process will also be made available to new applicants.
- The exemption process will be consistent with the COVID-19 vaccination rule issued by the Centers for Medicare and Medicaid Services (subject to any subsequent amendment thereof), and the ruling of the United States Supreme Court in *Biden v. Missouri* (January 13, 2022).
- NorthShore may adjust its vaccine program and accommodation requirements to comply with applicable laws, regulations, rules, or orders and/or in response to future disease, pandemics, or health risks requiring such countermeasures based on NorthShore's clinical assessment.
- NorthShore will review each individual's exemption request pursuant to applicable criteria for granting a medical or religious exemption, engage the individual in such review, and determine if the request is granted or denied based on such individual assessment.
- If an individual is granted an exemption, NorthShore will engage in an accommodation review based on the individual's circumstances, including their current role and workplace setting, applicable law/regulation, and other relevant guidance or data, to determine what if any accommodations may be required or available.
- NorthShore will seek to accommodate those employees and/or new applicants across all workplace settings with approved exemptions if possible.

**Proposed Timeline:**

| Current | September 2022 | October 2022 | December 2022 |
|---|---|---|---|
| Communicate System Vaccine Program updates for Fall 2022 | Launch 2022 revised Vaccine Program and exemption application process | Exemption applications due with 45 day review period | Vaccine compliance deadline with exemption decisions/accommodations finalized. |

Review exemption requests and offer accommodations for applicants granted exemptions from vaccine program compliance.

**ADDENDUM 2**

**RE-EMPLOYMENT ACCOMMODATIONS FOR
NAMED PLAINTIFFS/CLASS REPRESENTATIVES**

The following chart identifies the Named Plaintiffs who have indicated an interest in applying for re-employment with NorthShore University HealthSystem.  NorthShore will offer each below-listed Named Plaintiff a religious exemption to NorthShore's Vaccine Policy, and accommodation in the "Rehire Accommodation" position indicated in the second column, or a substantially similar position based on area, role, qualifications, and pay rate available at the time that the Named Plaintiff submits her application, which shall be no more than 30 days after the date on which this Settlement Agreement is filed with the Court.

If any of the below-listed Named Plaintiffs do not apply for re-employment at NorthShore within 30 days after the date on which this Settlement Agreement is filed with the Court, they may seek re-employment pursuant to the terms set forth in Section 9.3.2 for Termination Allocation Group members.

| Name | Rehire Accommodation Position Available as of July 29, 2022 |
|---|---|
| Jane Doe 1 | Accommodation available for Care Navigator RN positions in Cross Care Continuum |
| Jane Doe 2 | Accommodation available in similar area and same role as pre-termination position |
| Jane Doe 3 | Accommodation available in same area and role as pre-termination position; PM shift only |
| Jane Doe 7 | Accommodation available in preadmission testing for similar role as pre-termination position |
| Jane Doe 8 | Accommodation available in similar areas for same role as pre-termination position |
| Jane Doe 9 | Accommodation available in similar areas and same role as pre-termination position |
| Jane Doe 10 | Accommodation available in preadmission testing for similar role as pre-termination position |
| Jane Doe 13 | Accommodation available in same area and role as pre-termination position |