UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Doe 1, et al., | |
| *Plaintiffs*; | Case No. 1:21-cv-05683 |
| v. | Judge John F. Kness |
| NorthShore University HealthSystem, | |
| *Defendant*. | |

**JOINT MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND APPROVAL OF SERVICE AWARDS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................iii

INTRODUCTION ........................................................................................................ 1

SUMMARY OF NOTICE AND CLAIMS PROCESS ................................................... 2

    A.    The Notice Program. ............................................................... 2

    B.    Claims and Opt-Outs. ............................................................. 5

LEGAL STANDARD ................................................................................................... 7

DISCUSSION .............................................................................................................. 8

I.     The Court Has Already Certified the Settlement Class................................. 8

II.    The Notice Plan Satisfies Rule 23. ............................................................... 8

III.   The Settlement is Fair, Reasonable, and Adequate. ..................................... 9

    A.    The settlement relief is significant given the substantial risks and
costs of continuing litigation. ................................................................. 10

    B.    Settling now avoids the complexity, length, and expense of trial and
appeal. ...................................................................................................... 13

    C.    The lack of significant opposition to the Settlement favors approval,
and the three objections to the Settlement should be overruled.......... 14

    D.    Competent counsel endorse the Settlement. .......................................... 16

    E.    The parties reached settlement after significant analysis and arms-
length negotiation. .................................................................................. 17

IV.   The Court Should Approve the Service Awards to the Class Representatives.
.................................................................................................................... 17

CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Lockheed Martin Corp.*,
  2015 WL 4398475 (S.D. Ill. July 17, 2015)............................................................. 19

*Beesley v. Int'l Paper Co.*,
  2014 WL 375432 (S.D. Ill. Jan. 31, 2014).............................................................. 19

*Brewer v. Molina Healthcare, Inc.*,
  2018 WL 2966956 (N.D. Ill. June 12, 2018)........................................................... 19

*Cook v. Niedert*,
  142 F.3d 1004 (7th Cir. 1998) ................................................................................. 17

*Donovan v. Est. of Fitzsimmons*,
  778 F.2d 298 (7th Cir. 1985) ................................................................................... 10

*Dorvit ex rel. Power Sols. Int'l, Inc. v. Winemaster*,
  950 F.3d 984 (7th Cir. 2020) ................................................................................... 13

*Goldsmith v. Tech. Sols. Co.*,
  1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ......................................................... 17

*In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*,
  789 F. Supp. 2d 935 (N.D. Ill. 2011) ...................................................................... 14

*In re General Motors Corp. Engine Interchange Litig.*,
  594 F.2d 1106 (7th Cir. 1979) ................................................................................. 10

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*,
  332 F.R.D. 202  (N.D. Ill. 2019) .................................................................. 8, 10, 11

*In re TikTok, Inc., Consumer Priv. Litig.*,
  --- F. Supp. 3d ----, 2022 WL 2982782 (N.D. Ill. July 28, 2022).................... passim

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996) ................................................................................... 10

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*,
  877 F.3d 276 (7th Cir. 2017) .............................................................................. 11, 12

*McKinnie v. JP Morgan Chase Bank, N.A.*,
  678 F. Supp. 2d 806 (E.D. Wis. 2009)..................................................................... 16

*Reynolds v. Beneficial Nat'l Bank*,
  288 F.3d 277 (7th Cir. 2002).............................................................................. 7, 11

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................... 13

*Seiden v. Nicholson*,
  72 F.R.D. 201 (N.D. Ill. 1976) ................................................................................ 13

*Spicer v. Chicago Bd. Options Exchange, Inc.*,
844 F. Supp. 1226 (N.D. Ill. 1993) ........................................................ 18

*Susquehanna Corp. v. Korholz*,
84 F.R.D. 316  (N.D. Ill. 1979) ............................................................ 17

*Synfuel Techs, Inc. v. DHL Express (USA), Inc.*,
463 F.3d 646 (7th Cir. 2006) ............................................................ 10

*Wong v. Accretive Health, Inc.*,
773 F.3d 859 (7th Cir. 2014) ........................................................ 11, 14

**Rules**
Fed. R. Civ. P. 23 ................................................................. passim

**Treatises**
Newberg on Class Actions (6th ed.) .......................................... 8

**Other Authorities**
Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) .................................................... 8

iv

## INTRODUCTION

On August 5, 2022, this Court entered an order certifying the settlement class (hereafter the "Class") and preliminarily approving the class action settlement agreement (hereafter "Settlement"). (Dkt. 115.) On September 8, 2022, the Court entered a supplemental order approving the Notice Plan, Notice, Claim Form and Settlement Deadlines proposed by the parties. (Dkt. 116.) After successfully and effectively carrying out the Notice Plan and claims program approved by the Court, the Parties now jointly move under Federal Rule of Civil Procedure 23(e) for final approval of the Settlement. As shown herein, the exceedingly high claims rate (**between 91.8% and 95.0%**), the exceedingly low number of objections (**three**), and the non-existent opt-outs (**zero**) demonstrate clearly that the Notice and Notice Plan approved by the Court were effective and the Settlement reached by the parties and preliminarily approved by the Court is fair, reasonable, and adequate.

As demonstrated in the parties' joint preliminary approval motion (Dkt. 107), the Settlement substantially benefits the Class and promotes judicial economy.[1] Balancing the risks of continued litigation against the substantial benefits of settling now, the Court should find that the settlement satisfies Rule 23(e) and is fair, reasonable, and adequate. Plaintiffs Jane Doe #1–#13, on behalf of themselves and

---

[1] For a complete background of the case, including the litigation history, settlement efforts, and summary of the Settlement Agreement, the parties refer to, and hereby incorporate, their Memorandum of Law in Support of Joint Motion for Certification of Settlement Class and Preliminary Approval of Class Action Settlement [hereafter "Preliminary Approval Motion"]. (Dkt. 107, at 7–12.) (Page references are to the ECF pagination in the docket header, not to the document's native pagination.)

the Class, and Defendant NorthShore University HealthSystem ("NorthShore") accordingly request that the Court grant final approval of the Settlement and approve service awards to the Named Plaintiffs for their contributions to the Class.

Also, because no individual has opted out of the settlement, the Court's final approval order should specify that all Released Claims (as defined in the Settlement Agreement), including any separate or individual claims (including without limitation pending charges at the Equal Employment Opportunity Commission and/or Illinois Department of Human Rights) brought by any member of the Class, are ordered released, withdrawn, and barred in accordance with Section 14.1 of the Settlement Agreement.

Additionally, Plaintiffs' unopposed motion for attorney's fees and costs remains pending and is ripe for adjudication. (Dkt. 119.)

SUMMARY OF NOTICE AND CLAIMS PROCESS

**A.     The Notice Program.**

After the Court granted preliminary approval of the Settlement (Dkt. 115) and approved the Notice Plan (Dkt. 116), Plaintiffs disseminated notice to the Class through the notice program developed by Class Counsel and American Legal Claims Services ("ALCS"), a professional settlement administration company, and approved by the Court. (Dkts. 114-1, 116.)

Specifically, on August 29, 2022, NorthShore provided Plaintiffs and ALCS a list of names and addresses of all potential Class Members then known to NorthShore, which included 499 current and former NorthShore employees. (Decl. of Horatio G. Mihet ¶ 6 ["Mihet Decl."], attached hereto as **Exhibit A**.) Pursuant to the Notice Plan,

2

on or around September 13, 2022, ALCS mailed the Court-approved Notice and Claim Form individually to each of the 499 potential Class Members. (*Id*. at ¶ 8.)

Also on or around September 13, 2022, as provided in the Notice Plan approved by the Court, Class Counsel published a Settlement website (https://northshore.lc.org) with information about the Settlement, including the Notice, a downloadable generic Claim Form, and a list of dates and deadlines for submitting claims, filing objections, and opting out of the settlement. (*Id*. at ¶ 7.) Class Counsel also provided Class Members a telephone number and dedicated email address for further information about the settlement. (*Id*.)

As provided in the Notice Plan approved by the Court, on or around October 18, 2022, ALCS re-mailed the Notice as a reminder to each of the 276 potential Class Members (out of the initial 499) who had not submitted a Claim Form as of that date. (*Id*. at ¶ 9.)

Out of the initial 499 mailings, and the 276 reminder mailings, a total of 27 were returned as non-deliverable, representing 21 unique Class Members (some Class Members had both mailings returned). (*Id*. at ¶ 10.) From those 21 individuals, seven submitted a generic Claim Form on their own, presumably from the Settlement website, thereby obviating the need for further search efforts. (*Id*.) All of the 14 remaining individuals from this group (who did not submit a generic Claim Form on their own) were successfully located either by ALCS or by Class Counsel and were re-mailed individually a Notice and Claim Form. (*Id*. at ¶ 11.) None of those re-mailings was returned as non-deliverable (*Id*.) Ultimately, of the 21 initially non-deliverable

3

Class Members, 17 filed claims. Class Counsel made additional efforts to reach the other four Class Members via telephone and email, even though the Notice and Claim Form that was re-mailed to them was not returned undeliverable a second time for any of them. (*Id*. at ¶ 12.) Therefore, Class Counsel are informed and believe that **100% of the 499 potential Class Members identified by NorthShore were successfully reached (individually) with the Notice**. (*Id*. at ¶ 13.)

Approximately one week before the claim submission deadline, 88 individuals from NorthShore's initial list had not yet submitted a Claim Form. (*Id*. at ¶ 14.) Class Counsel attempted to contact each one individually prior to the deadline, via telephone and/or email, and again reminded those individuals that could be reached via telephone, voicemail or email of the November 18, 2022 claim deadline. (*Id*.)

On November 17, 2022, the day before the claim deadline, NorthShore provided Class Counsel a list of five additional individuals believed to be potential Class Members, who were not included on NorthShore's initial list (and therefore did not receive the mailed Notice) because of a clerical error. (*Id*. at ¶ 15.) On the following day, November 18, 2022, NorthShore provided telephone numbers, email addresses and mailing addresses for those five individuals. (*Id*.) Class Counsel successfully reached four of these individuals on that day (the last day for claim submissions), and all four provided timely Claim Forms that day. (*Id*. at ¶ 16.) Class Counsel were only able to reach the fifth person for the first time on the evening of December 7, 2022, and she sent Class Counsel a Claim Form on the same evening, which was provided to ALCS. (*Id*.) Because of the special circumstances involved here, and because this

individual did not receive the mailed Notice prior to the November 18, 2022 claim deadline, the parties respectfully move the Court to extend the claim deadline for this person and to consider her Claim Form as timely received.

Additionally, on December 8, 2022, NorthShore provided Class Counsel the name and contact information of one additional person believed to be a potential Class Member, who was not included on NorthShore's initial list (and therefore did not receive the mailed Notice) because of a clerical error. (*Id.* at ¶ 17.) Class Counsel was able to reach this person by telephone on December 10, 2022, and provided him with a copy of the Notice and Claim Form via both email and the Settlement website. (*Id.*) Class Counsel are expecting to receive a Claim Form from this person very quickly, perhaps even today, and certainly not later than before the final approval hearing. (*Id.*) Because of the special circumstances involved here, and because this person did not receive the mailed notice prior to the November 18, 2022 claim deadline, the parties respectfully move the Court to extend the claim deadline for him as well, and to consider timely a Claim Form received from him prior to the December 19, 2022 final approval hearing. (The parties will update the Court on this situation at the final approval hearing.)

### B. Claims and Opt-Outs.

The claim postmark deadline was November 18, 2022, and the claim receipt deadline was November 28, 2022. As of the filing of this motion on December 12, 2022, ALCS has received 493 unique claims and 66 duplicates. (*Id.* at ¶ 18.) If the person newly identified on December 8 submits a Claim Form prior to the final approval

hearing, and if the Court extends his claim submission deadline, there will be 494 unique claims. (*Id.*)

Out of the 493 unique claims received, 300 appear to belong to the Termination Allocation Group, and 193 appear to belong to the Compliance Allocation Group. (*Id.* at ¶ 19.)

As of the filing of this motion, ALCS had been able to determine that 424 of the 493 unique claims were complete and were timely submitted by eligible Class Members. (*Id.* at ¶ 20.) The parties are working cooperatively with each other and ALCS to determine eligibility of the remaining 69 claims. (*Id.*) The 69 claims whose eligibility remains to be determined include many that had minor or technical deficiencies, such as a missing employee ID number or termination date, and Class Counsel believe and are hopeful that the majority of these deficiencies can and will be cured, resulting in valid claims. (*Id.* at ¶ 21.) Under the Settlement Agreement, ALCS has 60 days after final approval to make final eligibility determinations and mail out payments. (Dkt. 107-1 at § 8.2.6, p.9.) The parties believe that the eligibility of the remaining 69 claims can and will be determined well before that deadline.

Requests for exclusion ("opt-outs") and objections were also due by November 18, 2022. ALCS has received **zero opt-outs**, and only **three objections** by Class Members who, in addition to objecting, also filed individual and timely claims for payment. (Mihet Decl. ¶ 22.)

6

Out of the 505 potential Class Members identified by Northshore (499 on August 29; five on November 17; and one on December 8), 43 have neither filed a claim, nor objected, nor opted out. (*Id.* at ¶ 23.)

On the other hand, 32 potential Class Members **not** identified by NorthShore have filed claims, and their Class membership eligibility is currently being reviewed. (*Id.* at ¶ 24.) As of the filing of this motion, the parties have been able to determine that 14 of these 32 individuals are, in fact, Class Members. NorthShore has provided information to Class Counsel relating to the remaining 18 individuals, and Class Counsel are working with those claimants, and with ALCS, to determine their eligibility. (*Id.*)

If all of the additional 18 claimants are determined to be part of the Class, then the total Class size will be 537. (*Id.* at ¶ 25.) If none of the additional 18 claimants is determined to be part of the Class, then the total Class size will be 519. (*Id.*) Therefore, based on the 493 unique claims received to date, the claim rate should be somewhere between **91.8%** (493/537) and **95%** (493/519). (*Id.*) (The claim rate will increase fractionally if the person newly identified on December 8 submits a Claim Form prior to the final approval hearing, and the Court considers it timely, bringing the total unique claims to 494.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires court approval of any settlement that effects the dismissal of a class action. *See Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). "Approval requires final certification of the class for

settlement and a finding that the settlement is 'fair, reasonable, and adequate.'" *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.* ("*In re N.C.A.A.*"), 332 F.R.D. 202, 214 (N.D. Ill. 2019) (quoting Fed. R. Civ. P. 23(e)).

## DISCUSSION

### I.   The Court Has Already Certified the Settlement Class.

The Court has already certified the Class for settlement purposes in its Preliminary Approval Order (Dkt. 115, ¶ 5, p. 2.) In seeking final certification for settlement purposes, the parties rely on, and hereby incorporate, their arguments for Settlement Class certification as set forth in their Preliminary Approval Motion. (Dkt. 107, at 14–19.)

### II.   The Notice Plan Satisfies Rule 23.

To approve the Settlement, the Court must find that the Notice Plan provided "the best notice [to the class] that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2); *see also* Fed. R. Civ. P. 23(e)(1). "Neither Rule 23 nor due process requires that every class member actually receives notice." *In re TikTok, Inc., Consumer Priv. Litig.* ("*In re TikTok*"), --- F. Supp. 3d ----, 2022 WL 2982782, at *15 (N.D. Ill. July 28, 2022). Instead, "notice suffices if it is reasonably calculated to reach the absent parties." 3 Newberg on Class Actions § 8:36 (6th ed.). According to the Federal Judicial Center, a reasonable notice program reaches at least 70% of the class. *See* Fed. Judicial Ctr., *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* 3 (2010),

https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf (last accessed Nov. 29, 2022).

The parties have satisfied Rule 23's notice requirements. NorthShore was able to identify the names and addresses of virtually all the Class Members, and, through extensive efforts of Class Counsel and ALCS, individual notice reached 505 of the 505 persons identified by NorthShore to be part of the Class. (Mihet Decl. ¶¶ 13-17.) Additionally, the Notice Plan, including the Settlement website, also reached 32 persons whom NorthShore had not identified itself, but who purport to be part of the Class. (*Id*. at ¶ 24.) As detailed above, the parties and ALCS have determined that 14 of these are Class Members, and the parties are working to determine the Class membership of the remaining 18.

The 100% success rate in reaching Class Members with individual notice in this case is not only unusually effective, but also substantially above the Federal Judicial Center's 70% threshold. Moreover, as a result of the Notice Plan's effectiveness and the parties' extensive efforts, 493 unique claims have been submitted—resulting in an unusually high claim rate of between 91.8% and 95%. Further, no Class Member or third party objected to the Notice Plan. *See In re TikTok*, 2022 WL 2982782, at *16 (considering objections to the notice program). In all, the Notice Plan provided the best notice practicable to the Class under the circumstances, including individual notice to all Class Members.

## III.    The Settlement is Fair, Reasonable, and Adequate.

Rule 23(e) provides that a court may approve a proposed class settlement "on a finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To evaluate

the fairness of a settlement, courts in this circuit must consider "the strength of plaintiffs' case compared to the amount of defendants' settlement offer, an assessment of the likely complexity, length and expense of the litigation, an evaluation of the amount of opposition to settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs, Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996)). "Such an analysis does 'not focus on individual components of the settlements, but rather views them in their entirety in evaluating their fairness.'" *In re N.C.A.A.*, *supra*, 332 F.R.D. at 217 (quoting *Isby*, 75 F.3d at 1199 (cleaned up)).

### A. The settlement relief is significant given the substantial risks and costs of continuing litigation.

The "most important factor" relevant to a class action settlement's fairness is the strength of the plaintiff's case balanced against the settlement amount. *Synfuel*, 463 F.3d at 653 (quoting *In re General Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)); *Donovan v. Est. of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985) ("[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation."). In *Reynolds v. Beneficial National Bank*, the Seventh Circuit advised that in class actions unlike this one, where there are "suspicious circumstances" that suggest collusion rather than arms-length negotiation, district courts should "quantify the net expected value of continued litigation" by "estimating the range of

possible outcomes and ascribing a probability to each point on the range." 288 F.3d at 284–85.

Since *Reynolds*, however, the Seventh Circuit "has endorsed a less formulaic scrutiny of class action settlements when indicia of trustworthiness—third-party mediation, extensive confirmatory discovery, and hard-fought, arm's-length negotiation—work against any suggestion of impropriety." *In re TikTok*, 2022 WL 2982782, at *20–21 (citing *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276 (7th Cir. 2017) and *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014)).

Here, the Court need not "quantify the net expected value of continued litigation," *Reynolds*, 288 F.3d at 284–85, because the history of this litigation "shows a vigorously negotiated settlement reached in good faith," *In re TikTok*, 2022 WL 2982782, at *21. The parties reached settlement after mediation with an experienced third-party mediator and several months of intensive, arms-length negotiations, all of which was preceded by intensive litigation. "Given these indicia of an arm's length adversarial process," the Court should find it "unnecessary to undertake the type of mechanical mathematic valuation exercise that *Reynolds* endorsed." *Id.*, at *21 (cleaned up); *cf. In re N.C.A.A.*, 332 F.R.D. at 218–19 (approving class action settlement without quantifying net expected value of continued litigation where parties had settled after lengthy, arms-length mediation sessions and extensive discovery).

The Court nevertheless must still "consider carefully the benefits of the monetary and injunctive relief to the classes against the risks and potential benefits of potential future litigation." *In re TikTok*, 2022 WL 2982782, at *21 (citing *Kaufman*, 877 F.3d at 285). Accordingly, that NorthShore has agreed to settle this case for $10.3 million is a substantial recovery for Class members, both in the aggregate and individually. Claims processing is still under way, and the total number of eligible claims and total costs of administration are not yet known. However, if all of the 493 unique claims received to date are found to be valid, and if the costs of administration remain in line with prior estimates, it is estimated that each Class Member in the Termination Allocation Group may receive approximately $24,225, and each Class Member in the Compliance Allocation Group may receive approximately $3,725. That individual recovery may increase if some of the 493 unique claims are invalid or otherwise disallowed.

Further, the Settlement fund is squarely comparable to recent class action employment discrimination settlements that were judicially approved in Illinois, in both total and per capita recovery:

| Case | Class Size | Funds (millions) | Per Capita $ Recovery |
|------|-----------|------------------|----------------------|
| *Doe 1 v. NorthShore Univ. HealthSystem*, 1:21-cv-05683 (religion) | 518-537 | $10.34 | $19,250.47 - $19,956.56 |
| *Bland v. Edward Jones*, No.18-cv-3673 (N.D. Ill.) (race) | 809 | $34 | $42,027.19 |
| *Brown v. Cook Cty.*, No. 17-cv-8085 (N.D. Ill.) (sex) | 534 | $14 | $26, 217 |
| *Porter v. Piperfitters Ass'n Local Union*, No. 12-cv-9844 (N.D. Ill.) (race) | 342 | $3 | $8,771.92 |
| *Borders v. Wal-Mart*, No. 17-cv-506 (S.D. Ill.) (sex) | 3,995 | $14 | $3,504.38 |

Along with the monetary relief, the programmatic relief obtained in the Settlement also provides substantial value to the Class. (*See* Preliminary Approval Motion, Dkt. 107 at 11–12.) With these monetary and programmatic benefits in mind, the significant litigation risks that Plaintiffs would face if the case were to proceed— as detailed in the Preliminary Approval Motion (Dkt. 107 at 20–22)—"weigh heavily" in favor of approving the Settlement. *See In re TikTok*, 2022 WL 2982782, at \*22. In short, the benefits that the Settlement provides when considered against "the probabilities and possibilities of victory or defeat" if litigation were to continue weigh strongly in favor of approval. *See Dorvit ex rel. Power Sols. Int'l, Inc. v. Winemaster*, 950 F.3d 984, 988 (7th Cir. 2020) (citation omitted).

## B. Settling now avoids the complexity, length, and expense of trial and appeal.

Settlement approval is warranted because, as fully set forth in the Preliminary Approval Motion (Dkt. 107 at 23-24), "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). In short, by reaching a favorable settlement now, Plaintiffs seek to avoid significant expense and delay, and instead ensure meaningful—and timely—recovery for the Class. *Cf. Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort.").

13

**C.      The lack of significant opposition to the Settlement favors approval, and the three objections to the Settlement should be overruled.**

The Seventh Circuit has instructed district courts to evaluate the amount of opposition to a settlement among affected parties. *See Wong*, 773 F.3d at 863. With 493 claims filed out of a Class of between 519 and 537 current and former NorthShore Team Members, only three Class Members have filed an objection to the Settlement. (Mihet Decl. ¶ 22.) Beyond that, not a single Class Member requested to be excluded from the settlement. (*Id.*) Thus, "[t]he relative dearth of opposition to the settlement and the reaction of class members weighs in favor of approval as well." *In re TikTok*, 2022 WL 2982782, at *24; *cf. In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) ("[I]t is illuminative that only a tiny fraction of the Class Members saw fit to opt out or to object.").

The three objections to the Settlement are without merit and should be overruled. The objection submitted by Janel Hughes-Jones (attached as **Exhibit 1** to the Mihet Declaration) (who also submitted a claim for payment) references Section 14.2 of the Settlement Agreement, but that provision clearly applies only to any **representative or named** "Plaintiff or Class Member who receives a Service Award." (Dkt. 107-1, §14.2, p. 16.) Since Ms. Hughes-Jones is not among the 13 representative Plaintiffs in this case, and is not receiving a Service Award, the section of the Settlement Agreement under which she purports to object has no relevance to her objection.

Moreover, it also appears that Ms. Hughes-Jones believes she is owed unpaid wages from NorthShore under Illinois wage laws. However, the Settlement does not

14

provide for unpaid wages for any Class Member. More importantly, the Release within the Settlement Agreement does not include a release of claims for unpaid wages under Illinois wage laws. Therefore, if Ms. Hughes-Jones believes that she has a meritorious and non-expired claim for unpaid wages (as opposed to a claim for additional back-pay or similar damages related to the Released Claims herein), she is able to collect her payment from the Settlement Fund and pursue her unpaid wages claim against NorthShore individually, on her own. Ms. Hughes-Jones' misunderstanding of, and discontent with, the Settlement for not including a claim that she believes to have is no reason to doubt the fairness of the Settlement accepted by virtually everyone else. The Court should therefore overrule Ms. Hughes-Jones' objection and grant final approval for the Settlement.

The other two objections to the Settlement, filed by Renee LeBeau (attached as **Exhibit 2** to the Mihet Declaration) and Marzena E. Novak (attached as **Exhibit 3** to the Mihet Declaration), both of whom also submitted claims for payment, also lack merit and should be overruled. Ms Novak is dissatisfied with the amount of the Settlement and her individual recovery because she claims to have suffered financial losses that exceed her estimated recovery. However, Ms. Novak appears to believe that she is entitled to receive lost wages for the full year that has passed since her termination, without indicating whether, when, and on what terms she was able to secure alternative employment, or providing any explanation as to why she might not have been able to secure *any* alternative employment, as required by the duty to mitigate her damages. Similarly, Ms. LeBeau also expresses dissatisfaction with the

amount of the Settlement, but she provides no calculation or amount by which she claims her individual damages to be higher.

Ultimately, the three objectors appear to misunderstand the nature of a settlement, and to regard settlements as akin to a full recovery on the merits after litigation and final judgment in their favor, without appreciating the time, expense and risks of litigation (including the risk of a defense verdict and complete non-recovery). Settlements are, by their very nature, not a complete recovery of all possible damages, because they are *settlements*, not final judgments. This Settlement is fair, reasonable and adequate for the reasons detailed herein, even if it does not provide the full recovery to which each Class Member arguably or theoretically might have been entitled after a judgment on the merits in the distant future, which NorthShore would have vigorously contested.

The Court should therefore overrule the three objections and find that the Settlement is fair, reasonable, and adequate.

**D.  Competent counsel endorse the Settlement.**

As set forth in the Preliminary Approval Motion (Dkt. 107 at 24), counsel for both Plaintiffs and NorthShore fully endorse the Settlement, which is another reason for finding the Settlement fair, reasonable, and adequate. *Cf. McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (noting that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator [which] suggest[s] that the settlement is fair and merits final approval").

16

E. **The parties reached settlement after significant analysis and arms-length negotiation.**

As noted in the Preliminary Approval Motion, Plaintiffs' counsel "spent many months engaging in arms'-length negotiations and performing exhaustive analysis of relevant law and evidence, giving them a clear view of the strengths and weaknesses' of their case in reaching the proposed settlement." (Dkt. 107 at 25 (citations omitted).) In short, the Settlement is "the product of arm's-length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced," and thus the Court may presume that the Settlement is fair and adequate. *Goldsmith v. Tech. Sols. Co.*, 1995 WL 17009594, at *3 n.2 (N.D. Ill. Oct. 10, 1995) (citing *Susquehanna Corp. v. Korholz*, 84 F.R.D. 316, 321 (N.D. Ill. 1979)).

* * *

All of the Seventh Circuit's factors weigh in favor of finding that the Settlement is fair, reasonable, and adequate pursuant to Rule 23(e). Accordingly, the Court should grant final approval of the Settlement.

IV. **The Court Should Approve the Service Awards to the Class Representatives.**

The Settlement Agreement preliminarily approved by the Court sets aside $260,000 for service awards to the Named Plaintiffs, with each of the 13 Named Plaintiffs receiving a service award of $20,000. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Courts in this Circuit frequently compensate class

17

representatives for their service to the class. *See id.* (affirming $25,000 incentive award). To determine if an incentive award is warranted, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.* (citing *Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267 (N.D. Ill. 1993)).

Here, the service awards are appropriate to compensate Named Plaintiffs for their services to the Settlement Class. These services included advising on and approving pleadings and other court filings, which were often lengthy and often presented on short notice, on the evenings and weekends; gathering personal documents and responding to comprehensive and extensive discovery requests, which was time consuming and intrusive; participating in settlement negotiations, including at the formal mediation; and serving as lead plaintiffs in a sensitive case involving personal health choices and religious beliefs over a matter of intense public debate, **even when it was uncertain whether they would have to disclose their identities to the public**. (Mihet Decl. ¶ 27.) These contributions undoubtedly benefit the Class as a whole, and notably, prior to the Settlement, Named Plaintiffs were never promised they would receive any additional compensation for leading the case. (Mihet Decl. ¶ 28.)

Furthermore, "[s]ervice awards are well suited in employment litigation because the plaintiffs assume the risk that future employers may look unfavorably upon them if they file suit against former employers." *Brewer v. Molina Healthcare,*

18

*Inc.*, 2018 WL 2966956, at *2 (N.D. Ill. June 12, 2018); *accord Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (noting that litigation against an employee's current or former employer "carries unique risks," including "alienation from employers or peers"). Here, by bringing a federal lawsuit against their employer on a matter of national importance, and with no guarantee that they could litigate anonymously, Named Plaintiffs risked reputational harms to their career prospects and future "alienation from employers or peers." *Beesley*, 2014 WL 375432, at *4. "[E]ach Plaintiff was willing to alienate" their current or former "employer, longtime friends loyal to [NorthShore] and current and future employers unlikely to embrace an employee who files an action against his employer," *Abbott v. Lockheed Martin Corp.*, 2015 WL 4398475, at *1 (S.D. Ill. July 17, 2015). Although this risk is inherent in serving as a named plaintiff, NorthShore has denied and continues to deny (including during the period since the filing of the Lawsuit) that it has discriminated against, harassed, retaliated against, or otherwise mistreated Named Plaintiffs. Nevertheless, the service awards agreed upon by the Parties and preliminarily approved by the Court are appropriate to compensate Named Plaintiffs for the risks they took.

## CONCLUSION

For the foregoing reasons, the Parties respectfully request that the Court:

(1)     grant final approval of the Settlement and approve the service awards to the Named Plaintiffs;

(2)  (a) extend the claim deadline for the two individuals who did not receive timely Notice of the Settlement and who submitted (or will soon submit) Claims beyond the submission deadline; and (b) consider their Claim Forms as timely received; and

(3)  order that all Released Claims (as defined in the Settlement Agreement), including any separate or individual claims (including without limitation pending charges at the Equal Employment Opportunity Commission and/or Illinois Department of Human Rights) brought by any member of the Class, are released, withdrawn, and barred in accordance with Section 14.1 of the Settlement Agreement.

Dated: December 12, 2022

Respectfully submitted,

/s/ Horatio G. Mihet
Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid
**LIBERTY COUNSEL**
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@lc.org; hmihet@lc.org
rgannam@lc.org; dschmid@lc.org

Sorin A. Leahu (Local Counsel)
Ill. Bar No. 6315515
**LEAHU LAW GROUP, LLC**
53 W. Jackson Blvd., #1527
Chicago, IL 60604
(847) 529-7221
sleahu@leahulaw.com

*Attorneys for Plaintiffs*

/s/ Kevin P. Simpson
Kevin P. Simpson
Nasir Hussain
Savannah L. Murin
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, IL 60601
(312) 558-5600
ksimpson@winston.com
nhussain@winston.com
smurin@winston.com

Marc R. Jacobs
**SEYFARTH SHAW LLP**
233 South Wacker Drive
Ste. 8000
Chicago, IL 60606
(312) 460-5000
mjacobs@seyfarth.com

*Attorneys for NorthShore*
*University HealthSystem*

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2022, I caused a true and correct copy of the foregoing to be electronically filed with the Court. Service will be effectuated on all counsel of record through the Court's ECF/electronic notification system.

/s/ Horatio G. Mihet
Horatio G. Mihet

*Attorney for Plaintiffs*